## AFFIDAVIT OF ORLANDO ESTRADA

STATE OF FLORIDA          )
                               )    S.S.:

COUNTY OF MIAMI-DADE      )

1. My name is ORLANDO ESTRADA, I am over eighteen years of age; I reside in the United States, and I have personal knowledge of the matters set forth herein. I am mentally competent to sign this Affidavit and I do so freely, voluntarily, and pursuant to my own free will. I affirm that the contents of this Affidavit are true and correct and to the best of my belief.

2. I affirm that this document was translated in Spanish and that I fully understood the contents of this Affidavit prior to executing same.

3. I am a Plaintiff in the United State District Court, Southern District of Florida, *Estrada Orlando and all others similarly situated under 29 U.S.C. 216(b) v. FTS USA, LLC,* Case No.: 14-23388-CIV-KMM.

4. I worked for Defendant's from on or about October 10, 2012 through on or about March 24, 2014.

5. During the first month that I worked for Defendant, I worked six (6) days a week (Wednesday was my day off) from approximately 6:00 a.m. through to approximately 8:00 p.m. Subsequent to the six (6) month period, I worked for Defendant five (5) days per week (I had 2 days off that would vary) from approximately 6:30/7:00 a.m. through to approximately 8:30/9:00 p.m. I did not have an uninterrupted lunch break throughout my work day.

6. There was a system installed in my work cell phone (Comcast) that reported to Defendant when I started and completed an order since I was required to punch in my password. However, this system on my work cell phone did not account for when I began my day and ended my day nor does it account for any travel time between the job orders during the same workday. Further,

Page **1** of **8**

 Orlando Estrada

I only activated this system when I started working on the job assignment and not when I arrived at the customers' homes.

7.   Moreover, Defendant did not maintain any time sheets and/or time records that I was required to clock-in/clock-out with that recorded my hours worked.

8.   Every morning I was required to start at Defendant's warehouse at approximately 6:00 a.m. to pick up the equipment I would need for the job orders for that day. While I picked up the equipment and was at Defendant's warehouse at the above-mentioned time, I was prohibited by Defendant to start the work cell-phone system until 8:00 a.m. Therefore, even if I arrived at a customer, after picking up equipment for the day at Defendant's warehouse, I had to wait until the hour of 8:00 a.m. and, therefore, the system would not account for the hours spent picking up the equipment at Defendant's warehouse, travelling to the first customer of the day, meeting with the client, prior to initiating the system installed on my work cell-phone at 8:00 a.m.

9.   During the relevant time period, I always recorded hours by handwritten on the "Billing Order" and, as explained below, these were not the total hours that I worked for Defendant. As such, I have no knowledge about Defendant going from paper time sheets to electronic time keeping.

10. For example, I reviewed my "Billing Order" for the date of January 16, 2014. On said date, at approximately 6:00 a.m. I would have started at Defendant's warehouse as was required by me. I would have picked up the equipment and materials that I needed for the day based on my daily work-orders that I received on said day. I was told not to write down my start time at 6:00 a.m. but rather that the earliest time I could write down as my start time was 7:30 a.m. Therefore, on the "Billing Order" it reflect the start time at 7:30 a.m. when this was not in fact my start time as I commenced work at 6:00 a.m. and then needed to travel to my first customer

Page 2 of 8

 Orlando Estrada

with Defendant's equipment in Defendant's vehicle. I would have arrived at the first customer sometime between 7:30 and 8:00 a.m. because the latest I was permitted to arrive at the customer was at 8:00 a.m. and I needed to fight traffic to travel from Defendant's warehouse to my first client with Defendant's equipment in Defendant's vehicle. I would have travelled to the 6 other residences that were assigned for me on that day as per the work-orders. While I was installing materials in one house I would also be calling my next customer to let them know I was on my way and to ensure they would be in their residences at approximately the time I would be able to arrive there. I would then finish at the 7 residences I had per my work-orders and would need to fight traffic to travel back to Defendant's warehouse. I would be required to return the equipment that I had not used with the "Billing Orders" to Defendant's warehouse at the end of the day. I would be required to off-load Defendant's equipment from Defendant's vehicle and then  return same along with the "Billing Orders" to the person in charge of Defendant's warehouse (i.e. Carlos). The time on said "Billing Orders" reflected 4:00 p.m. which is when I completed working at the last residence on my work-orders but not the time that I completed my work for the day. Therefore, it is impossible for Defendant to base my hourly rate on the hours reflected on any time records they may have as they records do not reflect all the hours that I worked for Defendant on a daily basis. I did this so as to comply with the instructions from Defendant, by and through their agents my supervisors.

11. More often than not, Defendant would double book my appointments and not take into account the amount of time it would take to complete a customer's order. Therefore, I would be required to clock-out of the system, while still working with a customer, and initiate the system in another location, although in actuality I had not yet arrived at that new location since I was since finishing up with the first customer. The time slot that was given to me by Defendant to


Orlando Estrada

complete a job was not enough time and, as such, I was required to initiate the system at my next location although I was not yet finished with the customer.

12. On the rare occasion, to trick the system (so that the company was able to initiate the system on time and so that the customer would not cancel the job) Defendant would initiate the system at the next customer's location and send a different employee to either finish up the job that I was working on or to start at the next location. Comcast has a penalty for delays and FTS would be charged the late fee if FTS' employees, like myself, were late arriving at the next customer.

13. The system would be turned off daily at 7:00 p.m. and yet I was often still finishing up my job at a customer's residence. I would need to complete my task and was still required to return to the warehouse at the end of the day, after I had finished at a customer which was after 7:00 p.m. Therefore, I was travelling back to the warehouse with Defendant's equipment in Defendant's vehicle and was required to off-load the equipment from Defendant's vehicle and return all the work-orders that I had worked on throughout the day. I obviously was not clocked-in on any system while I was travelling, with Defendant's equipment in Defendant's vehicle, back to Defendant's warehouse nor when I was off-loading the equipment and returning the work-orders and, as such, this time is not accounted for on any system.

14. I was given a price sheet by Defendant and there was a code/list of prices that reflected the different jobs Defendant would offer. I would get paid differently depending on the job that I was required to do that day and each job had a different code/price associated with it. Depending on my job duties that day I would earn a different amount of money. This pricing sheet was often changed and would reflect different amounts on a regular basis throughout the relevant time period.

 Orlando Estrada

15. Every Monday employees, like myself, were required to sign a pre-prepared time-sheet and no one explained to me the details of the document I was signing. I have reviewed the "Employee Weekly Time Sheets" provided by Defendant's that Defendant claims that I was required to sign. Many of these Sheets are not signed by me and many of these Sheets say "unable to sign." I never reviewed and/or was given any underlying documents to support the times reflected in the "in" and "out" columns and I do not know where these numbers were created from as I was not required to clock-in every morning when I arrived at the warehouse and I was not required to clock-out every day after I had finished off-loading my vehicle of Defendant's equipment and returning the work-orders from that day. As explained above, if these Sheets are based on the "Billing Orders" the hours reflected could not be correct and accurate since I would fill out the "Billing Orders" as instructed and they absolutely do not reflect the time that I spent at Defendant's warehouse, loading and unloading tools/equipment on and off Defendant's vehicles, and travelling to and from Defendant' warehouse to the customer's residence/jobsite and to and from Defendant's place of business on loaded work vehicles. Therefore, it is impossible for Defendant to have accurately determined my hourly rate and ensured that I was being paid my overtime rate in accordance with the law.

16. Twice a week, before I left Defendant's warehouse I was required to go inside Defendant's warehouse and obtain the gas-card and wait for my work orders to be reviewed before I was given permission to use the gas-card. I was then required to fill up Defendant's vehicle and return to Defendant's warehouse with the gas-card before being able to return home for the day. This time is not reflected in the "Billing Orders."

17. Also, oftentimes I would arrive at the jobsite and would realize that the equipment was

Page 5 of 8

Orlando Estrada

faulty and I would be required by my supervisor to travel back to Defendant's warehouse to obtain better and/or new piece of equipment. This time is also not reflected in the "Billing Orders."

18. At my deposition I did not dispute the fact that I signed many of the "Employee Weekly Time Sheet" however I also explained that I was not agreeing with the information contained on the sheet and when I signed it and that I was signing the sheet so that I could be paid for my work performed which was not reflected on the time sheet.

19. At my deposition when I was shown that the time sheets provided by Defendant marched the Earning Statements I recall saying something to the effect of that I believed that documents were very well fixed and that Defendant would do whatever they wanted with my money at the time of receiving my payment. At no time have I stated that I was paid my overtime wages for the hours I worked and I continue to assert the fact that I worked overtime for which I was not paid by Defendant.

20. During the relevant time period, I went to my direct supervisor/supervisor, Renee Thomas, to complain about the fact that I was not getting paid for all the hours that I had worked and that the hours I had worked was not reflected in the amount of money I was being paid by Defendant. Renee Thomas said she would try to ensure I had more assignments so that I would be able to make more wages however this did not ever occur.

21. I was only paid for the jobs that I was assigned to do and I was not paid my overtime wages in accordance with the law.

22. At my deposition I was shown copies of my paystubs that reflect that I was paid regular pay, overtime, and vacation. I explicitly explained to the Defense attorney that I see what the paystubs reflected however I in no way agreed with the fact that I had received either overtime

 Orlando Estrada

and/or vacation pay. I do not know how the amounts were calculated on my paystubs but I in no way agree that I was paid for all my hours worked over forty (40) in a week.

23. At my deposition I also recall being shown copies of the "Payroll Explanation and Compliance Form "and "Paycheck Verification Procedure" and I explained that the documents were never explained and/or translated to me in Spanish and I do not read and/or write in English. When I was given these forms from Defendant to sign I recall saying that I do not read and/or write in English and requested that they be translated to me into Spanish. In response, I was told that this America to which in turn I responded yes, this is America but this is Miami. I was informed by Defendant if I did not sign the documents that I was told to sign then I could not work for Defendant. I did not understand what I was signing and I merely signed the documents so that I could commence my employment for Defendant. Further, at no time was I explained any policy that Defendant claims to have and I was not explained the pay structure Defendant claims that I was. The company would often change their policies (i.e. the time that I was required to arrive at work and the pooling system). I never received a copy for myself to maintain for my own records of the "Payroll Explanation and Compliance Form," the "Paycheck Verification Procedure," and/or the "Alert Line Acknowledgment" forms.

24. I do not dispute that I received the amount of money paid to me by Defendant however I dispute the "Earning Statements" which reflect regular hours and overtime hours as I was never provided same during my employment and do not agree with the amount of hours reflected on said Statements.

25. I never had an opportunity to take a completely uninterrupted lunch break throughout my

 Orlando Estrada

workday, during the relevant time period and I was always eating quickly as I was driving to my next customer/jobsite. I did not reflect on the "Billing Orders" any lunch breaks, as I did not have one.

26. There was no system in place, to my knowledge, that recorded all the hours I worked for Defendant and I do not know how Defendant was able to ensure that I was paid at least minimum wage and overtime for all the hours that I worked for Defendant. I was told I would be paid by the listed prices and not according to the minimum wage and overtime laws.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _7_ day of _SEPTEMBER_, 2016.

_____
AFFIANT
ORLANDO ESTRADA

The foregoing Affidavit was sworn to and subscribed before me, on this _7_ day of _Sept_ , 2016, by ORLANDO ESTRADA, who has produced - _FL DL_ as identification.

JOSHUA H. SHESKIN
MY COMMISSION # FF 996310
EXPIRES: June 3, 2020
Bonded Thru Budget Notary Services

_____
NOTARY PUBLIC, State of Florida

**INTERPRETER'S ACKNOWLEDGEMENT:**

On _Sept_ , _7_ _2016_, personally known to me,

affirmed that the foregoing was translated for ORLANDO ESTRADA and that he fully

understood and affirmed the contents of the foregoing.

_____
(Interpreter's signature)

JOSHUA H. SHESKIN
MY COMMISSION # FF 996310
EXPIRES: June 3, 2020
Bonded Thru Budget Notary Services

_____
NOTARY PUBLIC / STAMP

Orlando Estrada

Page **8** of **8**