**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:14-CV-23388-KMM

ORLANDO ESTRADA,

      Plaintiff,

v.

FTS USA, LLC,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court on Defendant FTS USA's ("FTS") Motion for Summary Judgment and/or Motion for Partial Summary Judgment (ECF No. 49). Plaintiff Orlando Estrada filed a Response (ECF No. 54) and Defendant filed a Reply (ECF No. 57). For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

**I.    BACKGROUND**

Estrada brings this case for federal overtime wages against his employer, FTS, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Estrada began working as a technician for FTS in October 2012. (Def.'s Statement of Material Facts ¶ 15 (ECF No. 49)) As a technician, Estrada installed cable and internet at residential sites. (*See* Estrada Dep., 54:1–7 (ECF No. 57-1))

When Estrada began working for FTS, he signed and dated a payroll explanation form (the "Compensation Policy"). (Def.'s Statement of Material Facts ¶ 4 (ECF No. 49) The Compensation Policy states the following:

1) The Company work week is Friday through Thursday.
2) My weekly compensation will vary based on my production for that week.

3) My weekly production is determined by adding the amount for each job that I successfully complete for the week.

4) I have reviewed and agree to the assigned rates for each job and understand that these will be used to determine my effective-hourly-rate ("EHR"), a component used in calculating my rate of pay. I understand that the assigned rates are estimates based upon information received from the customer to determine the difficulty of the job and the time required to perform it.
  . . .

7) I understand that I am required and I agree to keep detailed records on a daily basis of my time from when I arrive at the work site until I complete the final job for the day, including travel time to and from jobs throughout the day, the time to perform each job, and the time during which I take my lunch break. I will sign these records in the place provided and submit them to my Supervisor no later than Monday morning, following the last work day of the week, Saturday. I understand that I must submit these records promptly in order that my employer may accurately calculate all wages due for the week.

8) My total pay for the week will be determined as follows:
   a. multiply my EHR by each hour worked up to forty hours for that week;
   b. multiply my Overtime Rate (my EHR multiplied by 1.5) for each hour worked beyond forty hours for that week; and
   c. add these two amounts together.

9) The EHR is obtained by dividing the total weekly earnings by the total number of hours worked in that week. I understand that my EHR [ ] will not fall below the applicable State or Federal minimum wage, whichever is greater. I further understand that my regular earnings are calculated by multiplying my regular hours worked by my EHR and that I am entitled to one and one-half times this EHR for all overtime hour worked, based on applicable State law.
  . . .

10) I understand and agree that I must report and/or list all my hours worked for each week on my timesheet. I understand and agree that under or over reporting my hours is a violation of Company policy and strictly prohibited.

11) The term "WORK" for purposes of reporting my hours, includes, but is not limited to the following: all activities in support of performing my assigned jobs for the Company; traveling between jobs; any meetings with Supervisors; time spent complying with the Company's customer's requirements; cleaning and maintaining my work vehicle; and/or loading or unloading my work vehicle.

I further understand and agree that I must immediately report any discrepancies or inaccuracies in my compensation to my Supervisor and Project Administrator.

(Compensation Policy (ECF No. 49-3))

Each week, Estrada was required to sign and date an Employee Weekly Time Sheet ("Time Sheet").  (Def.'s Statement of Material Facts ¶¶ 18–53, 55–56 (ECF No. 49); *see also* Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 18–53, 55–56 (ECF No. 54))  Estrada received his wages from FTS via direct deposit, and his Earnings Statement reflects the amount he was paid for each two week pay period.  (Def.'s Statement of Material Facts ¶ 14, 17 (ECF No. 49))

On September 15, 2014, Estrada filed his Complaint against FTS, alleging one count of federal overtime wage violation.  (Compl. (ECF No. 1))  In his Complaint, Estrada alleges that he "was never paid the extra half time rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act."  (*Id*.)

FTS now moves for summary judgment.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The material facts are determined by the substantive law applicable to the case, and a genuine issue exists as to those facts when "a reasonable jury could return a verdict for the non-moving party."  *Id.*

The moving party bears the initial burden of showing absence of a genuine issue as to all material facts.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries this burden, responsibility shifts to the non-moving party to "show the existence of a genuine issue as to the material fact."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citations omitted).  "[A] mere scintilla of evidence in support of the non-moving party's

position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 242).  In deciding a motion for summary judgment, the court must view all of the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## III.   DISCUSSION

FTS argues that Estrada is unable to prove that he did not receive overtime compensation during the course of his employment.

Under the FLSA, an employer may not employ his employee for longer than forty hours per week unless the employee receives overtime compensation.  *Allen v. Bd. Of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007).  "A person is employed if he or she is suffered or permitted to work."  *Id.*  If the employer knows or has reason to know that the employee continues to work beyond the forty hours, the additional hours must be counted.  *Id.* (citations omitted).

An employee "has the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).  When the employer has kept accurate records detailing the employee's hours and compensation rate, the employee discharges his burden by securing the production of those records.  *Id.*  However, if

the employer's records are inaccurate or inadequate, the court should apply a relaxed burden-shifting scheme. *Id*. In such a situation, an employee has "carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316 (quotation marks and citation omitted). The burden then shifts to the employer, who must submit evidence of either the precise amount of work the employee performed or "evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (citation omitted).

Here, Estrada claims that he was never compensated for the overtime hours he worked. FTS, however, has produced records of Estrada's hours for the relevant time period, which detail Estrada's hours for the week, and which categorize all the hours he worked over forty hours per week as overtime. Estrada does not dispute that FTS's records demonstrate that he worked overtime, but maintains that "[t]he alleged time records produced by Defendant are concocted and inaccurate," and states that he was never paid overtime because he never recorded all the hours he worked. (Pl.'s Resp., 5 (ECF No. 53))

In *Allen*, the plaintiff-employees argued that the defendant-employer's records were inaccurate. *See Allen*, 495 F.3d at 1313–18. Plaintiffs offered deposition testimony of several employees to support their argument, including the following:

> Some employees testified that they were told not to record their overtime hours because the [employer] would not pay them overtime. Some recorded their overtime hours, but were made to take back their accurate time sheets and resubmit new time sheets that reflected their scheduled, not actual, hours. At least one [employee] said that time sheets were torn up if they reflected overtime work. Another said that the individual in charge of time sheets would white out time worked on his time sheets.

5

*Id.* at 1316.  The Court of Appeals concluded that these facts, if true, "indicate[d] that the [employer's] records [could] not be trusted."  *Id.*  Thus, if the plaintiffs produced sufficient evidence to show the amount and extent of the uncompensated overtime, they would carry their burden of proving that they performed work without proper compensation.  *Id.*

The instant case is markedly different from *Allen*.  First, FTS maintained a Compensation Policy that required payment for all hours worked by the employee, including travel time to and from work, regardless of whether the time worked was overtime.  The Compensation Policy also required employees to keep daily time records, verify the amount of time reflected on the employee's weekly Time Sheet, and alert a supervisor if the hours incorrectly reflected the amount of time the employee worked.

It is undisputed that FTS provided Estrada with the Compensation Policy when he began his employment at FTS, and that Estrada signed the policy at that time.  Though Estrada argues that he lacked sufficient English-language competency to understand the requirements of the policy, his misunderstanding does not render the records inaccurate.[1]  *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1225–31 (10th Cir. 2012) (where the employee failed to record the hours he worked from home in violation of the employer's policy, the court concluded that the employer kept accurate records); *cf. Monteverde v. W. Palm Beach Food & Beverage, LLC*, No. 15-CV-81203, 2016 WL 1161224, at *5 (S.D. Fla. Mar. 24, 2016) ("[T]o the extent Plaintiffs were not able to fully understand specific terms or components of the agreement due to a language barrier, such a barrier does not preclude the enforcement of the contract."); *Onderko v. Advanced Auto*

---

[1] Moreover, Estrada admitted in his deposition that office staff at FTS spoke Spanish and that he often asked his coworkers or the office staff to translate when he spoke with his non Spanish-speaking supervisors.  (Estrada Dep., 45–46 (ECF No. 57-1))  Estrada could have easily sought out a translation of the Compensation Policy before or after he signed it.  If he had, he would have known that FTS required him to record all of his hours.

*Ins., Inc.*, 477 So. 2d 1026, 1028 (Fla. Dist. Ct. App. 1985) ("A party has a duty to learn and know the contents of an agreement before signing it," and "[a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing.").

Estrada argues that the Compensation Policy notwithstanding, he was prohibited from recording his start time before 7:30 am. In support of this allegation he offers one handwritten billing order form dated January 16, 2014. The billing order form demonstrates that Estrada listed his hours worked as 7:30 am to 4:00 pm, but he contends that he would have started at 6:00 am that day. The fact that he recorded his start time at 7:30 am on one day, however, does not create a question of fact that he was prohibited from following the FTS Compensation Policy. *See Jackson v. Corr. Corp. of Am.*, No. 11-CIV-111, 2014 WL 575720, at *11 (S.D. Ga. Feb. 11, 2014), *aff'd*, 606 F. App'x 945 (11th Cir. 2015) ("Assuming [p]laintiff did work overtime, there is no evidence that employer's conduct in the instant case drove [p]laintiff to misreport or underreport her time."). Indeed the Time Sheet for January 16, 2014, submitted by FTS, is consistent with Estrada's handwritten order form from that day, and thus the order form serves only to undermine Estrada's contention that FTS's records are inaccurate.

Second, Estrada's Time Sheets reflect that he recorded overtime hours for a majority of the weeks he worked at FTS, and his earnings statements indicate that he was paid for these overtime hours. For example, the Time Sheet for the week ending Saturday, December 22, 2012 reflects that Estrada worked 40.00 regular hours and 33.25 overtime hours. (*See* Time Sheets (ECF No. 49-8)) Estrada signed the Time Sheet on Monday, December 24, 2012. (*Id.*) The following week, which ended Saturday, December 29, 2012, Estrada worked 40.00 regular hours and 9.25 overtime hours. (*Id.*) Estrada also signed this time sheet. (*Id.*) Estrada's Earnings Statement for the two-week pay period ending December 29, 2012, indicate that for the first

7

week he was paid for 33.25 of overtime and for the second week he was paid for 9.25 hours of overtime.  (*See* Earnings Statements (ECF No. 49-7))  Indeed, a majority of Estrada's Time Sheets indicate that he worked some amount of overtime in the given week.

Estrada does not dispute that his Earnings Statements correspond with the times listed on his Time Sheets.  Moreover, at his deposition, Estrada could not deny that he received the amounts of money reflected in each Earnings Statement.  Instead, Estrada offered convoluted answers to FTS's attorney's clear questions:

> Q:  Okay.  If you turn to the next page, sir.  This is the earnings statement that goes with your paycheck.  Eighty times seven point six seven equals six hundred and thirteen dollars and sixty cents, do you see that, sir?  Here's a calculator if you want.
> A:  No, no.
> Q:  No what?
> A:  Why am I going to calculate?  I mean we already discussed this last time.  I had never seen this before, I'm seeing this now and the last time that you showed it to me, they had never given this to me.  Now, the way they do things and they pay, I don't know, but they never paid me overtime and they never paid me per hour.
> Q: Sir, are you saying that you did not receive the direct deposit payment that corresponds with this earning statement?
> A: Well, that went into my account, that I can't say if I remember or if it was this way or not because they would never give me this paper.
> Q:  Okay.  I understand you've never seen this paper.  Are you saying that the amount reflected on this pay date that is dated November 9, 2012 was not direct deposited into the bank account that you gave to FTS?
> A:  I didn't say never.  I just don't remember the amount that was deposited because I can't say what they base themselves on, say we'll pay you this much per hour and this much overtime, it was never like that.

(Estrada Dep., 87:25–89:2 (ECF No. 57-1))  Indeed, at his deposition, Estrada admitted that he does not have a single piece of evidence to show that he was not paid the amounts reflected on his Earnings Statements.  (*Id.*, 89–90 ("Q: Did you receive direct deposits from FTS? A: Yes . . . Q: Did the amount vary from week to week? A: Yes. Q: Okay.  Do you remember the amounts

you received? A: No. Q: Do you have any records that reflect the amounts you received? A: No.”))

The Court need not evaluate every statement Estrada offers in support of his response brief to conclude that he has failed to create a question of fact as to the accuracy of FTS's records. Against strong documentary evidence, Estrada offers testimony that is rife with inconsistencies. Moreover, his lengthy affidavit—prepared just days before his response was due—does little to clarify the confusing and contradictory nature of his deposition statements. Unlike *Allen*, under these circumstances the Court cannot say that a reasonable jury could find that FTS violated the FLSA. Accordingly, summary judgment in favor of FTS is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 48) is GRANTED.

The Clerk of the Court is instructed to CLOSE this case.

Done and ordered in Chambers at Miami, Florida, this 24th day of October, 2016.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:     Counsel of record