

We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.



WESTLAW

2013 WL 12248141
Only the Westlaw citation is currently available.
United States District Court,
S. D. Florida.

Key West Tourist Development Association v. Zazzle, Inc.
United States District Court, S.D. Florida. | January 9, 2013 | Slip Copy | 2013 WL 12248141 *(Approx. 12 pages)*

The KEY WEST TOURIST DEVELOPMENT ASSOCIATION, Plaintiff,

v.

ZAZZLE, INC., a California Corporation and William D. Kinzey, Jr.,
Defendants.

CASE NO. 10-10100-CIV-KING/MCALILEY
Signed 01/09/2013

### Attorneys and Law Firms

Charles W. Hanor, Hanor & Associates, San Antonio, TX, Hugh J. Morgan, Law Office of Hugh J. Morgan, Key West, FL, for Plaintiff.

Stephen James Binhak, The Law Office of Stephen James Binhak, PLLC, Miami, FL, for Defendants.

William D. Kinzey, Jr., Orange Beach, AL, pro se.

### REPORT AND RECOMMENDATION ON MOTION FOR DAMAGES AND ATTORNEYS' FEES

CHRIS MCALILEY, UNITED STATES MAGISTRATE JUDGE

*\*1* This cause is before the Court on Plaintiff's Motion for Damages and Attorney Fees [DE 41], referred to me by the Honorable James Lawrence King [DE 48]. This is an action for trademark infringement in which final judgment was entered for Plaintiff and against *pro se* Defendant William D. Kinzey, Jr. ("Kinzey"). Plaintiff now seeks an award of statutory damages and attorneys' fees and costs against Kinzey pursuant to the Lanham Act, 15 U.S.C. §§ 1117(a)—(c), and Florida Statute § 495.141. On June 29, 2012, I held an evidentiary hearing on the motion, at which I took evidence and heard argument from both parties. Having considered the motion, evidence and applicable law, I recommend that the motion be granted in part.

### I. Background

By way of background, Defendant Zazzle, Inc. operates a web site, www.zazzle.com, which offers for sale a wide range of goods, such as t-shirts, mugs, bags, and hats that users of the website can customize with their own designs. Users of Zazzle's web site can both purchase their customized products, and offer them for sale to the public through the Zazzle online store.

In October 2010, Plaintiff, the Key West Tourist Development Association, filed suit against Zazzle, alleging that it offered for sale products displaying the Plaintiff's federal and state registered trademarks FANTASY FEST and HABITAT FOR INSANITY (the theme for the 2012 Key West Fantasy Fest), in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, Florida Statute § 495.151 and Florida common law. [DE 1]. In short order, Zazzle and Plaintiff agreed to enter into a settlement agreement, which included Zazzle's providing information to Plaintiff that identified Kinzey as the originator of the infringing merchandise, and Plaintiff's agreement to dismiss Zazzle from the lawsuit. [DE 53, pp. 88-90]. Thereafter, in January 2011, Plaintiff amended its complaint to add Kinzey as a defendant, alleging that Kinzey advertised for sale goods under the name "fantasyfest" and "Habitat for Insanity" on Zazzle's site, in violation of federal and state trademark statutes and Florida common law. [DE 12]. Kinzey represented himself, *pro se*, in this action.

### SELECTED TOPICS

Trademarks

Actions and Proceedings
Award of Reasonable Attorney Fees and Costs

Secondary Sources

FLORIDA FRANCHISE LITIGATION AND REPORTED DECISIONS

FLP FL-CLE 8-1
...This chapter primarily focuses on the procedural aspects of franchise litigation, with some substantive law issues examined to the extent relevant. This chapter is written primarily for Florida practit...

Award of attorneys' fees under sec. 35(a) of Lanham Act (15 U.S.C.A. sec. 1117(a)) authorizing award in "exceptional cases"

82 A.L.R. Fed. 143 (Originally published in 1987)
...This annotation collects federal cases interpreting "exceptional cases" and "reasonable attorney fees" decided under 15 U.S.C.A. § 1117(a) of the Lanham Act which provides for the remedy of an award of...

s 23:69.  Monetary relief-Costs and counsel fees

6 Callmann on Unfair Comp., Tr. & Mono. § 23:69 (4th Ed.)
...The subject of insurance coverage of a litigant's expenses and tort liabilities is discussed in § 2:11. This section discusses costs and attorney fees awarded by the court. The allowance of costs has u...

See More Secondary Sources

Briefs

Initial Brief of Appellants, Techsplosion, Inc., and Michael Gay a/k/a Michael Carson

2000 WL 33988761
TECHSPLOSION, INC., Michael Gay a/k/a Michael Carson, Defendants/Counter-Plaintiffs, Appellants, v. PLANETARY MOTION, INC., Plaintiff/Counter-Defendant, Appellee.
United States Court of Appeals, Eleventh Circuit.
May 23, 2000
...There are no parent companies, subsidiaries or affiliates that have issued shares to the public for Techsplosion, Inc. Appellant respectfully requests oral argument to assist the Court in identificatio...

Petitioners' Brief

1966 WL 100831
THE FLEISCHMANN DISTILLING CORPORATION, a corporation, and James Buchanan & Company, Limited, Petitioners, v. MAIER BREWING COMPANY, a corporation, and Ralphs Grocery Company, a corporation, Respondents.
Supreme Court of the United States
Dec. 09, 1966
...Note: Table of Contents page numbers missing in original document The opinion of the Court of Appeals is reported in 359 F.2d 156 and 149 U.S.P.Q. 89 and appears at R. 97-114. There is no opinion by th...

Brief in Opposition

On April 5, 2011, not long after he was served with the Amended Complaint, Kinzey and Plaintiff's counsel met to discuss settlement. Kinzey readily conceded that he would not make further use of the disputed marks, but explained why he believed that his brief Zazzle offering did not violate the trademark laws. Plaintiff's counsel offered to settle the case for the amount of its attorneys' fees, which Kinzey consistently stated he was unable to pay, and settlement discussions thus ended. [1]

The following January, Plaintiff and Kinzey filed a Joint Pre-Trial Stipulation, in which they stipulated to certain facts, including that Kinzey used marks, "identical and confusingly similar to Plaintiff's trademarks in advertising his services and goods to the public" on Zazzle's site, and used of a variation of Plaintiff's FANTASY FEST and HABITAT FOR INSANITY marks. [DE 33, ¶¶ 41-42]. The parties additionally stipulated to the fact that only four infringing items were sold on the Zazzle site, on October 26, 2010, that were purchased by Plaintiff, and not by any other members of the public, and that Zazzle ceased selling the goods two days later. [Id., ¶¶ 53-55]. [2]

*2 Shortly thereafter, the Court ruled in Plaintiff's favor on an issue of law raised by Kinzey, [3] which was the only remaining issue in the matter. [DE 38]. Plaintiff then moved the Court for entry of final judgment and an order of permanent injunction against Kinzey. [DE 39].

On February 13, 2012, the Court granted the motion and entered a final judgment and order of permanent injunction in favor of Plaintiff, and against Kinzey. [DE 40]. In doing so, the Court made various findings. Among them, it found that Plaintiff "owns valid and enforceable trademark registrations, trademarks, and service marks for FANTASY FEST and HABITAT FOR INSANITY." [4]  [Id., ¶ E]. The Court determined that Kinzey "used a colorable imitation of the registered FANTASY FEST name and the HABITAT FOR INSANITY mark on the Zazzle web site." [Id., ¶ 45]. It further found that Kinzey offered for sale ten categories of goods in connection with Plaintiff's marks on Zazzle's site, under his "fantasyfest" store and by doing so, infringed on Plaintiff's federal and Florida registered trademarks, service marks and trademark registrations. [Id., ¶¶ B-F]. Ultimately, the Court held that Kinzey violated the Lanham Act in various ways, including that Kinzey willfully, intentionally and fraudulently used and infringed Plaintiff's federally registered trademarks and service marks, knowing such marks were counterfeit marks, as defined in 15 U.S.C. § 1116(d). [5]  [Id., p. 7, ¶¶ I-K]. The Court permanently enjoined Kinzey from, inter alia, infringing and counterfeiting Plaintiff's marks. [Id., pp. 10-11].

At the June 2012 evidentiary hearing, I heard testimony from Kinzey, Plaintiff's counsel Hugh Morgan and Joseph Albury, and Plaintiff's expert witness on attorneys' fees, Albert Kelley. I found all witnesses to be credible, regarding all matters necessary to the resolution of the pending motions. Following the hearing, Plaintiff and Zazzle filed a Joint Stipulation of Dismissal, advising the Court of their settlement; which included the agreement that each would bear its own fees and costs. [DE 54, ¶ 4]. On November 13, 2012, the Court dismissed all claims against Zazzle with prejudice. [DE 55].

*3 As the prevailing party, Plaintiff now seeks $10,000 in statutory damages for trademark counterfeiting pursuant to the Lanham Act, 15 U.S.C. § 1117(c), $79,747.31 in attorneys' fees under 15 U.S.C. §§ 1117(a) and (b) [6] and Florida Statute § 495.141, [7] and $497.79 in costs. [DE 41, 46, p. 3].

II. Analysis

A. Statutory damages

In lieu of seeking actual damages, Plaintiff asks to recover from Kinzey $10,000 in statutory damages under 15 U.S.C. 1117(c). [DE 41, ¶ 4]. Specifically, Plaintiff requests $1,000 per category of goods offered for sale, which it believes are ten in number, relying upon the Court's finding, in the Final Judgment, that Kinzey offered for sale on Zazzle.com the following items: (1) baby t-shirts; (2) kid's t-shirts; (3) ladies' t-shirts; (4) men's t-shirts; (5) pet shirts; (6) bags; (7) hooded sweatshirts; (8) hats; (9) bumper stickers; (10) mugs. [DE 41, p. 5; DE 53, pp. 13-14].

In the case of a counterfeit trademark, such as this one, the Court may award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). [8] "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Cable/Home Communication Corp., v. Network Productions, Inc., 902 F.2d 829, 852 (11th Cir. 1990) (construing parallel language in statutory damages provision of the Copyright

2000 WL 3499951...
INTERNATIONAL STAR CLASS YACHT RACING ASSOCIATION, Petitioner, v. TOMMY HILFIGER U.S.A., INC., Respondent.
Supreme Court of the United States
Aug. 10, 2000

...Respondent, Tommy Hilfiger U.S.A., Inc., is a wholly-owned subsidiary of Tommy Hilfiger Corporation. Respondent Tommy Hilfiger U.S.A., Inc. respectfully requests that this Court deny the Petition for a...

See More Briefs

**Trial Court Documents**

Arbitration Forums, Inc. v. Liberty Mut. Ins. Co.

2005 WL 6462841
ARBITRATION FORUMS, INC., Plaintiff, v. LIBERTY MUTUAL INSURANCE COMPANY, Defendant.
Florida Circuit Court
Sep. 29, 2005

...THIS MATTER came before the Court for final hearing on Thursday, September 22, 2005. Having reviewed the memoranda filed by the parties, heard argument of counsel and being otherwise fully informed, it...

Veitsman v. Lupowitz

2012 WL 12893358
David VEITSMAN, an individual, Plaintiff, v. Sam LUPOWITZ, an individual, and Sophie Lupowitz, an individual, Defendants.
Florida Circuit Court
Nov. 15, 2012

...THIS CAUSE, having come before the Court on the motion for entry of final default judgment (the 'Motion') filed by Plaintiff, David Veitsman, and the Court having reviewed the Motion, the Court's file,...

Skeet'r Beat'r of Southwest Florida, Inc. v. Rooney

2002 WL 34721642
SKEET'R BEAT'R OF SOUTHWEST FLORIDA, INC., and Screen America Corporation, Plaintiffs, v. Steve J. ROONEY, a/k/a Home Specialties, a/k/a Skeet'r Beat'r By Home Specialties, Defendant.
Florida Circuit Court
Oct. 17, 2002

...THIS MATTER came before this Court for a bench trial on May 2, 2001 and July 11, 2001. The Court having entertained the testimony of the witnesses, reviewed the evidence, heard argument by counsel, rev...

See More Trial Court Documents

Act) (citations and quotation marks omitted). The Court's broad discretion is limited only by what it considers just. *Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez,* No. 1:11-cv-23986-PAS, 2012 WL 1189768, *4 (S.D. Fla. Apr. 9, 2012) (same); *Tiffany (NJ), LLC v. Dongping,* No. 10-61214-CIV, 2010 WL 4450451, *6 (S.D. Fla. Oct. 29, 2010) (same). Statutory damages are intended to compensate a plaintiff for its losses, and to deter wrongful conduct. *PetMed Express, Inc. v. MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1220-21 (S.D. Fla. 2004). In its discretion the Court may "calibrate an appropriate damages award based on the culpability of the defendant." *Mitchell Group USA LLC v. Xtreme Tools Int'l, Inc.,* No. 10-21153-CV, 2011 WL 589997,*5 (S.D. Fla. Feb. 10, 2011) (citations and internal quotation marks omitted).

*\*4* The Lanham Act mandates statutory damages "per type of goods ... sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Here, there were four types of goods offered for sale: (1) apparel (shirts, sweatshirts and hats), (2) bags, (3) bumper stickers, and (4) mugs.[9] Thus, the minimum amount of statutory damages would be $4,000 ($1,000 x 4). On this record, it is just for the Court to award statutory damages in that amount.

First, such an award will more than compensate Plaintiff for its actual loss of $62.50. The infringing activity here was extremely short-lived and led to the sale of four items, all of which Plaintiff purchased. [DE 33, ¶¶ 53-55].[10] Plaintiff has acknowledged that it suffered "no actual monetary damages." [DE 53, p. 10].

This award will also fairly address Kinzey's culpability, and deter wrongful conduct. Kinzey testified, credibly, that he used the Fantasy Fest and Habitat for Insanity marks on the Zazzle website, in a manner that he thought was lawful. He intentionally changed Plaintiff's "FANTASY FEST" mark to "fantasyfest", removing the space between the words and using lowercase letters [DE 53, pp. 44-45], and did so after his search of the United States Patent Office's website and the State of Florida's database showed that it was not registered. [*Id.,* pp. 69-70]. As for the Habitat for Insanity mark, he found that it was not registered, and therefore he thought it could use it. [*Id.,* p. 45]. It is not surprising that a lay person would not appreciate that an unregistered mark could nevertheless be protected by common law. Kinzey testified that he thought he was "pushing the envelope" [*id.,* p. 69], but believed he was "acting within the legal realms of the law." [*Id.,* p. 45]. I found Kinzey to be credible. While I do not condone Kinzey's behavior, he had a genuine, although misguided, belief that his Zazzle offerings were lawful.

As is set forth later in this Report, Kinzey has no assets with which to pay anything more than a minimal judgment. A $4,000 award of statutory damages will be extremely burdensome of Kinzey, and this award is, without doubt, equivalent to a very sizable award entered against someone with financial means.[11] Accordingly, I find that the recommended award will serve to deter future violations. For these reasons, I recommend the Court award Plaintiff $4,000 in statutory damages.

I now turn to Plaintiff's request for fees and costs.

### B. Attorneys' fees

As already noted, Plaintiff asks to recover its fees under 15 U.S.C. § 1117(a). [DE 41, pp. 2-3]. Specifically, it asks that Kinzey be ordered to pay a total of $79,747.31 for the attorneys' fees for three Plaintiff's law firms: $53,069.75 for the Law Office of Hugh Morgan, $17,540.06 for the Hanor Law Firm, and $9,137.50 for the Law Office of Joseph Albury. [DE 46, p.3].

### 1. Entitlement to attorneys' fees

Under section 1117(a) of the Lanham Act, attorneys' fees may be awarded only in "exceptional cases." An exceptional case is one in which the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir. 1994) (quoting H.R.Rep. No. 93-524, 93rd Cong. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133) (internal quotations marks omitted); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th Cir. 2001) (same).[12] It is also one in which the infringing party has engaged in fraud or acted in bad faith. *Tire Kingdom, supra.* When a court finds exceptional circumstances, it has discretion to decide whether to order fees. *Burger King,* 15 F.3d at 168; *Dieter v. B&H Indus. of Southwest Fla., Inc.,* 880 F.2d 322, 329 (11th Cir. 1989); *Four Green Fields Holdings, LLC v. Four Green Fields, An Irish Pub, Inc.,* No. 8:10-CV-2800-T-27EAJ, 2011 WL 5360143, *1 (M.D. Fla. Oct. 17, 2011).

[5] This Court has found in the Final Judgment that Kinzey willfully, intentionally, and fraudulently infringed on Plaintiff's trademarks [see DE 40], and in so doing has established that this case qualifies as "exceptional." Plaintiff thus qualifies for an award of its fees. For the reasons explained below, I recommend that the Court exercise its discretion to award Plaintiff attorneys' fees in an amount considerably less than what it requests.

### 2. Reasonable fees

The Supreme Court has set out a basic template for determining the amount of a reasonable attorney's fee that is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983). The Court must start by multiplying the number of hours reasonably expended by a reasonable hourly rate, to determine a "lodestar" amount. Id. at 433; see also Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). In its calculation of the lodestar amount, the Court may consider any of the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). [13] Hensley, 461 U.S. 434 n.9; Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1340 (11th Cir. 1999); First Fashion USA, Inc. v. Best Hair Replacement Manufacturers, Inc., No. 09-60938-CIV, 2010 WL 1610331, *3 (S.D. Fla. Apr. 20, 2010). To the extent the Court has not already considered any of the Johnson factors in arriving at the lodestar, the Court may rely upon them to adjust the lodestar. Hensley, 461 U.S. at 435-36; Ass'n of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 n. 1 (11th Cir. 2006). The fee applicant bears the burden of establishing his entitlement to an award and documenting appropriate hours and hourly rates. Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.' " Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).

#### a. Reasonable hourly rates

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. Norman, 836 F.2d at 1299; Coy v. Allstate Floridian Ins. Corp., No. 2:05-cv-103-FtM-34DNF, 2007 WL 1732098, *8 (M.D. Fla. June 14, 2007). The applicant must produce satisfactory evidence that the requested rate is consistent with prevailing market rates. Norman, 836 F.2d at 1299. Generally, acceptable proof of the market rate may consist of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. Id. Absent sufficient evidence, the Court, however, may rely upon its own knowledge and expertise to determine a reasonable fee. Id. at 1303.

[6] In support of its motion, Plaintiff submitted records of hours billed by the attorneys and support staff who worked on this litigation, that can be summarized as follows: (1) The Law Office of Hugh J. Morgan, billed a total of $53,069.75 in fees at a rate of $425 per hour for Morgan and $85 per hour for his paralegal, Scarlet Bodmer [DE 46-1, pp. 6-7]; (2) the Hanor Law Firm, billed a total of $17,540 [14] in fees at a rate of $300 per hour for Charles Hanor and a rate of between $100 and $200 per hour for various other support staff and/or attorneys [DE 46, p. 3; 46-1, pp. 8-26]; and (3) the Law Office of Joseph Albury, billed a total of $9,137.50 in fees at a rate of $250 per hour for Albury. [DE 46, p. 3; DE 46-1, pp. 27-35]. [15] Hugh Morgan served as litigation counsel, Charles Hanor consulted on intellectual property law, and Joseph Albury was Plaintiff's local counsel who handled its trademark registration filings. [DE 53, pp. 82-83].

#### 1. The Morgan firm

Morgan billed his client at an hourly rate of $425 and his paralegal at $85 per hour. [DE 46, p. 7]. In support of these hourly rates, Plaintiff submitted Morgan's CV [Pltf. Ex. 1] [16] and Kelley's affidavit and testimony. [Pltf. Ex. 2]. Kelley avers that the "current customary rate in Key West is between $300-$350 per hour," but that the rate "can increase for experience and specialized knowledge." [Pltf. Ex. 2, p. 2]. According to Kelley, Morgan's hourly rate of $425 per hour is reasonable given his forty-four years of experience. [DE 53, p. 108; Pltf. Ex. 2, p. 2]. Without taking away from Morgan's skill and reputation—he is an outstanding lawyer—for the reasons set forth, I recommend that his hourly rate be reduced.

In assessing the reasonableness of Morgan's rate, I consider a few of the Johnson factors. This matter was neither novel nor complex, Kinzey represented himself, and Plaintiff's counsel did not need to be highly skilled, or devote considerable time, to bring the case to a conclusion. There was only one disputed issue of law (raised by Kinzey) and the parties stipulated that there were no contested factual issues. Morgan did not have to bring

specialized knowledge to the matter, as he relied upon Hanor for *his* specialized knowledge of trademark law. Considering these factors, Kelley's opinion on the customary rates in Key West, and this Court's own judgment and expertise, I find that $350 is a reasonable hourly rate for Morgan in this matter.

As for Bodmer's rate, Plaintiff has not provided the Court with any information as to her background, skills, and education and has not produced any evidence that the requested rate is in line with prevailing market rates for a paralegal in this District. Another division of this Court, however, has found that "[a]bsent any information regarding [her] experience ... the prevailing rate for a paralegal in this District is $100.00 per hour." *First Fashion USA*, 2010 WL 1610331 at *4 (citing cases) (quotation marks omitted). Plaintiff asks that Bodmer be compensated at a lower hourly rate—$85—which I find reasonable.

### 2. The Hanor firm

As for the Hanor Law Firm, Kelley offers his conclusory opinion that Hanor is a "well-respected Texas attorney who is very knowledgeable in intellectual property rights," whose $300 per hour fee he considers reasonable, and consistent with rates in Key West. [Pltf. Ex. 2, pp. 2, 4]. Plaintiff has not has not, however, provided the Court with specific information about Hanor's legal experience, skills and education and has not sufficiently explained why Hanor is entitled to this rate. Hanor's associate, Bernie Kray, was billed at $175 per hour. [DE 46-1, p. 24; DE 53, p. 95]. Again, Plaintiff has not provided the Court with satisfactory information about Kray's education, skills and experience to support the reasonableness of his rate.

*7 Absent satisfactory evidence from Plaintiff to support the reasonableness of these rates, the Court uses its own judgment and expertise in making this determination, and finds that $300 is a reasonable hourly rate for Hanor and $175 is a reasonable hourly rate for Kray.

Finally, Plaintiff claims fees for other staff members of the Hanor Firm, namely Aurora Martinez, Justin Harris, Jeannine Vasquez and Monique Chavez. [DE 46-1, p. 12, 24]. Plaintiff has not identified what positions these individuals hold within the firm, leaving the Court unable to apply its own judgment to evaluate these fees. Thus, I recommend that the Court deny Plaintiff's request for any fees billed by Aurora Martinez, Justin Harris, Jeannine Vasquez and Monique Chavez. *See U.S. ex rel. ATC Distribution Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150 (GWG), 2007 WL 2522638, *3 (S.D.N.Y Sept. 7, 2007) (where moving party does not disclose any information regarding the qualifications, experience levels, and positions held by professionals performing services, courts have denied fee applications).

### 3. Joseph Albury

Finally, the hourly rate charged by Albury is $250. As with Hanor, Plaintiff has not sufficiently explained why Albury is entitled to this hourly rate and has not provided the Court with specific evidence about his legal experience, skills and education. That being said, using the Court's own judgment and expertise, I find that $250 is a reasonable hourly rate for Albury in this action.

### b. Hours reasonably expended

The second half of the lodestar equation is the hours reasonably expended. The moving party bears the burden of providing the Court with sufficiently detailed records, so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. Fee applicants must exercise "billing judgment," meaning they must exclude from their petition hours that would be unreasonable to bill to a client, and therefore to one's adversary, irrespective of the skill, reputation or experience of counsel. *Id.* at 1301. Excessive, redundant, or otherwise unnecessary hours should be excluded from the calculation. *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301. For its part, the Court must exercise its own judgment when reviewing a claim. *Norman*, 836 F.2d at 1301-2.

I have carefully reviewed counsels' invoices and recommend that the hours billed be significantly reduced. I first address the hours expended by the Morgan firm, before turning to those billed by Hanor and Albury.

### 1. Hours expended by the Morgan firm

Morgan billed a total of 123.45 hours and Bodmer billed 7.1 hours. [DE 46-1, p. 7]. First, as to Bodmer's fees, I recommend that none of her fees be shifted to Kinzey. Paralegal fees are recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Scelta v. Delicatessen Support Servs. Inc.*, 203 F.Supp.2d 1328, 1328 (M.D. Fla. 2002) (internal quotation marks and citation omitted). Bodmer billed for scanning and copying documents, filing and processing the complaint and other pleadings, processing,

filing and preparing summonses and communicating with process servers. [DE 46-1, pp. 1–2]. These tasks, which do not require an attorney, are attributable to clerical work. Clerical work is not compensable as attorneys' fees. See *Tiara Condo. Ass'n. Inc. v. Marsh USA, Inc.*, 697 F.Supp.2d 1349, 1369 (S.D. Fla. 2010) (tasks of clerical nature not compensable); *Scella, supra* (work that is clerical or secretarial in nature, such as gathering, copying, mailing and refiling documents, is not separately recoverable). Accordingly, these fees should not be shifted to the Plaintiff.

*8 Turning to Morgan's hours, I recommend that they be reduced due to the use of block billing, time devoted to clerical tasks and to the *Zazzle* settlement, and excessive hours. First, a close review of Morgan's bills show the extensive use of block billing. This practice "makes it difficult to establish whether the amount of time spent on any one task was reasonable." *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, *11 (S.D. Fla. July 1, 2008). See *Kearney v. Auto-Owners Ins. Co.*, 713 F.Supp.2d 1369, 1378 (M.D. Fla. 2010) (same). For example, on December 28, 2011, Morgan billed a total of 4.4 hours as follows:

> Directions to Legal Assistant re: preparation of Pre-Trial Stipulation based on copy of Local Rule 16. Received jury instruction drafts from Charles Hanor—Instructions to Legal Assistant re: original and drafting same. Re-drafted and final of Zazzle release. E-mails to Steve Binhak re: above. [17] Organized documents for use in drafting points.

[DE 46-1, pp. 3-4]. On December 30, 2011, he billed 5.3 hours for

> Researched law in support of legal issues for PT's. Telephone conf. with Linda O'Brien Market Share re: witnesses and evidence. Telephone conf. with Steve Binhak re: PT's and/or settlement. Drafted portion of uncontested parts. Receive and review e-mails from co-counsel Hanor re: Law of Infringement. E-mail to Charles Hanor cc to Steve Binhak and Joe Albury—forwarded my edits/drafts of two additional e-mails to Kinsey—Zazzle portion of Pre-trial Stipulation. Worked with Legal Assistant to obtain Key West Citizen announcement of Habitat for Insanity 2010[.]

[*Id.*, p. 4]. Similarly, he billed 5.3 hours on January 5, 2012 for

> Instructions to legal assistant. Edits and drafts to Pre Trial Stipulation and jury instructions. Telephone conference with Anna at MarketShare. Office conference with Anna from MarketShare to go over exhibits. (3) Telephone conferences with Zazzle. Receipt and review witness list vis email. Office conference with Kinsey. Reviewed Pre Trial Stipulation. Signed same. Travel to courthouse to file Pre Trial Stipulation.

[*Id.*, p. 5]. The majority of Morgan's entries are block billed, similar to those quoted above. Each of these block billed entries list a variety of tasks and the Court can only guess the time devoted to each task.

A number of other entries include time attributable to non-compensable clerical work. For instance, his January 10, 2011 entry includes time spent processing, issuing and taking a summons to court, calling a process server, and making copies. [DE 46-1, p. 2]. On December 27, 2011, he billed for time making copies. [*Id.*, p. 3]. And, on January 5, 2012, he billed time for traveling to court to file the pre-trial stipulation. [*Id.*, p. 5]. Plaintiff can not shift to Kinzey time devoted to clerical tasks. See *Tiara Condo. Ass'n*, 697 F.Supp.2d at 1369; *Scella*, 203 F.Supp.2d at 1334.

Morgan's time entries include his efforts to reach a settlement with the other Defendant, Zazzle. For example, he billed time for drafting, editing and reviewing the settlement documents and sending and receiving e-mails to and having telephone conferences with Zazzle's attorney, Steve Binhak, regarding settlement. [*See* DE 46-1, pp. 2-5, entries for 8/2/11, 12/28/11, 12/30/11, 1/9/12, 1/10/12, 1/11/12, 2/8/12, 2/9/12 entries]. In its settlement with Zazzle, Plaintiff agreed to bear its own attorneys' fees. [DE 54, p. 2]. Here, it would be inequitable for it to shift those fees to Kinzey. See *Council for Periodical Distrib. Ass'n v. Evans*, 827 F.2d 1483, 1487-88 (11th Cir. 1987) (courts have discretion on how to divide liability for fees among defendants in doing so, should try "to achieve the most fair and sensible solution possible."); *U.S. v. Patrol Servs., Inc.*, 202 Fed. Appx. 357, 362 (11th Cir. 2006) (same). Because the work attributed to the Zazzle settlement is block billed with

other tasks, it is impossible to segregate those hours from other hours devoted to litigation with Kinzey.

*9 Finally, I conclude that in the context of shifting fees to Kinzey, the 123 hours Morgan billed is excessive. This was not a complicated trademark infringement case; the case resulted in a quick settlement with one defendant and very little litigation with Kinzey, who was unrepresented. The marketing of the infringing product was immediately shut down before any sales to the public, and Kinzey credibly assured that he would abandon his misguided effort. It is highly likely that Plaintiff could have settled the matter with Kinzey at its inception, had it not insisted that Kinzey pay its attorneys' fees in full. Had Plaintiff done so, it would have satisfied its obligation to police its trademarks, and would have avoided costly litigation. While Plaintiff certainly was not obligated to settle the case, it chose to pursue the litigation knowing that Kinzey was without assets to pay even modest attorneys' fees. And, even though Kinzey entered into a pre-trial stipulation with agreed facts, and raised only one issue of law that the Court quickly resolved, Plaintiff's legal fees quickly—and not surprisingly—piled up. On this record, it would be inequitable to expect Kinzey to pick up the tab of Morgan's 123.45 hours litigating this matter.

For all of these reasons I recommend that Morgan's fees be reduced. I have carefully reviewed Morgan's billing records, that document 123.45 hours billed over an eighteen-month period. With extensive billing records like these, the Court has the option of reducing fees entry-by-entry or, making an across-the-board reduction. *See Hepsen v. J.C. Christensen and Assoc., Inc.,* 394 Fed. Appx. 597, 600 (11th Cir. 2010) (the court must choose one methodology); *Ruderman v. Washington Nat'l Ins. Corp.,* 465 Fed. Appx. 880, 882 (11th Cir. 2012) ("when fee documentation is voluminous, an hour-by-hour review is 'impractical and a waste of judicial resources' and an across-the-board percentage cut is permitted." (citation omitted).

An across-the-board reduction is most appropriate here, and I believe it can fairly account for excessive, unnecessary and non-compensable attorneys' fees; I recommend that the hours billed by Morgan be reduced by 45%. Reducing the hours billed (123.45) by 45% results in 67.90 hours. Multiplying those hours by the reasonable hourly rate ($350) results in $23,765 in fees.

### 2. Hours expended by Hanor's firm

As noted earlier, I recommend that, other than the time billed by Hanor and his associate, Kray, Plaintiff recover none of the hours billed by other employees of this firm. Hanor billed a total of 34.9 hours at a reasonable rate of $300 per hour, for a total of $10,470 in fees, and Kray billed a total of 13.7 hours at a reasonable rate of $175 per hour, for a total of $2,397.50 in fees.

I have carefully reviewed Hanor's invoices and find that a portion of his time was spent preparing and reviewing the Zazzle settlement. [DE 46-1, pp. 17] (12/9/10 entry), 19 (3/14/11 entry), 20 (8/15/11 entry), 22 (1/13/12 entry). It would be inequitable for Plaintiff to recover from Kinzey fees incurred reaching the Zazzle settlement. Hanor's invoices are over fourteen (14) pages in length and contain multiple time entries by various employees. [DE 46-1, pp. 8-26]. As with Morgan's bills, I conclude that an across-the-board reduction of Hanor's extensive bill is most appropriate. I recommend that Hanor's time be reduced by 10% to account for any time solely attributable to the Zazzle settlement. Reducing the hours billed by Hanor (34.9) by 10% results in 31.41 hours. Multiplying those hours by the reasonable hourly rate ($300) results in $9,423 in fees.

As for Kray, I have reviewed his time entries, which are relatively few in number. Most of his time was spent drafting and editing the brief filed on the one issue of law raised by Kinzey. [DE 46-1, p. 22]. I find that all of Kray's hours were reasonably expended. Accordingly, all of his fees, totaling $2,397.50, are recoverable.

### 3. Hours expended by Albury

Albury billed 36.55 hours at a reasonable rate of $250 per hour. I recommend a significant reduction of his time. I have reviewed his invoices in detail and find that most of the time he billed was unnecessary and duplicative. While Albury is undoubtedly a fine attorney, I can not discern the need for him to co-counsel this matter. This litigation was handled by Morgan locally, with Hanor serving as a consultant, in Texas, on trademark law. The vast majority of Albury's time was spent receiving and reviewing emails, documents and pleadings from Morgan, Hanor, Bodmer, and other individuals. [DE 46-1, pp. 27-35]. Plaintiff's expert noted, "the majority of [Albury's] work was keeping track of the status of the case so he could assist in hearings, conferences and meetings." [Pltf. Ex. 2, p. 3]. To have a third attorney assist on a straightforward, non-complex matter such as this was not

necessary. I find that the time spent by Albury on this litigation was largely unnecessary and duplicative of work performed by Morgan and Hanor.

*10 Once again, I find that an across-the-board reduction is most appropriate here, where Albury's bills total nine (9) pages, each with multiple entries. I recommend an 85% reduction of Albury's fees. Reducing Albury's hours (36.55) by 85% results in 5.5 hours. Multiplying those hours by his reasonable hourly rate ($250) results in $1,375 in fees.

To review, the presumptively reasonable fees in this case amount to the following:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Hugh Morgan | $350 | 67.90 | $23,765 |
| Charles Hanor | $300 | 31.41 | $9,423 |
| Bernie Kray | $175 | 13.7 | $2,397.50 |
| Joseph Albury | $250 | 5.5 | $1,375 |
| **TOTAL** | | | **$36,960.50** |

### c. Adjustment to the lodestar

As noted, once the lodestar is determined, a court may adjust it to reach a more appropriate attorneys' fee award, based on any *Johnson* factors that have not already been accounted for in determining the lodestar. *Hensley*, 461 U.S. at 434 & n.9; *Ass'n of Disabled Americans*, 469 F.3d at 1359 & n.1. Here, the Court has already accounted for the relevant *Johnson* factors, in its formulation of the lodestar.

The Eleventh Circuit has, in certain contexts, recognized an additional factor that may be considered when adjusting the lodestar: the losing party's financial resources. *See Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982) (Title VII case); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1544 (11th Cir. 1985) (Fair Labor Standards Act case); *see also Scelta v. Delicatessen Support Servs. Inc.*, 203 F.Supp.2d 1328, 1336 (M.D. Fla. 2002) (Title VII case); *Spears v. Meeks*, No. 2:10-CV-671-WKW, 2011 WL 3703966, *3 (M.D. Ala. Aug. 24, 2011) (42 U.S.C. § 1983 case); *Pugach v. M & T Mortg. Corp.*, 564 F.Supp.2d 153, 163 (E.D.N.Y. 2008) (False Claims Act case); *Mitek Holding, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-843 (11th Cir. 1999) (Copyright Act).

The Eleventh Circuit has noted that, "[e]quitable considerations appropriately guide the determination of fee awards authorized by federal statute, and the financial resources of the paying party are one such consideration." *Durrett*, 678 F.2d at 917; *see also Pugach*, 564 F.Supp.2d at 163 ("·because fee awards are at bottom an equitable matter ... courts should not hesitate to take the relative wealth of the parties into account.' ") (citation omitted). In applying this factor to the lodestar figure, the Court "should ascertain whether, in light of the [losing party's] ability to pay, a reduced assessment would fulfill the [statutory] deterrent purpose ... without subjecting the [losing party] to financial ruin." *Durrett*, 678 F.2d at 917; *Scelta*, 203 F.Supp.2d at 1336 (same); *Pugach*, 564 F.Supp.2d at 163 (same). In the context of the Copyright Act, the Court has recognized that an economic disparity between the parties may be considered, but should not be the only consideration. *Mitek*, 198 F.3d at 842-43 (Court must make an award of fees that furthers the goal of the Copyright Act).

On this record, I recommend that the Court substantially adjust the lodestar, to account for Kinzey's impecunious financial status. Kinzey credibly testified that he works as an ecotourism guide in Key West and earns approximately $24,000 per year; this is his sole source of income. [DE 53, p. 57]. He has a few hundred dollars in his bank account and his assets consist of a twenty-two year old car, a bicycle and an acoustic guitar. [*Id.*, pp. 58-59]. He does not own a home or any real property. [*Id.*, p. 58]. As for his liabilities, Kinzey pays approximately $775 per month in rent and has unpaid medical bills due to his lack of health insurance. [*Id.*, p. 59]. He also owes an undisclosed sum to the Internal Revenue Service for tax liabilities incurred in previous years; the amount of his liability was in the process of being determined at the time of the hearing. [*Id.*, pp. 59-60].

*11 It is clear that Kinzey is in financial straits. If the Court imposes the recommended statutory damages, Kinzey will be liable for $4,000 in damages (even though Plaintiff had only $62 in actual damages). This alone, will be a hardship for Kinzey, who has a very modest annual income, no meaningful assets, and what could amount to substantial tax liabilities. Shifting an attorneys' fee award of $36,960 to Kinzey would undoubtedly subject him to financial ruin, as that amount well exceeds his annual income. Kinzey does not present a risk of future trademark violations, thus an attorneys' fee award is not needed to deter him. A lesser award—which will nevertheless be burdensome for Kinzey—would fulfill the statutory purpose of deterring other potential infringers.

Accordingly, I recommend that the lodestar be adjusted to account for Kinzey's very limited financial resources and avoid his financial ruin; I recommend that an across-the-board adjustment of 75%. Adjusting the lodestar amount ($36,960.50) by 75%, results in an attorneys' fee award of $9,240.13.

### C. Costs

Last, Plaintiff also asks to be reimbursed $487.79 in costs. [DE 46-1, p. 6]. Under the Lanham Act, Plaintiff is entitled to recover its costs. 15 U.S.C. § 1117(a). Rule 54(d) provides that a prevailing party is entitled to recover its costs as a matter of course, while 28 U.S.C. § 1920 enumerates the costs that may be taxed. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-2 (1987); 28 U.S.C. § 1920.

Plaintiff seeks reimbursement for copy costs, process server fees, postage, the cost of filing a certified trademark registration, and the cost of filing Hanor's pro hac vice admission. [18] [DE 46-1, p. 6; DE 5]. I recommend that the service fees be shifted to Kinzey but that Plaintiff pay the remaining costs.

First, Plaintiff seeks a total of $130 in private process service fees as follows: $90 for "process service on William D. Kinsey" and $40 for "process service Kinsey—Zazzle, Inc." [DE 46-1, p. 6]. [19] Generally, fees of the marshal may be taxed as costs. 28 U.S.C. § 1920(1). Service by a private process server is compensable so long as the rates do not exceed the cost of having the U.S. Marshals Service effect service. *EEOC v. W & O, Inc.,* 213 F.3d 600, 624 (11th Cir. 2000); *James v. Wash Depot Holdings, Inc.,* 242 F.R.D. 645, 649 (S.D. Fla. 2007); *see also* 28 U.S.C. § 1921(a)(1)(B) (court may tax marshals' fees for serving subpoena or summons). The Marshals Service may collect up to $55 per hour for each item served, plus travel costs and other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3). To the extent Plaintiff's request for service fees exceeds the minimum charged by the Marshals Service, I recommend that the Court limit the cost for that item to $55, the minimum charged by the Marshals Service, for a total recovery of $95 ($55 + $40).

Next, under section 1920(4), "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(4); *see For Play Limited v. Bow to Stern Maintenance, Inc.,* No. 05-22002-CIV-KING, 2006 WL 3662339, *10 (S.D. Fla. Nov. 6, 2006). However, copies made merely for counsel's convenience are not taxable and Plaintiff, as the prevailing party, bears the burden of demonstrating that the copies were necessarily obtained for use in this case. *For Play Limited,* 2006 WL 3662339 at *10. Plaintiff has neglected to support its request for these costs with any invoices documenting these expenses. Absent an invoice detailing the requested copy costs, I cannot determine whether the copies were necessarily obtained for use in this case or merely incurred for counsel's convenience. Accordingly, these undocumented costs should not be taxed to Kinzey.

*12 To the extent Plaintiff requests reimbursement for postage and the costs of a certified trademark registration, those costs are not recoverable under section 1920. *See generally* 28 U.S.C. § 1920; *see Robinson v. Alutiq-Mele, LLC,* 643 F.Supp.2d 1342, 1354 (S.D. Fla. 2009) (shipping and handling costs are not recoverable). Finally, the cost of Hanor's *pro hac vice* admission is not recoverable under section 1920. *Covington v. Arizona Beverage Co., LLC,* No. 08-21894-CIV, 2011 WL 810592, *3 (S.D. Fla. Jan. 25, 2011) (citing cases).

In sum, I recommend that Plaintiff recover a total of $95 in costs.

### III. Recommendation

For all of the foregoing reasons, I **RECOMMEND** that Plaintiff's Motion for Damages and Attorney Fees [DE 41], be **GRANTED in part,** and that Plaintiff recover a **total of $13,335.13 in damages, fees and costs** as follows:

1. Statutory damages = $4,000

2. Attorneys' fees = $9,240.13

3. Costs = $95

### IV. Objections

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable James Lawrence King **within 14 days of the date of this Report and Recommendation.** Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark*

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749–50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida, this 9th day of January, 2013.

**All Citations**

Slip Copy, 2013 WL 12248141

| Footnotes |
| --- |

| 1 | Kinzey and Plaintiff's counsel—primarily Hugh Morgan—testified at length at the evidentiary hearing about their efforts to reach a settlement; some conflicting testimony was offered. The foregoing facts, however, were clearly established and essentially undisputed. |
| 2 | The Stipulation also advised that Plaintiff would dismiss Zazzle, pursuant to a settlement agreement. |
| 3 | At the pre-trial conference, Kinzey had explained to the Court that he believed that the holder of a trademark had to display the symbol "TM" with the mark, in order to enforce the trademark. [DE 35, 38]. |
| 4 | The Court found that Plaintiff owns, and Kinzey infringed, three federal trademark registrations and four Florida trademark registrations. [DE 40, ¶ F]. |
| 5 | The Court further found that Kinzey willfully, intentionally and fraudulently infringed Plaintiff's Florida registered trademarks and service marks under Florida Statute § 495.151, willfully infringed Plaintiff's common law marks, diluted Plaintiff's FANTASY FEST marks in violation of Florida Statute § 495.151 and 15 U.S.C. § 1125, engaged in palming off and unfair competition in violation of state law, and used a false designation of origin or source under 15 U.S.C. § 1125. [DE 40, ¶¶ L-Q, W]. |
| 6 | Section 1117(b) allows for actual damages, and provides that a prevailing plaintiff may recover "a reasonable attorney's fee." Plaintiff has elected to proceed under section 1117(c), which allows statutory damages, as an alternative to actual damages. It would thus appear that the attorneys' fee provision in section 1117(a)—which allows an award of "reasonable attorney fees" to the prevailing party "in exceptional cases." *See K and N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007). |
| 7 | Section 495.141 allows for an award of reasonable attorneys' fees "according to the circumstances of the case." Although Plaintiff invokes this attorneys' fee provision, it has not identified for the court any authority that has applied this standard, and the Court has found none. In my analysis of attorneys fees under the Lanham Act, I have considered the circumstances of this case, and apply that analysis to Plaintiff's claim under section 495.141. |
| 8 | Damages increase to not more than "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" if the court finds that the use of the counterfeit mark was willful. 15 U.S.C. § 1117(c)(2). Plaintiff does not ask to recover its fees under this provision. |
| 9 | Notably, only four items were actually sold, and Plaintiff purchased them for the total cost of $62.50. [DE 33, ¶ 53]. |
| 10 | Only two days later, Zazzle removed the offending merchandise from its website. [*Id.*]. |
| 11 | It is far more common for trademark infringement defendants to be sophisticated business enterprises that exploit established trademarks at considerable profit; in those cases a sizable statutory damages award would be expected. This is not such a case. |
| 12 | In *Tire Kingdom* and other decisions, the Eleventh Circuit evidently has misstated the standard for an exceptional case as one characterized as "malicious, fraudulent, deliberate *and* willful", erroneously using the |

conjunctive. 253 F.3d at 1335 (emphasis added). The Court in *Burger King* relied upon and accurately quoted the legislative history of the Lanham Act, which uses the disjunctive.

13    These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

14    According to Kelley's affidavit, Hanor's bills came to $13,032.50, rather than $17,540.06, as mentioned in Plaintiff's summary of fees. [*Compare* Pltf. Ex. 2 at p. 3 *with* DE 46, p. 3].

15    Plaintiff has not yet paid Messrs. Morgan's or Albury's fees. Rather, those attorneys and Plaintiff have agreed to await the outcome of this fee petition, after which, Morgan advised, they will reach agreement for payment of a "reasonable attorney's fee based on the circumstances of this case." [DE 53, p. 99].

16    The exhibits submitted by the parties at the hearing are found at DE 56.

17    Steve Binhak was counsel for Zazzle.

18    Plaintiff has not submitted any invoices to support its request.

19    These fees were incurred in February and March 2011, during the time Plaintiff was attempting to serve Kinzey with the Amended Complaint.

**End of Document**      © 2018 Thomson Reuters. No claim to original U.S. Government Works.



We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

WESTLAW

2013 WL 12249549
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida,

**Stephens v. Mid-Continent Casualty Company**
United States District Court, S.D. Florida, Key West Division. | November 20, 2013 | Slip Copy | 2013 WL 12249549 *(Approx. 3 pages)*

Jennifer A. STEPHENS, as Personal Representative of the Estate of
Charles Eugene Becker and as Assignee of Anchorage Homes, LLC,
Plaintiff,

v.

MID-CONTINENT CASUALTY COMPANY, Defendant.

CASE NO. 10-CV-10110-KING/MCALILEY
Signed 11/19/2013
Entered 11/20/2013

**Attorneys and Law Firms**

Danya Pincavage, Stephen A. Marino, Jr., Randall Scott Goldberg, Ver Ploeg & Lumpkin, P.A., Miami, FL, for Plaintiff.

John Patrick Joy, Walton Lantaff Schroeder & Carson, Fort Lauderdale, FL, James Thaddeus Armstrong, Walton Lantaff, Miami, FL, for Defendant.

**ORDER ON MOTIONS FOR ATTORNEY'S FEES AND COSTS**

JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE

**\*1 THIS CAUSE** comes before the Court upon Magistrate Judge Chris M. McAliley's September 6, 2013 Report & Recommendation ("R&R") on Defendant's Motion for fees and costs. (DE #214). After the Court entered an **order** for Summary Judgment in favor of Defendant, (DE #194, 195), Defendant moved for fees and costs. (DE #199, 200).[1] This Court referred any motions seeking an award of **attorney's fees** and costs to Magistrate Judge McAliley. (DE #201). Judge McAliley's R&R recommends that the Court grant both of Defendant's Motions in part, awarding Defendant a reduced amount of fees and costs.

Defendant timely filed its objections to the R&R on September 16, 2013. (DE #216). Plaintiff then filed its response to Defendant's objections on September 30, 2013. (DE #217). The Court has reviewed Defendant's motions, responses and replies thereto Judge McAliley's R&R and Defendant's objections and hereby affirms Judge McAliley's recommendation and enters Final Judgment for fees and costs in favor of Defendant as set forth below.

**I. BACKGROUND**

Plaintiff, as the personal representative of the Estate of Charles Eugene Becker (the "Estate") and assignee of the Anchorage Homes, LLC, brought this diversity action for breach of contract against Defendant, based on its refusal to defend and indemnify Anchorage Homes in an action for damages brought against Anchorage that arose from the death of Charles Eugene Becker. (DE #1).

On September 20, 2012, Defendant served an offer of judgment, pursuant to Florida Salute section 768.79, on Plaintiff. (DE # 199-1 at 1). Plaintiff rejected the offer of judgment on September 24, 2012 (DE #185). On January 7, 2013, the Court entered summary judgment in favor of Defendant. (DE #194, 195).

Defendant has requested reasonable **attorneys' fees** pursuant to Florida's offer of judgment statute. (DE #199; Fla. Stat. § 768.799(1)) Defendant also seeks to recover its taxable costs pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d). (DE #200). Plaintiff did not object to Defendant's entitlement to **attorney's fees**, but contends

**SELECTED TOPICS**

United States Magistrates

Review and Supervision by District Court
United States Magistrate Judge Report

**Secondary Sources**

**s 3070.1. Practice and Procedure with Regard to Dispositive Motions-Manner and Effect of Objections to the Magistrate Judge's Recommendations**

12 Fed. Prac. & Proc. Civ. § 3070.1 (2d ed.)

...Rule 72(b)(2) sets forth procedures to be followed by parties who object to the magistrate judge's recommendations and by the district judge to whom the case is assigned. It adapts the analogous provis...

**Effect of party's failure to file timely objections, under 28 U.S.C.A. sec. 636(b)(1), to magistrate's findings or recommendations on right of review in appellate court**

80 A.L.R. Fed. 921 (Originally published in 1986)

...This annotation collects and analyzes the federal cases in which the courts have discussed or decided whether, or under what circumstances, a party's right to appeal to the appellate court is affected ...

**Duty of District Court to hold evidentiary hearing before acting upon magistrate's findings of fact and recommendations submitted pursuant to 28 U.S.C. sec. 636(b)(1)(B)**

49 A.L.R. Fed. 763 (Originally published in 1980)

...This annotation collects and analyzes the federal cases which have determined whether a District Court is under a duty to hold an evidentiary hearing before acting upon a United States magistrate's fin...

See More Secondary Sources

**Briefs**

**Brief of Defendant-Appellee**

1998 WL 34179960
Leon JOHNSON, Plaintiff-Appellant, v. ZEMA SYSTEMS CORPORATION, a Delaware corporation, doing business as Chicago Beverage Systems, Inc. and Coors Distributing of Illinois, Defendant-Appellee.
United States Court of Appeals, Seventh Circuit.
1998

...The Plaintiff-Appellant's jurisdictional statement is not complete and correct. The District Court's jurisdiction over Plaintiff's age and race discrimination claims was founded on Title VII, 42 U.S.C....

**Appellees' Joint Response Brief**

2017 WL 2629722
Sanford B SCHUPPER, Appellant, v. Robyn CAFASSO et al., Appellees.
United States Court of Appeals, Tenth Circuit.
June 15, 2017

...Plaintiff-Appellant Sanford B. Schupper ("Schupper") has attempted the following appeals related to the case: 1.Colorado Court of Appeals Case 2005CA764, in which Schupper appealed his criminal convic...

**Answer Brief of Defendants-Appellees**

that the award be against the Plaintiff as the representative of the Estate of Charles Becker and not against the beneficiaries. (DE # 206 at 2-3). Plaintiff asserts in her response to Defendants objections that the R&R is well supported by law, and thus, Plaintiff request that this Court overrule Defendant's objections to Judge McAliley's R&R. (DE #217 at 3).

## II. DISCUSSION

### A. Defendant's Award as to Attorney's Fees

The R&R recommends that Defendant be entitled to recover a reasonable **attorney's fee** from Plaintiff, Jennifer A. Stephens in her capacity as personal representative of the Estate, pursuant to Florida Statute section 768.79(1) for fees and costs incurred after September 20, 2012, the day the offer of judgment was served on Plaintiff. Judge McAliley agrees with Defendant's that the hourly rates provided in support of its Motion for fees are reasonable. However, Defendant's heavily redacted bills submitted in support of its Motion for fees and the inclusion of several duplicative and unnecessary items warrants an across-the-board reduction of fees to be awarded. Defendant has objected to the calculations used to reduce the recoverable fees stated in the R&R. [2] Defendant does not object to the R&R's reduction as to taxable costs.

#### i. Judgment against Plaintiff, Jennifer A. Stephens

[*2] The Court finds that Judge McAliley's recommendation that the award be imposed against Plaintiff, Jennifer A. Stephens is correct. **Attorney's fees** awarded pursuant to Florida Statute section 768.79 will not be against the survivors but against the personal representative. *Walker v. Bozeman*, 243 F. Supp. 2d 1298, 1307 (N.D. Fla. 2003). The personal representative was a party to the litigation who filed, pursued the lawsuit, and decided whether or not to accept any offers of judgment. *See Id.* at 1305. Thus, an award of **attorney's fees** is entered only against Jennifer A. Stephens in her capacity as personal representative of the Estate of Charles Eugene Becker.

#### ii. Defendant's Objections

Defendant argues that Judge McAliley's reasoning for reducing the recoverable amount is duplicative as to the determination of the number of hours used to calculate the recoverable fees. (DE #216 at 2). Defendant argues that Judge McAliley should not have used an across-the-board reduction along with a thorough hour-by-hour/category-by-category analysis overruling many of Plaintiff's objections. *Id.* However, the Court finds that Judge McAliley's reasoning and calculations were proper. Judge McAliley examined all of Plaintiff's objections and gave a decision and opinion as to each one. (DE #214 at 6-11). In evaluating Defendant's billing entries, Judge McAliley found it difficult and at times impossible, to determine whether the billing entries were reasonable as there were numerous redactions in the record. (DE #214 at 10). [3]

After discussing each of the objections provided by Plaintiff, Judge McAliley determined that hours expended on legal services should be reduced. *Id.* In these circumstances, the Court is permitted to exercise its discretion in determining the reasonable hours used to compute the recoverable **attorney's fees**. *Blue Water Marine Servs., Inc. v. m/y Natalita III*, 2010 WL 1330265 at *7 (S.D. Fla. Feb. 2, 2010). Because of inadequate documentation of the hours expended, Judge McAliley found that an overall percentage reduction would be an appropriate method to calculate recoverable fees. *See Lee v. American Eagle Airline, Inc.*, 93 F. Supp. 2d 1322, 1333 (S.D. Fla. 2000)(finding that because the party's documentation was inadequate "for purposes of demonstrating that these hours were reasonably expended in the litigation of this matter the hours claimed were reduced by 50%.)."

[Judge McAliley's reduction of hours expended by each timekeeper by 40%, and thus, the awarding the Defendant **attorney's fees** for $17,687.50 is affirmed.

### B. Defendant's Award as to Costs

Defendant is also entitled to recover costs under Federal Rules of Civil Procedure Rule 54(d). Taxation of costs are authorized in 28 U.S.C. § 1920. Judge McAliley reviewed the requested taxable costs filed by Defendant and objections filed by Plaintiff and correctly reduced the amount of taxable costs to be awarded. Defendant raises no objections to the R&R reduction of its taxable costs. In accordance with Judge McAliley's reductions, Defendant is to be awarded a total of $11,958.93 in taxable costs.

## III. CONCLUSION

After a thorough review of Defendant's Motions, the responses and replies thereto, Judge McAliley's R&R and Defendant's objections thereto, and the entire record in this case the

2019 WL 494948
Minh PHAM, Plaintiff-Appellant, v. Michael AHRENS, Officer, in his official and individual capacity, Glenn Mahr, Officer, in his official and individual capacity, City of Denver, and governor" John W. Hickenlooper, former Mayor of Denver, Defendants-Appellees.
United States Court of Appeals, Tenth Circuit.
Jan. 30, 2014

...Defendants-Appellees are a governmental entity and employees of a governmental entity. Fed. R. App. P. 26.1 is not applicable and a corporate disclosure statement is not required. Pursuant to 10th Cir....

See More Briefs

**Trial Court Documents**

Moore v. University of Pittsburgh of the Com. System of Higher Educ.

2004 WL 6019074
Patricia M. MOORE, M.D., Plaintiff, v. UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, University Of Pittsburgh Physicians, UPMC Health System, Steven T. DeKosky, M.D., individually and in his official capacity as chairman of the Department of Neurology, and Arthur S. Levine, M.D., individually and in his official capacity as the Dean, School of Medicine, Defendants.
United States District Court, W.D. Pennsylvania.
May 17, 2004

...On October 15, 2002, Defendants removed this action from the Court of Common Pleas of Allegheny County, Pennsylvania to this Court. On October 17, 2002, the case was referred to United States Magistrat...

United States of America v. Lanier

2016 WL 2864310
UNITED STATES OF AMERICA, v. Ricky LANIER and Katrina Lanier.
United States District Court, E.D. Tennessee, Northeastern Division.
May 06, 2016

...This matter is before the Court on defendants Ricky Lanier and Katrina Lanier's motion for new trial and renewed motion to interview deliberating jurors, [Doc. 223]. The government has responded and on...

GFI Wisconsin, Inc. v. Reedsburg Utility Com'n

2010 WL 6972822
GFI WISCONSIN, INC., f/k/a Grede Foundries, Inc., Appellant, v. REEDSBURG UTILITY COMMISSION and Wisconsin Electric Power Company, Appellees.
United States Bankruptcy Court, W.D. Wisconsin.
Nov. 10, 2010

...Appellant GFI Wisconsin, Inc., formerly known as Grede Foundries, Inc., appeals an order of the bankruptcy court allowing appellees Reedsburg Utility Commission and Wisconsin Electric Power Company to ...

See More Trial Court Documents

Court concludes that the R&R is well-reasoned and accurately states the law of the case. Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** as follows.

**\*3** 1. Judge Chris M. **McAliley's** September 6, 2013 Report & Recommendation (DE #214) be, and the same is, hereby **AFFIRMED** and **ADOPTED** as an **Order** of this Court and Defendant's Objections to the Report and Recommendation are **OVERRULED.**

2. Defendant Mid-Continent Casualty Company's Motion for **Attorneys' Fees** (DE #199) be, and the same is, hereby **GRANTED in part.** Defendant shall recover **attorneys' fees** in the amount of **$17,687.50.**

3. Defendant Mid-Continent Casualty Company's Motion Tax Costs (DE #200) be, and the same is, hereby **GRANTED in part.** Defendant shall recover taxable costs in the amount of **$11,958.93.**

**DONE** and **ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 19th day of November, 2013.

**All Citations**

Slip Copy, 2013 WL 12249549

| Footnotes |
| --- |

1   Responses to the Motion for fees and costs and replies have been filed. (DE #205, 206, 207, 208)

2   Plaintiff does not object to the R&R or entitlement of fees and costs, but has filed a Response to Defendant's Objection. (DE #217).

3   "The bills contain approximately 206 redacted entries; about 80% of the total billing entries ... [t]his Court has reviewed countless billing records to resolve **attorneys' fees** disputes, and has never seen redactions to the extent presented here...." (DE #214 at 7).

---

**End of Document**            © 2018 Thomson Reuters. No claim to original U.S. Government Works.



Fodere v. Lorenzo, Not Reported in F.Supp.2d (2012)

2012 WL 12947100
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

Alexia FODERE, Plaintiff,
v.
Pablo LORENZO and Compacstone
USA Inc., Defendants.

CASE NO: 09-23120-CIV-KING/MCALILEY
|
Signed 05/16/2012

**Attorneys and Law Firms**

John Bruce Ostrow, Stephen Asher Ostrow, John B. Ostrow, P.A., Miami, FL, for Plaintiff.

Carlos Federico Osorio, Anna Aurelia Mance, Hendrik Gerardus Milne, Aballi Milne Kalil & Escagedo, Miami, FL, for Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND BILL OF COSTS**

CHRIS MCALILEY, UNITED STATES MAGISTRATE JUDGE

*1 Pending before the Court is Defendant Compacstone's Motion to Tax Costs and **Motion** for Fees as Prevailing Party and Successful Offeror Under Rule 68. [DE 163; 166]. Defendant Compacstone in whose favor summary judgment was entered [DE 155], pursuant to 17 U.S.C. § 505 and Federal Rules of Civil Procedure 54(d) and 68, asks to recover the attorneys' fees and costs it incurred in this Court.[1] The Honorable James Lawrence King referred those motions to me, and they are fully briefed. [DE 164, 169, 170, 175]. For the reasons set forth below, I recommend that the Court grant the motions in part.

Judge King has also referred to me the issue of the amount of appellate attorneys' fees Defendants may recover for successfully defending against Plaintiff's appeal. [DE 189, 190]. For the reasons expressed below, I recommend that the Court award Defendant $12,687.50 in appellate attorneys' fees.

**I. Background**

On October 16, 2009, Plaintiff, a professional photographer, brought suit against Pablo Lorenzo and Compacstone USA Inc., for violating her copyright in her "Orange Kitchen" photograph. In a nutshell, Plaintiff asserted that she had given Defendants written permission to use the photograph "for public relations collateral and website usage" [DE 1, ¶ 8], but that Defendants made unauthorized use of the image in an advertisement for Compacstone.

Defendants filed a motion to dismiss the complaint, arguing that Plaintiff lacked standing [DE 10], which the Court denied on December 16, 2009. [DE 14]. On January 8, 2010, prior to taking the deposition of Plaintiff, Defendants filed a motion for summary judgment, again arguing that Plaintiff lacked standing. [DE 22, p. 4]. Defendants also asserted that Plaintiff's claim was barred by the doctrine of accord and satisfaction because Defendants had sent Plaintiff a check for $1,000.00 which had not been returned. [Id. at p. 5]. On January 20, 2010, Defendant served an Offer of Judgment on Plaintiff pursuant to Federal Rule of Civil Procedure 68. [DE 166-1, p. 13].

After deposing Plaintiff on January 28, 2010, Defendants filed a supplemental motion for summary judgment on February 3, 2010, citing the Plaintiff's deposition in further support of their standing argument, and arguing for the first time that summary judgment should be granted in favor of Defendant Lorenzo individually because Plaintiff could present no proof of contributory infringement. [DE 50]. On February 26, 2010, the Court denied Defendant's motion and supplemental motion for summary judgment. [DE 75].

Pursuant to a revised scheduling order [DE 146], Plaintiff and Defendants filed cross motions for summary judgment. [DE 147, 148]. On February 4, 2011, the Court granted Defendants' motion for summary judgment and denied Plaintiff's motion. [DE 155]. In a lengthy opinion, the Court once again rejected Defendants' argument that Plaintiff did not have standing to bring her copyright claim, but then found that Plaintiff could not establish infringement because the undisputed evidence showed that Defendant Compacstone had an oral license to use the photograph at issue in advertising. The Court found that, in light of its resolution of the claim against

Compactstone that it need not reach the claim against Lorenzo individually. [*Id.*].

**\*2** Plaintiff moved for reconsideration, and when that motion was denied, appealed the judgment against her. [DE 157, 160, 161]. On October 27, 2011, the Eleventh Circuit affirmed the summary judgment in favor of Defendants. [DE 185]. On February 23, 2012, the Eleventh Circuit granted in part, without opinion, Defendant Compacstone's motion for appellate attorneys' fees pursuant to 17 U.S.C. § 505 [DE 189], and remanded to this Court the issue of the amount of appellate attorneys' fees to be awarded. [*Id.*].

## II. Analysis

### A. Attorneys' fees in the trial court

Defendant Compacstone asserts that it is entitled to recover its attorneys' fees in the trial court pursuant to Federal Rule of Civil Procedure 68 and 17 U.S.C. § 505.

### 1. Rule 68

Rule 68 sets forth the procedure for making and accepting an offer of judgment. Rule 68 provides that if, after an offer is rejected, "*the judgment that the offeree finally obtains* is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed.R.Civ.P. 68(d) (emphasis added). It is undisputed that Defendants offered Plaintiff $1,500 in settlement of this action pursuant to Rule 68, Plaintiff did not accept the offer, and that judgment was entered in favor of Defendants.

The plain language of Rule 68(d) contemplates the offeree (here, the Plaintiff) having obtained a judgment, which, of course, did not happen. "[T]he Supreme Court [has] held that Rule 68 does not apply where judgment is entered against the plaintiff offeree and in favor of the defendant offeror." *Tolz v. Lauderdale Dev., Ltd.*, 235 B.R. 130, 131 (Bkrtcy. S.D. Fla. 1999) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981)). Because judgment was entered here against Plaintiff and in favor of Defendants, Defendant is not entitled to recover attorneys' fees pursuant to Rule 68.

### 2. 17 U.S.C. § 505

Defendant Compacstone also moves to recover its attorneys' fees in the trial court pursuant to 17 U.S.C. § 505, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party ... the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Successful plaintiffs and defendants are equally entitled to recover costs and attorneys' fees under Section 505. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *see also Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, \* 4 (S.D. Fla. July 1, 2008). Attorneys' fees are not awarded as a matter of course; rather, an award is within the court's discretion. "In determining whether to award a prevailing party attorneys' fees, courts should not award fees as a matter of course but rather consider such non-exclusive factors as frivolousness, motivation, objective unreasonableness both factually and legally, and the need to advance considerations of compensation and deterrence." *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, No. 8:03-cv-1377-T-17MAP, 2011 WL 4382450, \* 2 (M.D. Fla. Aug. 9, 2011) (citing *Fogerty*, 510 U.S. at 534 n. 19).

The court must evaluate the reasonableness of the losing party's position "as of the time that the party took the stance at issue, not with the benefit of hindsight that the conclusion of the litigation brings." *Luken v. International Yacht Council, Ltd.*, 581 F.Supp.2d 1226, 1239-40 (S.D. Fla. 2008). "In considering these factors, however, courts must be careful to award fees only where such an award is 'faithful to the purposes of the Copyright Act.' " *Id.* at 1239 (quoting *Fogerty*, 510 U.S. at 535).

**\*3** On February 23, 2012, the Eleventh Circuit granted in part, without opinion, Defendant Compacstone's motion for appellate attorney's fees, finding that Defendant was entitled to the fees pursuant to § 505. [DE 189]. In arguing to the Eleventh Circuit that an award of appellate fees was appropriate under § 505, Defendants made verbatim the same argument that they raise here that Plaintiff's claims were frivolous, brought for improper

Fodere v. Lorenzo, Not Reported in F.Supp.2d (2012)

motive and **objectively** unreasonable. *Compare* [DE 175, pp. 2-3] (trial court reply) *with* [DE 189, pp. 6-7] (appellate court motion). Thus, implicit in the Eleventh Circuit's decision to award Defendant appellate fees pursuant to § 505 is a conclusion that the proceedings in the trial court also met the requirements for the award of fees under § 505. Therefore, I recommend that the Court find that Defendant Compacstone is entitled to recover its reasonable attorneys' fees pursuant to § 505.

### 3. Amount of fees

Having resolved the issue of entitlement at the trial court level, I turn to the issue of the amount of fees Defendant is entitled to recover. Section 505 allows the award of reasonable attorneys' fees. Here, Defendant is seeking $119,311.00 in attorneys' fees. As Defendant explains, of that amount "$75,000 was billed and paid and the balance was *pro bono* but collectible, if at all, out of any actual recovery." [DE 166, p. 7]. According to the billing records, the *pro bono* portion of the representation began on April 1, 2010. [DE 166-1, p. 40].

The starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate, resulting in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### i. Reasonable hourly rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Coy v. Allstate Floridian Ins. Corp.*, No. 2:05-cv-103-FtM-34DNF, 2007 WL 1732098, at *8 (M.D. Fla. June 14, 2007). Defendant seeks an hourly rate of $425.00 for Hendrik Milne, $300.00 for Carlos Osorio, and $170.00 for Anna Mance. [DE 166, pp. 7-8]. In evaluating the reasonableness of these rates, this Court has considered the qualifications of Defendant's counsel as set forth in the motion, and the record in this action.

Having made this review, and considering this Court's own judgment and expertise, the Court finds that $375.00 is a reasonable hourly rate for Hendrik Milne, $300.00 is a reasonable hourly rate for Carlos Osorio, $170.00 is a reasonable hourly rate for Anna Mance in this action. *See Norman*, 836 F.2d at 1303 (the court may consider its own knowledge and expertise concerning reasonable and proper fees).

### ii. Hours reasonably expended

The second half of the lodestar equation is the hours reasonably expended. The moving party bears the burden of providing the court with sufficiently detailed records, so that the court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. The fee applicants must exercise "billing judgment", meaning they must exclude from their petition hours that would be unreasonable to bill to a client, and therefore to one's adversary, irrespective of the skill, reputation or experience of counsel. *Id.* at 1301. For its part, the Court must exercise its own judgment when reviewing a claim. *Id.* at 1301-2. In particular, the Court must exclude "excessive, redundant or otherwise unnecessary" hours from its calculation of hours reasonably expended. *Blue Water Marine Services, Inc. v. M/Y Natalita III*, No. 08-20739, 2010 WL 1330265, *7 (S.D. Fla. Feb. 2, 2010) (quoting *Norman*, 836 F.2d at 1301).

Here, Defendants' counsel's extensive use of block billing significantly hampers the Court's ability to evaluate the reasonableness of the hours billed. *Lil' Joe Wein*, 2008 WL 2688117, *11 (block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable."). For example, on November 9, 2009, Osorio billed 1.80 hours for:

> *4 Follow up exchanges with P. Lorenzo regarding potential representation; confer with H. Milne regarding same, as well as conflict waiver letter; draft and edit conflict waiver letter; telephone conference with C. Ferrando regarding potential strategy, costs/ fees, settlement and timeline for case; research regarding attorneys fees when copyright not registered;

Fodere v. Lorenzo, Not Reported in F.Supp.2d (2012)

notes to file regarding same; review profit and loss figures from O. Hurtado and notes to file regarding same.

[DE 166-1, p. 20]. Similarly, on January 14, 2010, Osario billed 5 hours for:

Receipt and review order resetting trial date and denying motion to compel; receipt and review discovery from plaintiff and commence analyzing; confer with H. Milne regarding pre-trial and trial strategy; update C. Ferrando as to recent developments and obtain authorization for offer of judgment; notes to file regarding same; email to clients regarding developments and need for high activity in next month; further revisions to Rule 68 offer of judgment and confer with H. Milne regarding same; research regarding ability to make offers of judgment into settlement agreements; receipt and review plaintiff's initial disclosures; confer with H. Milne regarding mediation after receipt of mediation inquiry by plaintiff; revise damages memorandum of O. Hurtado.

[DE 166-1, p. 25].

Unfortunately, there are many more examples like these.

When so many different tasks are grouped together, it is not possible for the Court to determine whether the time spent on any particular task was reasonable. Nevertheless, having reviewed the entirety of Defendant's billing records for litigation before this Court, for various reasons I am left with the firm impression that Defendant asks to recover for redundant and excessive hours. For example, the billing records include time devoted to internal firm matters, reflected in several entries for time spent on a conflict waiver by Defendant; matters not properly billed to an adversary. [DE 166-1, pp. 20-1]. Defendant also seeks to recover for services, before this matter became a pro bono representation, for which the client was not charged, presumably in recognition that the hours

were redundant or excessive. *See, e.g,* [DE 166-1, p. 28]. The billing records also document that Defendant wants to recover from Plaintiff fees of multiple attorneys, when they worked on the same tasks and engaged in frequent conferences. *See, e.g.,* [DE 166-1, pp. 24-5]. More generally, the docket and billing records reflect a very aggressive approach by defense counsel—for example, repeated unsuccessful challenges to Plaintiff's standing—that belies Defendant's characterization of the Plaintiff's claim as "minimal," and that appears to this Court to have resulted in excessive legal fees.[2] Taken together, these observations lead me to the conclusion that some of the hours sought by Defendant are excessive and redundant.

Where the fee request—like the one now before the Court—is voluminous "it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction" and "need not engage in an hour-by-hour analysis." *Loranger,* 10 F.3d at 783. Following this approach, I recommend that the hours of legal work for which Plaintiff seeks compensation be reduced by 45% to account for Defendant's ambiguous, excessive, unnecessary and redundant billing. Thus, I find that the hours reasonably expended in the trial court by Hendrik Milne are 15.3 (27.8 x .55)[3], the hours reasonably expended in the trial court by Carlos Osorio are 186.2 (338.6 x .55), and the hours reasonably expended in the trial court by Anna Mance are 19.1 (34.8 x .55).

**\*5** Multiplying the reasonable hourly rates with the hours reasonably expended by Defendant's counsel, I recommend that Defendant Compacstone be awarded a total of **$64,844.50** in attorneys' fees expended in the trial court.[2]

## B. Attorneys' fees in the appellate court

Defendant seeks a total of **$16,727.60** in appellate attorneys' fees. [DE 189, p. 11]. In reaching this total, Defendant has reduced by 20% the hours expended by its counsel to account for any potential claim of inefficiency. [*Id.*]. Because the Eleventh Circuit has already determined Defendant's entitlement to appellate fees, the only issue to be resolved is the amount of reasonable attorneys' fees to be awarded.

### 1. Reasonable hourly rate

Fodere v. Lorenzo, Not Reported in F.Supp.2d (2012)

Defendants seek an hourly rate of $425 for Hendrik Milne, $300 to $345 per hour for Carlos Osario, $315 per hour for Joshua Poyer, $170 per hour for Anna Mance and $125 per hour for paralegal Janet Betancourt.[3] For the reasons set forth above, I find that **$375.00** is a reasonable hourly rate for Hendrik Milne, **$300.00** is a reasonable hourly rate for Carlos Osario, **$170.00** is a reasonable hourly rate for Anna Mance in this action.[4] Because Joshua Poyer has substantially the same experience level as Osario, [DE 189, p. 12], I find that a reasonable hour rate for Poyer is **$300.00**.

### 2. Hours reasonably expended

As discussed above, Defendant bears the burden of providing the court with sufficiently detailed records, so that the court can assess the time claimed for each activity,

and "excessive, redundant or otherwise unnecessary" hours should be removed from the calculation of hours reasonably expended. *Norman*, 836 F.2d at 1303; *Blue Water Marine Services, Inc.*, 2010 WL 1330265, * 7.

Defendant concedes a 20% reduction in the hours billed, to address any inefficiencies in billing. [DE 189, p. 11]. The billing records also show that 14.4 hours of Osario's time was billed for activities in the trial court related to Defendant's motion to tax costs. [DE 189, p. 16]. These hours are not recoverable as part of the appellate attorneys' fee award.

Subtracting the hours spent on the cost issue in the trial court, and applying the 20% across-the-board reduction in hours, I recommend that the Court award Defendant Compacstone a total of **$12,687.50** in appellate attorneys' fees, calculated as follows:

| Timekeeper | Hours billed[5] | Hourly rate | Total |
| --- | --- | --- | --- |
| Hendrik Milne | .9 | $375 | $337.50 |
| Carlos Osario | 37.1[6] | $300 | $11,130.00 |
| Joshua Poyer | 1.8 | $300 | $540.00 |
| Anna Mance | 4.0 | $170 | $680.00 |
| **TOTAL** | | | 12,687.50 |

### C. Costs

*6 Defendant Compacstone seeks to recover $2,751.60 in costs for deposition transcripts and court reporter fees pursuant to 28 U.S.C. § 1920(2), and $2,549.82 in legal research expenses pursuant to 17 U.S.C. § 505. [DE 163, p. 2]. Section 505 allows for the recovery of "out-of-pocket expenses incurred by the attorney which are typically charged to a client in the course of providing legal services.... Other costs, such as those incurred by a party ... such as docket fees and deposition expenses, are recoverable only to the extent permitted by 28 U.S.C. § 1920." *Lil'Joe Wein*, 2008 WL 2688117, * 14.

### 1. Deposition costs

Taxation of deposition costs is authorized by § 1920(2), so long as the depositions were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *United States Equal Opportunity Comm. v. W & O, Inc.*, 213 F.3d 600, 620-21 (11th Cir. 2000). However, the costs of mini-transcripts, ASCII transcripts, and videotape copies (in addition to hard copies) are generally not recoverable absent a showing that these items were necessarily obtained for use in the case rather than for the convenience of counsel. *See Johnson v. Comm. Supply Corp.*, No. 05-60510-CIV, 2006 WL 3709620, *2 (S.D. Fla. Dec. 14, 2006).

Plaintiff argues that she is a "struggling photographer who lives on a job to job basis" and asks the Court to take into account her financial situation in considering the costs award. [DE 170, p. 15]. In order for a court to consider the non-prevailing party's financial circumstances in determining the amount to award as costs under § 1920, the non-prevailing party must provide clear proof of "dire financial circumstances." *Colomar v. Mercy Hospital, Inc.*, No. 05-22409-CIV, 2008 WL 4459383, * 6 (S.D. Fla. Sept. 29, 2008) citing *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000). However, "a court may not decline to award any costs at all." *Id.*

Plaintiff has filed an affidavit indicating that she does not receive a steady income, that she earned $26,000 in the past 12 months, that she lives in a friend's garage with a rent of $300/month, she has no assets other than a few old cameras worth approximately $1,000 and an savings account with $457.00. [DE 170, pp. 48-49]. Plaintiff avers "I am in a very bad financial position and barely have money for food and basic living expenses." [*Id.* at ¶ 11]. Defendant does not dispute Plaintiff's claim of financial inability. I find that Plaintiff has established that she is in "dire financial circumstances" and I recommend that Defendant's cost award under § 1920 be reduced by 70%.

Defendant has not provided any invoices or cited to the sections of the voluminous billing record it believes supports its request for deposition costs. After an independent review of the billing records, the Court has found only $2,325.35 in charges for the depositions of Paul Morris, Carlos Ferrando, Pablo Lorenzo and Olga Hurtado. [DE 163-1, p. 20]. Plaintiff does not dispute that these depositions were necessarily obtained for use in the case. However, because Defendant did not provide the invoices for the depositions, I cannot determine whether the amounts sought include costs that are not recoverable. Therefore, I recommend that the amount recovered for depositions be reduced by 5% to account for any non-recoverable charges. Applying the 5% reduction to the $2,325.35 in charges for depositions, the amount of depositions costs is $2,209.08. Reducing that amount by 70% to account for Plaintiff's dire financial circumstances, I recommend Defendant Compacstone recover **$662.72** for the costs of depositions and court reporter fees.

Footnotes

### 2. Legal research

*7  The cost of legal research is recoverable pursuant to § 505 as an attorney out-of-pocket expense. *Lil' Joe Wein*, 2008 WL 2688117, * 14. Defendant has provided billing records supporting its claim that it incurred **$2,549.82** in research expenses and I recommend that Defendant be awarded this amount.

### III. Recommendation
Based on the foregoing, I respectfully recommend that the Court:

1. **GRANT IN PART** Compacstone's Motion to Tax Costs [DE 163], and tax costs in the total amount of $3,212.54.

2. **GRANT IN PART** Compacstone's **Motion** for Fees as Prevailing Party and Successful Offeror Under Rule 68 [DE 166], and award trial court attorneys' fees pursuant to 17 U.S.C. § 505 in the total amount of **$64,844.50.**

3. Award Compacstone a total of **$12,687.50** in appellate attorneys' fees.

### IV. Objections
The parties may file written **objections** to this Report and Recommendation with the Honorable James Lawrence King within **fourteen days** of the date of this Report and Recommendation. Failure to timely file **objections** shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 16th day of May, 2012.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 12947100

Fodere v. Lorenzo, Not Reported in F.Supp.2d (2012)

1   Defendant Compacstone covered all of Defendant Lorenzo's defense expenses. [DE 163, p. 1; 166, p. 7]. Thus, Defendant Lorenzo does not seek to recover any fees or costs.

2   Defendant has provided 30 pages of billing records [DE 163-1]; unfortunately, Plaintiff has not analyzed particular entries, relying instead on its across-the-board argument that Defendant is not entitled to any fees. As a result, the Court does not have the benefit of Plaintiff's review of specific entries.

3   The final hours are rounded to the nearest tenth.

2   The Court reached this total by taking the sum of the amount of reasonable attorneys' fees for each of Defendant's attorneys:

| | |
|---|---|
| Milne | 15.3 hours x 375 = 5,737.50 |
| Osario | 186.2 hours x 300 = 55,860.00 |
| Mance | 19.1 hours x 170 =3,247.00.00. |

3   Because the total time billed by Betancourt (.07 hours reduced by 20 percent to .56 hours) consisted of research regarding a possible judgment or bankruptcy filing by Plaintiff [DE 189, p. 28], a topic unrelated to the appeal, I recommend that Defendant not recover for any of Ms. Betancourt's time. Therefore, I do not decide whether $125 per hour is a reasonable hourly rate for a paralegal.

4   At some point late in the appeal, Osario's hourly rate was increased from $300 to $345. [DE 189, p. 12]. Because I find that $300 is a reasonable hourly rate for Osario on this matter, I will apply that rate to all of Osario's hours billed.

5   Hours billed are rounded to the nearest tenth. *See* DE 189, pp. 11-12, for the hours sought for Milne, Poyer and Mance.

6   Osario's hours are calculated as follows: 60.8 total hours sought, less 14.4 hours for the cost issue, equals 46.4 hours. The 46.4 hours are then reduced by 20% to 37.1.

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Centennial Bank v. West Key Associates, LLC, Slip Copy (2013)

2013 WL 12162390
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

CENTENNIAL BANK, f/k/a Marine
Bank of the Florida Keys, Plaintiff,
v.
WEST KEY ASSOCIATES, LLC, et al., Defendants.

CASE NO. 12-10040-CIV-MARTINEZ/MCALILEY
|
Signed 06/24/2013
|
Entered 06/25/2013

**Attorneys and Law Firms**

Christopher Stephen Carver, Sandra Jessica Millor,
Brendan I. Herbert, Akerman Senterfitt, Miami, FL, for
Plaintiff.

Paul A. Bravo, Weil Gotshal & Manges, Miami, FL,
Steven M. Davis, Becker & Poliakoff, PA, Coral Gables,
FL, for Defendants.

**REPORT AND RECOMMENDATION**

CHRIS McALILEY, UNITED STATES
MAGISTRATE JUDGE

**\*1** Pending before the Court is Plaintiff, Centennial
Bank's, Verified **Motion** for Attorneys' **Fees** and Costs
against Defendants West Key Associates, LLC, Anthony
Sauta, Ronald J. Costello, R. Reginald Hyde, Daniel J.
Duffy, Joseph Cannova and Frank J. Navarro [DE 81],
and Centennial's Bill of Costs. [DE 74]. For the reasons set
forth below, I recommend that the **motion** for attorneys'
**fees** and costs and the bill of costs be granted in part.

**I. Entitlement**
This action arose from a loan Centennial made to West
Key Associates ("West Key"). West Key delivered a
note and mortgage to Centennial and the individual
Defendants, all managers or agents of West Key, each
signed identical personal guarantees of West Key's debt.
Defendants defaulted on the loan, and Centennial brought
this lawsuit to enforce the note, mortgage and guarantees.

[DE 1]. The Court entered final default judgment against
Defendants [1] on October 11, 2012. [DE 68].

Centennial now asks to recover $29,527.50 in attorneys
fees and $2,618.30 in costs it incurred bringing this
action. [2] From West Key it relies upon the Note and
Mortgage, and from the individual Defendants to relies
upon their guarantees. [DE 81, pp. 2, 8]. In its motion,
Centennial lumped all Defendants together, asking that
each Defendant be held jointly and severally liable for
entire amount of fees and costs Centennial recovers. Two
of the guarantors, Defendants Hyde and Sauta, opposed
Centennial's request to recover from each guarantor the
fees Centennial incurred in enforcing its claim against the
other guarantors. [DE 81, p. 3].

Hyde's and Sauta's **objections** were well taken. Centennial
is entitled to recover attorneys' fees and costs as follows.
The Note and Mortgage provide that the borrower, West
Key, is liable for reasonable attorneys' fees and expenses
Centennial incurred in collecting the Note and enforcing
its rights under the Mortgage. [DE 6-1, p. 3; 6-2. ¶
18]. Each guaranty, in turn, provides that the guarantor
is liable for "all attorneys' fees, collection costs and
enforcement expenses referable" to the underlying debt by
West Key. *See, e.g.* [DE 6-4, p. 2, ¶ 4]. Thus, under the
guaranties, each guarantor is responsible for the attorneys'
fees, costs and expenses that West Key owes to Centennial
under the Note and Mortgage.

In addition, the guaranties provide that each guarantor
"will pay or reimburse Lender for all costs and expenses
(including reasonable attorneys' fees and legal expenses)
incurred by Lender in connection with the protection,
defense or enforcement of *this* guaranty...." [DE 6-4,
¶ 5] (emphasis added). Under this plain language,
the guarantors are not liable for fees and costs
Centennial incurred enforcing other guaranties against
other guarantors.

In its motion Centennial ignored this distinction and
asked that all Guarantors be responsible for all fees
and costs Centennial incurred in attempting to enforce
all Guarantees. The motion and attached invoices did
not provide information from which the Court could
determine what monies were incurred to enforce each
guarantee. I provided Centennial an opportunity to cure
the problem and issued an Order Requiring Additional
Submission, that directed Centennial to supplement its

Centennial Bank v. West Key Associates, LLC, Slip Copy (2013)

motion to properly apportion its claim for fees and costs, and to support this with unredacted billing records. [DE 88]. Centennial filed a supplementary submission and provided unredacted copies of its invoices *in camera*. [DE 92].

## II. Amount of Recovery

*2 Having determined that Centennial is entitled to recover its reasonable fees and costs, and that those fees and costs must be apportioned between Defendants as stated above, I turn to calculating the amount of the recovery. While Centennial has stated the amount of fees it claims from each Defendant, it failed to identify the specific billing entries it relies upon for these claims. As explained more fully below, because of this deficiency, the Court is unable to make a complete review of Centennial's claim for fees.

### A. Attorneys' fees

Under both Florida and federal common law, the starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate, resulting in a "lodestar" amount. *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985) (adopting the federal lodestar approach for calculating a reasonable attorneys' fee); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### 1. A reasonable hourly rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Centennial seeks an hourly rate of $450.00 for Christopher Carver, a partner; $245.00 for Brendan I. Herbert, an associate; $230.00 for Beatriz Herrera, a paralegal; and $245.00 for Matt Anderson, a paralegal. [DE 81, pp. 6-7]. Centennial has the burden of supplying the Court with information about its various timekeepers, to support the hourly rates requested. *Norman*, 836 F.2d at 1303. It did not do this. The only information Centennial gave the Court is their titles. The Court has gleaned a little information on its own: the Akerman Senterfitt website, www.akerman.com, states that Christopher Carver received his law degree in 1993 and is admitted to the Florida and North Carolina Bars; Brendan I. Herbert received his law degree in 2009 and is a member of the Florida Bar. The website provides no information about the paralegals.

Taking this limited information, and relying upon the Court's own judgment and expertise along with decisions of other Courts in this District, I find that $350.00 is a reasonable hourly rate for Christopher Carver; $245.00 is a reasonable hourly rate for Brendan I. Herbert; and $125.00 is a reasonable hourly rate for both paralegals. *See Norman*, 836 F.2d at 1303 (the court may consider its own knowledge and expertise concerning reasonable and proper fees); *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, No. 10-61519-CIV, 2012 WL 253255, *1 (S.D. Fla. Jan. 26, 2012) ($350.00 is a reasonable hourly rate for attorneys in a run-of-mill-letter of credit action); *Golf Clubs Away, LLC v. Hostway Corp.*, No. 11-62326-CIV, 2012 WL 2912709, *4 (S.D. Fla. July 16, 2012) ($125.00 is a reasonable hourly rate for paralegals).

### B. Hours reasonably expended

The second half of the lodestar equation is the hours reasonably expended. The moving party bears the burden of providing the court with sufficiently detailed records, so that the court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. The billing records show that Mr. Herbert billed 6.8 hours for clerical activity, such as electronically filing pleadings, preparing returns of service and preparing summonses, which is not recoverable.[3] *Gates v. Barnhart*, 325 F. Supp.2d 1342, 1348 (M.D. Fla. 2002) ("tasks of a clerical nature are not compensable as attorney's fees"). The hours billed otherwise appear reasonable. Thus, I recommend reducing the hours sought for Mr. Herbert by 6.8 hours.

### C. Apportioning the attorneys' fees

*3 Having determined reasonable hourly rates and reasonable hours expended, the Court would normally simply multiply these two numbers to determine a reasonable total attorneys' fee. Doing so with the reduced hourly rates identified above, and disallowing the time spent on clerical matters, results in an total

Centennial Bank v. West Key Associates, LLC, Slip Copy (2013)

reasonable attorneys' fee of $24,693.00, approximately a 17% reduction of the total fees sought by Centennial. [4]

This however, can not be the end of the analysis, because no Defendant is responsible for the entire amount of fees. Specifically, fees incurred enforcing any particular guarantee, can only be charged to that Defendant. In its supplemental filing Centennial did provide a chart suggesting how these fees should be apportioned among Defendants, along with corresponding invoices, but it did so in a conclusory manner that is not helpful to the Court. In particular, Centennial failed to reference particular billing entries on its invoices to justify how it reached its apportionment. Thus, while a review of the billing entries establishes, generally, that Centennial incurred fees trying to enforce each guarantee, the lack of detail renders it impossible for the Court to evaluate the specific claim for fees against a particular guarantor. And, where it does offer figures, those numbers most often do not add up. [DE 92, p. 3].

The first entry in Centennial's supplemental chart is a good example. There Centennial references invoice 8675450, and summarily concludes that the attorneys' fees billed on that invoice should be apportioned as follows: $5,145.50 to all Defendants and $315.00 to Defendant Hyde. [DE 92, p. 3]. Like all invoices, this invoice has multiple billing entries. Centennial does not identify the billing entries that support charging Mr. Hyde $315, nor does it identify other billing entries that support charging all Defendants $5,145.50. Moreover, invoice 8675450 is for attorneys fees totaling $5,730.50. [DE 74-1, p. 4]. One would expect that that figure represents the total of the two subtotals offered by Centennial in its motion (i.e., $5,145.50 + $315.00). It does not. There are many other instances in with Centennial's numbers simply do not add up.

In other words, the only way that the Court could authorize the fees proposed by Centennial would be to accept its submission on blind faith. That is not the standard by which fees petitions are granted.

The ambiguity of Centennial's submission is especially problematic here, given the Court's decision to reduce billing rates, and the need to apportion fees charged by different timekeepers to different Defendants. In preparing its fee petition, Centennial's attorneys should not have assumed that the Court would grant the billing rates it asks for, or blindly accept Centennial's apportionment of fees among Defendants; yet it must have made this assumption. Without any reference to billing entries, the Court cannot determine which time keeper billed for fees Centennial apportioned to particular Defendants. Without this information, the Court can not apply the lower billing rates for that timekeeper.

The Eleventh Circuit has accurately observed that the review of attorneys' fees petitions is the "pick and shovel work" of the District Court. *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008), *overruled on other grounds*, 559 U.S. 542 (2010). It is very frustrating when a party asks the Court to grant it attorneys fees and costs, but does not provide the Court with the information any neutral third party would need to make a fair and independent review of that request. Unfortunately, it is not uncommon for fee petitioners to invest little effort in preparing a fee petition, and expect the Court to sort through, on its own, a jumble of confusing and ambiguous billing entries. This makes the Court's review of the fee petition unnecessarily time-consuming and confusing. Such was the case here. [5]

**\*4** The Eleventh Circuit has approved district courts' use of across-the-board reductions of fee awards. *Loranger*, 10 F.3d at 783. Under these circumstances, I find that an overall 17% reduction of the fees attributable to each Defendant, as set forth by Centennial in the chart provided at DE 92, p. 3, is the most appropriate method to reach a reasonable attorneys' fees award. [6] Thus, I recommend that the Court award attorneys' fees in favor of Centennial and against Defendants as follows:

| | | |
|---|---|---|
| a. | all Defendants | $20,070.65 |
| b. | Hyde | $888.93 |
| c. | Sauta | $491.78 |
| d. | Cannova | $413.82 |
| e. | Duff | $210.41 |

Centennial Bank v. West Key Associates, LLC, Slip Copy (2013)

| | | |
|---|---|---|
| f. | Navarro | **$1,611.86** |
| g. | Costell | **$142.35** |

### III. Costs

Just as with the attorneys' fees, Centennial is entitled to recover its expenses pursuant to the Note and Mortgage, which allows recovery of all reasonable expenses incurred by Centennial in collecting the Note and enforcing its rights under the Mortgage. [DE 6-1, p. 3; 6-2, ¶ 18]. Centennial is also entitled to recover its collection costs and enforcement expenses from the guarantors. *See, e.g.* [DE 6-4, p. 2, ¶ 4].

Thus, Centennial may recover from each guarantor, jointly and severally, the costs awarded against West Key, and the costs incurred in enforcing the guaranty against that particular guarantor. In evaluating a claim for costs under a contract, "a reasonableness element must be read into the contract provision." *Air Turbine Technology, Inc. v. Altas Copco AB*, No. 01-8288-CIV, 2008 WL 544731, * 2 (S.D. Fla. Feb. 26, 2008) ("the prevailing party is not entitled to recover all costs and expenses regardless of the amount or the purpose").[7]

Centennial asks to recover a total of $2,618.30 in costs, consisting of: (1) **$384.00** in fees of the clerk for the filing fee and filing of a lis pendens; (2) **$2,115.00** in costs for service of summons; (3) **$43.00** for copies; and (4) **$76.30** for a title search. [DE 74, p. 1]. Centennial does not attach any invoices to support the amounts sought, but provides the billing invoices showing the disbursements. [DE 74-1]. I find that the fees of the clerk and the title search expense are reasonable on their face, and recommend that the Centennial recover them.

However, regarding the copying costs, Centennial does not provide any information about the documents copied, the need for the copies, or the costs charged per page. Without this information, I cannot determine whether the copying costs incurred were reasonable and I recommend that the cost for copies be disallowed.

Centennial also seeks $2,115.00 in costs for service of process on 11 persons or entities. [DE 74-1, pp. 26-7]. Without offering any explanation or supporting invoices, Centennial claims the cost of service ranges between $85.00 and $300.00. A presumptively reasonable charge

for service of process—$55 per hour—is the amount recoverable under § 1920. *EEOC v. W & O, Inc.* 213 F.3d 600, 624 (11th Cir. 2000) (under 28 U.S.C. § 1920(1), generally the fee for service of process may not exceed the statutory fee fixed by 28 U.S.C. § 1921 for service by the U.S. Marshals); 28 C.F.R. § 0.114(a)(3) (rate for service by the U.S. Marshals is set at $55.00 per hour or portion thereof).

**\*5** Centennial has not shown that its claimed higher fees were reasonable or necessary. I recommend reducing the award of costs for service of summons to $55.00 per service. Thus, the total recoverable costs for the service of 10 summons at $55.00 each is **$550.00**.[8]

Thus, the total recoverable costs equal $1,010.30 ($384.00 + 76.30 + 550.00). Consistent with the discussion above, I recommend that the total costs of **$1,011.30** be apportioned as follows: (1) **$680.30** jointly and severally against all Defendants and (2) **$55.00** against each of the six guarantors.[9]

### IV. Recommendation

Based on the forgoing, I RESPECTFULLY RECOMMEND that:

Plaintiff, Centennial Bank's, Verified **Motion** for Attorneys' **Fees** and Costs against Defendants West Key Associates, LLC, Anthony Sauta, Ronald J. Costello, R. Reginald Hyde, Daniel J. Duffy, Joseph Cannova and Frank J. Navarro [DE 81], and Bill of Costs [DE 74], be GRANTED IN PART as follows:

a. Centennial be awarded attorneys' fees in the amount of **$20,070.65** against all Defendants, jointly and severally; **$888.93** in attorneys' fees against Defendant Reginald Hyde; **$491.78** against Defendant Anthony Sauta; **$413.82** against Defendant Joseph Cannova; **$210.41** against Defendant Daniel Duffy; **$1,611.86** against Defendant Frank Navarro; and **$142.35** against Defendant Ronald Costello.

b. Centennial be awarded costs in the amount of **$680.30** jointly and severally against all Defendants; and **$55.00**

each against Anthony Sauta, Ronald J. Costello, R. Reginald Hyde, Daniel J. Duffy, Joseph Cannova and Frank J. Navarro.

**V. Objections**

The parties may file written **objections** to this Report and Recommendation with the Honorable Jose E. Martinez within **fourteen days** of the date of this Report and Recommendation. Failure to timely file **objections** shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 24th day of June, 2013.

**All Citations**

Slip Copy, 2013 WL 12162390

Footnotes

1    Centennial voluntarily dismissed its claims against Defendant Irish. [DE 76].

2    Centennial first filed a Bill of Costs [DE 74], and later filed its **Motion** for **Fees** and Costs. [DE 81].

3    *See* [DE 81-1, p. 14] (4/25/12, 2.00 hours clerical); p. 19 (5/3/12, .4 hours clerical; 5/7/12, .7 hours clerical); p. 20 (5/18/12, .3 hours clerical); p. 25 (6/11/12, 3.0 hours clerical); p. 34 (8/9/12, .4 hours clerical).

4    *See* DE 81, p. 7 for original chart provided by Centennial. The Court's calculations, using the reduced billing rates, and reduced hours of Mr. Herbert, are shown in this table:

| TIMEKEEPER | ADJUSTED HOURS | ADJUSTED HOURLY RATE | |
|---|---|---|---|
| Christopher S. Carver | 25.3 | $350.00 | $8,855.00 |
| Brendan I. Herbert | 59.9 | $245.00 | $14,675.50 |
| Beatriz Herrera | 4.9 | $125.00 | $887.50 |
| Matt Anderson | 2.2 | $125.00 | $275.00 |
| TOTAL | 92.3 | | $24,693.00 |

5    In its supplemental submission Centennial states it intends to file a second **motion** for attorneys' **fees** and costs, to recover fees it incurred pursuing its **motion** for **fees** and costs. [DE 92]. For the reasons expressed here, Centennial's efforts in bringing the current motion and bill of costs are disappointing, and have caused the Court to spend an inordinate amount of its time trying to resolve them, such that I do not believe Centennial merits recovering fees for these efforts. I recommend that the Court deny, in full, any additional fee petition Centennial may submit.

6    The total fees identified in the chart in the supplemental filing, [DE 92, p. 3], is $817.00 less than the total fees sought in the motion. [DE 81, p. 7]. Centennial offers no explanation for this difference. Thus, the court applies the 17% reduction to the figure in the supplemental filing.

7    In addition to seeking its costs pursuant to these contracts, Centennial also relies on Federal Rule of Civil Procedure 54(d), which provides that a prevailing party is entitled to costs as a matter of course, and 28 U.S.C. § 1920 which enumerates the costs that may be taxed. [*See* DE 74]. *See also Maris Distributing Co. v. Anheuser-Busch, Inc.,* 302 F.3d 1207, 1225 (11th Cir. 2002). Because the contract may offer a somewhat broader entitlement to fees than does the rule and statute, I consider Centennial's entitlement to costs under the former.

8    I entirely disallow the cost of service on Defendant Gerald Irish, who Centennial dismissed.

9    Centennial concedes that the cost of service of summons should be borne by the Defendant upon whom process was served. [DE 80].

**End of Document**        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

WESTLAW



2013 WL 12248189
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

**Stephens v. Mid-Continent Casualty Company**
United States District Court, S.D. Florida.  |  September 6, 2013  |  Slip Copy  |  2013 WL 12248189  *(Approx. 8 pages)*

Jennifer A. STEPHENS, as Personal Representative of the Estate of
Charles Eugene Becker and as Assignee of Anchorage Homes LLC,
Plaintiff,

v.

MID-CONTINENT CASUALTY COMPANY, Defendant,

CASE NO. 10-10110-CIV-KING/MCALILEY
Signed 09/06/2013

### Attorneys and Law Firms

Danya Pincavage, Stephen A. Marino, Jr., Randall Scott Goldberg, Ver Ploeg & Lumpkin, P.A., Miami, FL, for Plaintiff.

John Patrick Joy, Walton Lantaff Schroeder & Carson, Fort Lauderdale, FL, James Thaddeus Armstrong, Walton Lantaff, Miami, FL, for Defendant.

### REPORT AND RECOMMENDATION

CHRIS McALILEY, UNITED STATES MAGISTRATE JUDGE

*1 Pending before the Court is Defendant's Verified Motion for Attorneys' Fees Against Plaintiff [DE 199], and Defendant Mid-Continent's Motion to Tax Costs Against Plaintiff. [DE 200]. These matters were referred to me by the Honorable James Lawrence King and are fully briefed. [DE 201, 205, 206, 207, 208, 213]. For the reasons set forth below, I recommend that both motions be granted in part.

### I. Background

Plaintiff, as the personal representative of the Estate of Charles Eugene Becker and assignee of Anchorage Homes, LLC, brought this diversity action for breach of contract against Mid-Continent, based on its refusal to defend and indemnify Anchorage Homes in an action for damages brought against Anchorage, that arose from the death of Charles Eugene Becker. [DE 1]. On September 20, 2012, Mid-Continent served an offer of judgment, pursuant to Florida Statute section 768.79, to "Plaintiff, JENNIFER A. STEPHENS, as Personal Representative of the Estate of Charles Eugene Becker and as Assignee of Anchorage Homes, LLC." [DE 199-1, p. 1]. Plaintiff rejected the offer of judgment on September 24, 2012 [DE 185], and on January 7, 2013, the Court entered summary judgment in favor of Mid-Continent. [DE 194, 195].

### II. Analysis

Mid-Continent now seeks to recover its attorneys' fees incurred as of the day it served its offer of judgment (September 20, 2012) pursuant to the Florida offer of judgment statute, and to recover its taxable costs pursuant to 28 U.S.C. § 1920. [DE 199, 200].

#### A. Attorneys' Fees

##### 1. Entitlement

The Florida offer of judgment statute provides that "if a defendant files an offer of judgment which is not accepted by the plaintiff ... the defendant shall be entitled to recover reasonable costs and attorney's fees [it] incurred ... from the date of filing of the offer...." Fla. Stat. § 768.79(1). The statute is considered substantive law under the *Erie* doctrine [1] and applies in this diversity action to Plaintiff's state law claim of breach of contract. *Morris v. Arizona Beverage Co., LLC*, No. 03-60907 Civ. 2005 WL 5544961, * 2 (S.D. Fla. Feb. 9,

### SELECTED TOPICS

Liability for Corporate Debts and Acts

Individual Members of Limited Liability Companies

### Secondary Sources

**Construction and Application of Limited Liability Company Acts--Issues Relating to Personal Liability of Individual Members and Managers of Limited Liability Company as to Third Parties**

47 A.L.R.6th 1 (Originally published in 2009)

...This annotation will collect and discuss all of the cases construing or applying state limited liability company (LLC) acts with respect to issues relating to the personal liability of individual membe...

**Construction and Application of Limited Liability Company Acts-- Issues Relating to Liability of Limited Liability Company for Acts of Its Members, Managers, Officers, and Agents**

46 A.L.R.6th 1 (Originally published in 2009)

...This annotation collects and discusses all of the cases that have construed and applied state limited liability company acts with regard to issues relating to the liability of a limited liability company (LLC)...

s 12:3.  Veil-piercing

2 Ribstein and Keatinge on Ltd. Liab. Cos. § 12:3

...LLC members, like corporate shareholders, may be liable for debts of the firm under piercing the veil, alter ego or instrumentality theories. The standards that will be applied are unclear. For example...

See More Secondary Sources

### Briefs

**JOINT APPENDIX, VOL. I**

2009 WL 2475435
Merck & Co., Inc., et al., Petitioners, v. Richard Reynolds, et al.
Supreme Court of the United States
Aug. 10, 2009

...FN[*] Judge Motz took no part in the decision of this matter. This litigation presently consists of fourteen actions listed on the attached Schedule A as follows: eight actions in the Eastern District of...

**Joint Appendix**

2014 WL 2568753
Omnicare, Inc., et al., Petitioners, v. Laborers District Council Construction Industry Pension Fund, et al.
Supreme Court of the United States
June 05, 2014

...Attorneys and Law Firms ARGUED: Eric Alan Isaacson, Robbins Geller Rudman & Dowd LLP, San Diego, California, for Appellants. Harvey Kurzweil, Winston & Strawn LLP, New York, New York, for Appellees. ON...

**Brief for the American Association for Justice as Amicus Curiae Supporting Respondents**

2008 WL 177562
WARNER-LAMBERT CO., LLC, et al., Petitioners, v. Kimberly KENT, et al.,

2005). The Court has reviewed the offer of judgment and finds that it satisfies the requirements of section 768.79, and that the statute entitles Defendant to recover its reasonable attorneys' fees and costs.

Plaintiff does not challenge Mid-Continent's entitlement to attorneys' fees. Plaintiff contends, however, that any award must be against the Estate of Charles Becker, not the beneficiaries the estate (Mr. Becker's survivors); and thus cannot be satisfied from the proceeds his survivors received in settlement of the Estate's claims against other tortfeasors. [DE 206, p. 2-3]. Mid-Continent urges the Court not to resolve this issue at this time, arguing that it is premature because no award of attorneys' fees and costs has yet been entered. [DE 208, pp. 1-2].

The Court disagrees with Mid-Continent. The Court cannot enter an order awarding attorneys' fees without determining against whom such an award will be enforced. Thus, I address Plaintiff's argument now.

*2 Neither party provided the Court with direct authority on this issue, in the context of a third-party insurance action brought by the personal representative of an estate, and the Court has found none. Plaintiff relies on cases that address the imposition of attorneys' fees pursuant to § 768.79, against personal representative plaintiffs, in wrongful death actions. [DE 206, pp. 2-3]. In that context, Florida law provides that an award of attorneys' fees pursuant to § 768.79 "will run only against the personal representative, not against the survivors, and will not be payable from the survivors' recovery...." *Walker v. Bozeman*, 243 F.Supp.2d 1298, 1307 (N.D. Fla. 2003).

The rationale for awarding attorneys' fees only against the personal representative in a wrongful death action "is that the survivor was not a party to and had no control over the litigation ... it is [ ] the personal representative, not the survivor, who files and pursues the lawsuit and decides whether or not to settle." *Id.* at 1305; *Kadlecik v. Haim, M.D.*, 79 So.3d 892, 893 (Fla. 5th DCA 2012) (in a wrongful death action, even where personal representative and survivor are the same person, "it is error to award attorneys' fees against the survivors because the personal representative is the only person with authority to settle the claim and the individual survivors cannot be fairly said to have rejected an offer of settlement.").

This reasoning applies equally here. This action was brought by Jennifer A. Stephens in her capacity as personal representative of the Estate of Charles Eugene Becker. The offer of judgment was made to Ms. Stephens in that capacity, and only she, as the personal representative, had the authority to accept or refuse the offer of judgment. *Pickett Jr. v. R.J. Reynolds Tobacco Co.*, No. 3:09-CV-10116-J-37J, 2013 WL 2431841, * 6 (M.D. Fla. June 4, 2013) (terms of an the offer of judgment statute must be strictly construed in favor of the one against whom the penalty is imposed). As a result, only the Estate should be bound by the consequences of its personal representative's refusal of the offer, and the award of attorneys' fees should be entered only against Jennifer A. Stephens in her capacity as personal representative of the Estate of Charles Eugene Becker.

### 2. Amount of fees

Having resolved the only issue relating to entitlement, I turn to the determination of a reasonable attorneys' fee. Mid-Continent asks to be awarded $29,477.50 in attorneys' fees, incurred as of September 20, 2012, through the date of the filing of the motion for attorneys' fees. [2] *Morris*, 2005 WL 5544961, * 9 ("Defendant is entitled to reasonable fees from the date it served the offer of judgment on plaintiff").

The starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate, resulting in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985).

### 1. reasonable hourly rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Mid-Continent identifies four attorneys, a partner and three associates, as timekeepers on this action, and seeks an hourly rate of $175.00 for the partner and $150.00 for the associates. [DE 199, p. 4]. Mid-Continent provides the timekeepers' biographical information and an expert affidavit attesting to the reasonableness of its hourly rates. [3] [DE 199-2, 199-3].

Respondents.
Supreme Court of the United States
Jan. 8, 2008

...FN*Counsel of Record The American
Association for Justice ("AAJ"), formerly the
Association of Trial Lawyers of America,
respectfully submits this brief as amicus
curiae in support of Respondents. This...

See More Briefs

---

Trial Court Documents

**Medical Laboratory Management
Consultants v. American Broadcasting
Cos, Inc.**

1998 WL 35174273
MEDICAL LABORATORY MANAGEMENT
CONSULTANTS d/b/a Consultants Medical
Lab, et al., Plaintiffs, v. AMERICAN
BROADCASTING COMPANIES, INC., et al.,
Defendants.
United States District Court, D. Arizona.
Dec. 23, 1998

...FN1. A cytotechnologist is a medical
laboratory technologist who examines cells
under a pathologist's supervision in order to
diagnose cancer or other diseases. FN2.
John and Carolyn Devaraj are Medica...

---

**In re Aleris Intern., Inc.**

2009 WL 8188953
In re ALERIS INTERNATIONAL, INC., et al.,
Debtors.
United States Bankruptcy Court, D.
Delaware.
Feb. 12, 2009

...Aleris International, Inc. and its affiliated
debtors in the above referenced chapter 11
cases, as debtors and debtors in possession
(collectively, the "Debtors"), having proposed
and filed the followi...

---

**In re Station Casinos, Inc.**

2010 WL 11492265
In re: STATION CASINOS, INC., ☑ Affects
this Debtor, ☐ Affects all Debtors, ☑ Affects
Northern NV Acquisitions, LLC, ☑ Affects
Reno Land Holdings, LLC, ☑ Affects River
Central, LLC, ☑ Affects Tropicana Station,
LLC, ☑ Affects FCP Holding, Inc., ☑ Affects
FCP Voteco, LLC, ☑ Affects FCP Voteco,
LLC, ☑ Affects Fertitta Partners LLC, ☑
Affects FCP MezzCo Parent, LLC, ☑ Affects
FCP MezzCo Parent Sub, LLC, ☑ Affects
FCP MezzCo Borrower VII, LLC, ☑ Affects
FCP MezzCo Borrower VI, LLC, ☑ Affects
FCP MezzCo Borrower V, LLC, ☑ Affects
FCP MezzCo Borrower IV, LLC, ☑ Affects
FCP MezzCo Borrower III, LLC, ☑ Affects
FCP MezzCo Borrower II, LLC, ☑ Affects
FCP MezzCo Borrower I, LLC, ☑ Affects
FCP PropCo, LLC, ☐ Affects GV Ranch
Station, Inc.
United States Bankruptcy Court, D. Nevada.
Aug. 27, 2010

...Entered on Docket August 27, 2010
<<signature>> Hon. Gregg W. Zive United
States Bankruptcy Judge Chapter 11 s. On
July 28, 2010, Station Casinos, Inc. ("SCI")
and the other above-captioned debtors and...

See More Trial Court Documents

*3 Plaintiff concedes that the hourly rates sought by Mid-Continent are generally reasonable, but argues that the hourly rates of the more junior associates, Aaron Warren and Michael Ford, should be reduced to $125.00 per hour. [DE 206, pp. 5-6]. Based on the record before me, and considering this Court's own judgment and expertise, the Court finds that the hourly rates sought by Mid-Continent, $175.00/hour for partner John Joy; and $150.00/hour for the three associates, are reasonable. See Norman, 836 F.2d at 1303 (the court may consider its own knowledge and expertise concerning reasonable and proper fees).

### 2. hours reasonably expended

The second half of the lodestar equation is the hours reasonably expended. The moving party, here Mid-Continent, bears the burden of providing the Court with sufficiently detailed records, so that the Court can assess the time claimed for each activity. Norman, 836 F.2d at 1303. In seeking its fees, the movant must exercise "billing judgment," meaning it must exclude hours that would unreasonable to bill a client, and therefore one's adversary. Id. at 1301. The Court must exercise its own judgment in evaluating a claim for fees. Id. at 1301-2. Specifically, the Court must exclude "excessive, redundant or otherwise unnecessary" hours from its calculation of hours reasonably expended. Blue Water Marine Services, Inc. v. M/Y Natalita III, No. 08-20739, 2010 WL 1330265, * 7 (S.D. Fla. Feb. 2, 2010) (quoting Norman, 836 F.2d at 1301).

Here, extensive redactions to the billing records significantly hamper the Court's ability to evaluate the reasonableness of the hours billed. The bills contain approximately 206 redacted entries; about 80% of the total billing entries. In most cases, the redactions render the billing entries meaningless. See, e.g., [DE 213, p. 5, entries for 9/25/12: "Telephone conference with (redacted)"; "Review and analyze correspondence from (redacted)."]. Mid-Continent argues that it has only redacted attorney-client privilege and work-product privilege material. It also offers, in its reply, to provide the Court with un-redacted records for in camera inspection. [4] [DE 208, pp. 5-6].

This Court has reviewed countless billing records to resolve many attorneys' fees disputes, and has never seen redactions to the extent presented here; I thus do not believe that Mid-Continent's redactions are necessary to preserve attorney-client and work product privilege. Mid-Continent's belated offer to provide the un-redacted billing records to the Court alone does not solve the problem, as these are not ex parte proceedings. Plaintiff is entitled to consider and object to the fees sought by Mid-Continent and it must be able to review the billing records in order to do so.

Despite the difficulties presented by the redactions, Plaintiff does challenge several categories of billing entries. First, Plaintiff asks the Court to reduce the hours sought for the preparation for oral argument on the motions for summary judgment. [5] Plaintiff argues:

> The records are heavily redacted, and although the precise issues and documents researched and reviewed cannot be ascertained, the fact that these tasks were performed with respect to Mid-Continent's already-briefed Motion for Summary Judgment renders them duplicative and unnecessary.

[DE 206, p. 7]. Plaintiff identifies 59.3 hours that she believes are duplicative of the preparation of the summary judgment memoranda; work undertaken before the service of the offer of judgment. A review of these time entries shows that many entries are redacted to such an extent that the Court cannot determine what tasks were performed, other than that they somehow related to the summary judgment motions. See [DE 206, pp. 8-9] and [DE 213, pp. 3-11].

*4 I reject Plaintiff's contention that any work undertaken in preparation for argument on the summary judgment motions was per se duplicative. The motions were argued in November 2012, many months after they were drafted and filed. It was reasonable for Mid-Continent's counsel to bill some time for updating and refamiliarizing themselves with the issues and legal authority raised by the motions. However, after reviewing the record and the limited information provided by Mid-Continent in support of its attorneys' fees request, the time billed by Mid-Continent for these tasks appears excessive. Given the redactions, it is difficult to quantify the amount of duplicative billing. The Court, nonetheless, must reduce the hours sought to account for duplication.

Plaintiff also asserts that Mid-Continent is seeking to recover for 23.3 hours of excessive time. [DE 206, p. 13]. After reviewing the docket, and the record in this action, I find that the time spent on the specific tasks challenged by Plaintiff was reasonable.

Plaintiff challenges 3.3 hours sought by Mid-Continent as time spent on non-recoverable clerical tasks. [DE 206, p. 14]. Plaintiff is correct that tasks of a clerical nature are not recoverable as attorneys' fees. I find that the three hours billed by Mid-Continent for reviewing its bills to determine its taxable costs is not a clerical activity. The remaining challenged activities are clerical in nature.

Plaintiff also objects to having to pay the attorneys' fees of the three attorneys who attended the hearing on the motions for summary judgment. [DE 206, p. 14-5]. Mid-Continent contends that "[m]ultiple attorneys for Mid-Continent were required in order to identify key cases and respond to the Court's inquiries on a moment's notice." [DE 208, p. 7]. While Mid-Continent's counsel certainly could choose have additional attorneys at that hearing to provide support, this is best characterized as a matter of convenience, not necessity. As noted earlier, Mid-Continent must exercise "billing judgment" and exclude hours that are not reasonable to charge to its adversary. *Norman*, 836 F.2d at 1301. I agree that the fee award should be reduced to eliminate this unnecessary duplication.

Plaintiff also contests the time Mid-Continent's counsel devoted to case analysis while the summary judgment motions were pending, and time spent reviewing documents for Mid-Continent's exhibit list. [DE 206, p. 14-5]. From my review of the records and billing entries at issue, I conclude that it was reasonable for Mid-Continent to devote some time preparing for an eventual trial, while it waited for a ruling on the motions for summary judgment.

Plaintiff's objection to the time billed by Mid-Continent for litigating the amount of fees it may recover is valid. Under Florida law, Mid-Continent may not recover the fees incurred for litigating the amount of attorneys' fees to be awarded pursuant to § 768.79. *Oruga Corp., Inc. v. AT&T Wireless of Florida, Inc.*, 712 So.2d 1141, 1145 (Fla. 3d DCA 1998). Thus, the time spent working with Sam Holland, Mid-Continent's expert, regarding the reasonableness of the fees sought, and reviewing the billing records, are not recoverable.

Finally, Plaintiff objects to time billed for communications between Mid-Continent and its counsel. [DE 206, p. 16-7]. Reasonable time spent communicating with a client regarding on-going litigation is compensable legal work. The Court can not effectively evaluate this, however, as Mid-Continent has redacted all the information from the billing entries that would allow the Court to determine whether the billed-for communications are reasonable in this case.

Given the need to reduce the hours of legal services that Mid-Continent claims, and the impossibility of doing so in a specific way with the heavily redacted records, I find that an overall percentage reduction to the hours expended is the most appropriate method to accomplish this task. *See Lee v. American Eagle Airlines, Inc.*, 93 F.Supp.2d 1322, 1333 (S.D. Fla. 2000) (reducing fees requested by 50% because the documentation was "inadequate for purposes of demonstrating that these hours were reasonably expended in the litigation of this matter").

*5 Upon careful review of the motion, the billing entries and the record in this action, I recommend a 40% reduction in the hours expended by each timekeeper. [6] Multiplying the reasonable hourly rates found above by the reduced reasonable hours expended, I recommend that the Court award Mid-Continent total reasonable attorneys' fees of $17,687.50. [7]

## B. Costs

Mid-Continent seeks a total of $16,179.51 in taxable costs pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. [DE 200, p. 2]. Rule 54(d) provides that a prevailing party is entitled to costs as a matter of course, while § 1920 enumerates the costs that may be taxed. *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (noting that the court "abuses its discretion if it awards costs pursuant to Fed. R. Civ. P. 54 in excess of those permitted by Congress under 28 U.S.C. § 1920.").

Because final judgment was entered in favor of Mid-Continent, it is the prevailing party and thus is entitled to recover costs under Rule 54(d). Mid-Continent asks to recover $1,015.00 in process server fees; $10,710.98 for costs of depositions and hearing transcripts; $280.00 for fees for witnesses; and $4,173.53 for costs of copies, for a total of $16,179.51. [DE 200-1].

### 1. cost of service by private process servers

Taxation of the fees of private process servers is authorized by 28 U.S.C. § 1920(1). Generally, prevailing parties may recover private process server fees that do not exceed $55.00 per subpoena, which is the permitted rate for service of a subpoena by the U.S.

Marshals. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); 28 C.F.R. § 0.114 (setting the rate for service of a subpoena by the U.S. Marshals at $55.00).

Plaintiff argues that Mid-Continent should not recover for the cost of rush service or for the multiple attempts to serve Jeffrey Kirkland, Connie Kirkland, and Jack Fritz. [DE 205, pp. 3-4]. A party may recover the costs of multiple attempts at service. *Beach-Mathura v. American Airlines, Inc.*, No. 08-21925-CIV, 2010 WL 1372425, * 2-3 (S.D. Fla. Mar. 31, 2010).

However, to recover the costs of expedited service, a party must show that rush service was required due to circumstances beyond the party's control. *Davis v. Sailormen, Inc.*, No. 6:05-cv-1497-Orl-22JGG, 2007 WL 1752465, * 4 (M.D. Fla. June 15, 2007). Mid-Continent does not provide any explanation for the use of rush service for almost every subpoena issued, stating only that there was "no intentional delay on Mid-Continent's part." [DE 207, p. 2]. This is not enough to justify recovery of costs of expediting service.

Plaintiff also asserts that the subpoenas on Leesfield & Partners, and Greenman & Manz for the files in the underlying litigation, and TIB Bank for Anchorage Home banking records were unnecessary. Plaintiff claims that she provided complete copies of the files from the law firms through her Rule 26 disclosures and discovery responses, and that Mid-Continent did not use the records recovered by T.B. Bank. [DE 205, p. 5]. Mid-Continent was not required to rely on Plaintiff's representations that she had produced all the documents from the underlying litigation; it could subpoena those documents from the original source. As for the documents from T.B. Bank, Plaintiff provides no support for her argument that a party must have used the documents received from the subpoenaed party in order to recover the cost of serving the subpoena. I find that the costs of these subpoenas are taxable.

*6 Thus, I recommend that Mid-Continent recover the cost of service of the 14 subpoenas. Capping the fee for each subpoena at $55.00, and eliminating the rush fee where it is separately set forth on the invoices, I find that Mid-Continent is entitled to recover **$745.00** in fees for service.

### 2. witness fees

Mid-Continent seeks to recover $280.00 in witness fees pursuant to § 1920(3). [DE 201-1, p. 2]. Plaintiff objects to the recovery of a separate witness fee for "the corporate representative of Anchorage Homes," William Liptak, and for William Liptak, individually. [DE 205, p. 6]. Mid-Continent explains that it served William Liptak in both his corporate and individual capacity in order to ensure his complete testimony. [DE 207, p. 3]. This is a common litigation practice, and Mid-Continent is entitled to recover both witness fees. Thus, I recommend that Mid-Continent recover $280.00 in witness fees.

### 3. cost of deposition and hearing transcripts

Mid-Continent seeks to recover $10,710.98 in costs of deposition and hearing transcripts. [DE 200-1, p. 1]. Taxation of court reporters' fees for depositions and hearing transcripts is authorized by § 1920(2), as long as they were "necessarily obtained for use in the case." *EEOC*, 213 F.3d at 620-621. All of the deponents at issue were either listed on Plaintiff's witness list or were used in support of Mid-Continent's motion for summary judgment. [DE 207, p. 4].[8] Similarly, after reviewing the docket, I find that the hearing transcripts were necessarily obtained for use in the case.

However, some of the costs related to the depositions are not taxable under § 1920. Specifically, as it concedes in its reply, Mid-Continent may not recover shipping and handling costs. [DE 207, p. 5]. Nor can Mid-Continent recover for the cost of ASCII, condensed or electronic transcripts, as it has not shown that these costs were necessarily obtained for use in the case. *Johnson v. Comm. Supply Corp.*, No. 05-60510 CIV, 2006 WL 3709620, * 2 (S.D. Fla. Dec. 14, 2006) (the costs of miniscripts and electronic or ASCII transcripts are generally not recoverable absent a showing that these items were necessarily obtained for use in the case rather than for the convenience of counsel.).[9] These unrecoverable expenses total $172.00, which must be deducted from Mid-Continent's award for deposition costs.

Mid-Continent also seeks to recover the cost of expediting the depositions of Connie Kirkland, Jeff Kirkland, Steve Cullen, Sam Holland, Jack Fritz, Keith Nye, Thomas Scolapo, and the hearing transcripts for September 14, 2012, April 4, 2012, and April 28, 2012. [DE 200-1, pp. 18-22, 25-7].[10] Costs for expediting a transcript may be awarded only where it is shown that the expedited transcript was necessary. *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2012 WL 3779013, * 7 (S.D. Fla. Aug. 31, 2012). Other than a conclusory assertion that this action was complex [DE 207, p. 4], Mid-Continent has not

shown any need for expediting the deposition and hearing transcripts and I recommend this cost be disallowed. This disallowance reduces Mid-Continent's claim for deposition and hearing transcript costs by $1,792.64.[11]

*7 Finally, some of the invoices for depositions also include a charge for copying deposition exhibits. [DE 200-1, pp. 18, 19, 20, 22, 23]. Copying costs are recoverable under § 1920(4) if the copies were necessarily obtained for use in the case. *For Play Ltd. v. Bow to Stern Maintenance, Inc.*, Case No. 05-22002-CIV-KING, 2006 WL 3662339, * 10 (S.D. Fla. Nov. 6, 2006). Presumably, Mid-Continent had copies of the exhibits used in the depositions it took, or received copies of the exhibits used at the depositions it attended. Mid-Continent has not shown that the copies of exhibits were necessary for use in this case, and this Court can only conclude that they were provided for counsel's convenience. *Robinson v. Alutiq-Mele, LLC*, 643 F.Supp.2d 1342, 1354 (S.D. Fla. 2009). The reduction for unnecessary copies of exhibits totals $397.90.

In summary, applying these deductions to the $10,710.98 in deposition and hearing costs sought by Mid-Continent, I recommend that the Court award Mid-Continent a total of **$8,175.58.**

#### 4. copying costs

Mid-Continent seeks to recover $4,173.53 in copying costs. [DE 200-1, p.1]. As noted above, copying costs are recoverable under § 1920(4) if the copies were necessarily obtained for use in the case. Plaintiff raises several objections to the copying costs sought by Mid-Continental:

(a) Plaintiff objects to the $1,315.00 cost of copying the complete court file for the underlying action, asserting that she produced all those documents in her response to document requests and in her Rule 26 disclosures, both of which are also the subject of Mid-Continent's request to recover coping costs. [DE 205, p. 13; *see also* DE 200, p. 7; DE 200-1, p. 28]. As discussed above, Mid-Continent did not have to rely on Plaintiff's representation that she produced the underlying court file, and I decline to find that this cost is per se unrecoverable. However, it defies common sense that each and every document in the court file was necessary for use in this case. Undoubtedly, it was a convenience for Mid-Continent's counsel to have the entire file copied, rather than devote the time up front to determining which documents in the file it needed but did not already have. On this reasoning, I recommend that the amount awarded for copying the court file be reduced by 30% *i.e.*, $394.50.

(b) Plaintiff objects to the cost of copying the Monroe County Compliance file and the Contractor's Examining Board Hearing because these documents were included in the files produced by Leesfield & Partners and Greenman & Mantz. [DE 205, p. 14]. Mid-Continent was entitled to get these documents from their original source and I overrule Plaintiff's objection.

(c) Plaintiff objects to the charges for copying the records provided by T.B. Bank in response to a subpoena. [DE 205, p. 5]. Having already found that Mid-Continent was justified in subpoenaing these records, for the same reasons I find that Mid-Continent necessarily incurred the cost of copying the subpoenaed records.

(d) Plaintiff objects to a $123.07 charge for the photocopying and Bates-stamping of Mid-Continent's own Rule 26 disclosures. [DE 205, pp. 14-5]. Mid-Continent has not explained why these copies were necessary for use in this litigation, given that it is in possession of the originals. Therefore, I recommend this cost be disallowed.

(e) Plaintiff objects to the charge of $.17 per page for copies of her Rule 26 disclosures and document production. [DE 205, p. 15; *see also* DE 200-1, p. 29]. While courts have found a range of reasonable rates, I note that the copies of Mid-Continent's Rule 26 disclosures were made at the rate of $.10 per page. [*See* DE 200-1, p. 32]. I find this to be a reasonable rate. Thus, the amount recoverable for the copies of Plaintiff's Rule 26 disclosures and document production is reduced by $897.61. Plaintiff's assertion that the copies of the CDs and DVDs that accompanied her disclosures were unnecessary is overruled. [*See* DE 200-1, p. 29; DE 205, p. 15].

*8 In summary, applying these deductions to the $4,173.51 in copy costs sought by Mid-Continent, I recommend that the Court award Mid-Continent a total of **$2,758.35** for these costs.

Based on the foregoing, I recommend that Mid-Continent be awarded a total of **$11,958.93** in taxable costs.

III. Recommendation

Based on the foregoing, I RESPECTFULLY RECOMMENDED that:

1. Defendant's Verified Motion for Attorneys' Fees Against Plaintiff [DE 199], be **GRANTED IN PART**, and that judgment be entered in favor of Mid-Continent and against Jennifer A. Stephens, as personal representative of the Estate of Charles Eugene Becker and as Assignee of Anchorage Homes LLC, for attorneys' fees in the amount of **$17,687.50**.

2. Defendant Mid-Continent's Motion to Tax Costs Against Plaintiff [DE 200], be **GRANTED IN PART**, and that judgment be entered in favor of Mid-Continent and against Jennifer A. Stephens, as personal representative of the Estate of Charles Eugene Becker and as Assignee of Anchorage Homes LLC, for costs in the amount of **$11,958.93**.

IV. Objections

The parties may file written objections to this Report and Recommendation with the Honorable James Lawrence King within **ten (10) days** from the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chamber in Miami, Florida this 6th day of September, 2013.

**All Citations**

Slip Copy, 2013 WL 12248189

| Footnotes |
| --- |

1    *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

2    Plaintiff argues that Mid-Continent may only recover fees through the date of the entry of final judgment. [DE 206, p. 6]. This argument is clearly incorrect; Plaintiff later concedes that Mid-Continent may recover the fees incurred in litigating the issue of its entitlement to fees. [DE 206, p. 15].

3    Plaintiff asks this Court to disregard Mr. Holland's affidavit because it is conclusory and Mr. Holland served as Mid-Continent's substantive expert. [DE 206, pp. 17-8]. The Court is its own expert on the issue of the reasonableness of attorneys' fees. *Norman*, 836 F.2d at 1303. I agree that Mr. Holland's affidavit is conclusory and not helpful, and I did not rely upon it in determining the reasonableness of Mid-Continent's fees.

4    Surprisingly, Mid-Continent did not provide *any* billing records in support of its motion for fees until asked to do so by the Court.

5    The summary judgment motions were filed on May 11, 2012; well before service of the offer of judgment. [DE 99, 101].

6    Mid-Continent sets forth the total hours claimed for each timekeeper at DE 199, p. 4.

|  | Reduced Hours Exended | Hourly Rate | Sub Total |
| --- | --- | --- | --- |
| John P. Joy | 30.7 | $175.00 | $5,372.50 |
| Kelly M. Corcoran | 27.4 | $150.00 | $4,110.00 |
| Michael D. Ford | 34.8 | $150.00 | $5,220.00 |
| Aaron L. Warren | 19.9 | $150.00 | $2,985.00 |
| **Total** | | | **$17,687.50** |

7    Reduced Hours Expended Hourly Rate Sub Total John P. Joy 30.7 $175.00 $5,372.50 Kelly M. Corcoran 27.4 $150.00 $4,110.00 Michael D. Ford 34.8 $150.00 $5,220.00 Aaron L. Warren 19.9 $150.00 $2,985.00 Total **$17,687.50**

8    I reject Plaintiff's argument that copies of depositions taken in the underlying lawsuit were unnecessary. [DE 205, pp. 12-3]. If the witnesses were named

on Plaintiff's witness list or the depositions were used to support Mid-
Continent's motion for summary judgment, those deposition transcripts were
"necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

9       Where it appears from the invoices that the original and a copy were included
        in one flat price, the Court finds Mid-Continent may recover the cost of the
        copy.

10      Mid-Continent asserts that Plaintiff has conceded the recovery of $172.86 for
        the cost of the transcript for the hearing on November 23, 2011, through its
        failure to object. [DE 207, p. 7]. Mid-Continent, however, has not provided any
        documentary support for this amount and I recommend it be disallowed.

11      In calculating the reduction, I applied an ordinary rate of $4.45/page for
        depositions where the number of pages was stated on the invoice. Where the
        page amount was not given, I reduced the total invoice by 40%. For the
        hearing transcripts, I applied the ordinary rate that was in effect at the time of
        the hearing.

---

**End of
Document**                       © 2018 Thomson Reuters. No claim to original U.S. Government Works.





WESTLAW

2016 WL 8674508
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

EMI Sun Village v. Catledge
United States District Court, S.D. Florida. | March 11, 2016 | Slip Copy | 2016 WL 8674508 | (Approx. 5 pages)

EMI SUN VILLAGE, et al., Plaintiffs,

v.

James CATLEDGE, et al., Defendants.

CASE NO. 13-21594-CIV-MOORE/MCALILEY

Signed 03/11/2016

### Attorneys and Law Firms

JuanCarlos Antorcha, Rasco Klock Perez Nieto, P.L., Coral Gables, FL, Joseph Peter Klock, Jr., Epstein Becker & Green, Miami, FL, for Plaintiffs.

### REPORT AND RECOMMENDATION

CHRIS MCALILEY, UNITED STATES MAGISTRATE JUDGE

*1 The Honorable K. Michael Moore granted in part Defendants Hilda Piloto's and Arnstein & Lehr's (the Arnstein Defendants) motion for sanctions under Federal Rule of Civil Procedure 11. In doing so, Judge Moore determined that the Arnstein Defendants are entitled to recover a limited amount of attorneys' fees and costs, and he referred to me the question of the amount of that recovery. [DE 116, 135, 136, 140]. This comes at the tail end of very lengthy and complex proceedings. I do not fully recount that history here; rather, I assume the reader's familiarity with the history of this matter.

For the reasons set forth below, I recommend that the Court award $7,632.00 in attorneys' fees, and no costs, to the Arnstein Defendants.

### I. Background

Plaintiffs brought this action against the Arnstein Defendants, among others, for abuse of process, malicious prosecution, and civil conspiracy. These claims arose from an earlier lawsuit the Arnstein Defendants and others filed in this court before the Honorable Alan S. Gold (the Gold Action) against parties who are now Plaintiffs here. [DE 1]. Once the Gold Action was resolved, the defendants there brought this action, which was assigned to Judge Moore. Ultimately, Judge Moore dismissed all of Plaintiffs' claims with prejudice. [DE 58]. Once victorious in this lawsuit, the Arnstein Defendants asked this Court to sanction Plaintiffs under Federal Rule of Civil Procedure 11, claiming Plaintiffs lacked a good faith factual and legal basis to bring this suit. [DE 59].

Specifically, the Arnstein Defendants made four arguments why Plaintiffs and their counsel should be sanctioned under Rule 11: (1) all of Plaintiffs' claims were frivolous because they were barred by the litigation privilege; (2) Plaintiffs' malicious prosecution claim was frivolous because the Arnstein Defendants had probable cause to bring the underlying action; (3) Plaintiffs' damages claim was frivolous; and (4) the claims Plaintiff Sun Village Juan Dolio Associates LLC's (SVJDA) filed were frivolous because SVJDA was not a party to the underlying litigation. [DE 59, pp. 4-8]. [1]

Judge Moore granted the Rule 11 motion in part, and after some discussion entered these Orders: "1. Defendants' Rule 11(b)(3) Motions as to Plaintiffs' damages claims are GRANTED; 2. The Arnstein Defendants' Rule 11(b)(3) Motion as to Plaintiff SVJDA's malicious prosecution and civil conspiracy claim is GRANTED; and 3. All other arguments raised as Rule 11(b)(2) and Rule 11(b)(3) Motions are DENIED." [DE 116, p. 12].

In that same Order, Judge Moore directed the parties to file supplemental memoranda to address (1) the amount of fees and costs the Arnstein Defendants might recover consistent

### SELECTED TOPICS

Offers of Judgment and Recovery of Attorney Fees and Costs

**Secondary Sources**

**Allowance and Determination of Attorney's Fees Under State Offer of Judgment Rule**
119 A.L.R.5th 121 (Originally published in 2004)
...This annotation collects and analyzes state cases that examine the allowance and determination of attorney's fees under state offer of judgment rules and statutes when the offeree rejects an offer of j...

**s 11:5. Proposals for settlement**
5 Fla. Prac., Civil Practice § 11:5 (2017-2018 ed.)
...A party to a civil case may make a proposal for settlement under the provisions of the applicable statute. Formal settlement proposals are often based on section 768.79, Florida Statutes, because it ap...

**s 17:13. Offers of settlement/Proposals for judgment**
8 Fla. Prac., Constr. Law Manual § 17:13 (2017-2018 ed.)
...Prior to January 1, 1990, the three types of offer of settlement existed. Then Fla. R. Civ. P. 1.442 was amended effective January 1, 1990, incorporating the best of the offer of settlement provisions ...

See More Secondary Sources

**Briefs**

**Answer Brief of Appellees**
2008 WL 2036858
FLEX ENTERPRISES, INC., Appellant, v. REESE BAYSHORE CORP. and Junga Reese, Appellees.
District Court of Appeal of Florida, Third District.
Mar. 28, 2008
...FN1. Ms. Reese's name is misspelled in the style. FN4. Rather disingenuously, FLEX states in its Brief that after the closing it "received a multitude of code and/or permit violation notices from the C...

**Brief for Respondent**
2012 WL 3945843
Olivea MARX, Petitioner, v. GENERAL REVENUE CORPORATION, Respondent.
Supreme Court of the United States
Sep. 10, 2012
...General Revenue Corporation is wholly owned by Asset Performance Group, LLC, which is wholly owned by SLM Corporation, a publicly traded company commonly known as "Sallie Mae." STATUTORY PROVISIONS AND...

**Brief of Intellectual Property Owners Association in Support of Petitioner**
2013 WL 6512956
OCTANE FITNESS, LLC, Petitioner, v. ICON HEALTH & FITNESS, INC., Respondent.
Supreme Court of the United States
Dec. 09, 2013
...Amicus curiae Intellectual Property Owners Association (IPO) is a trade association representing companies and individuals in all

with the Order, and (2) how those sanctions should be apportioned between Plaintiffs and their counsel. *Id.* p. 12-3. Judge Moore considered that briefing and, importantly for the issues now before me, rejected the Arnstein Defendants' argument that they should recover all the fees and costs they incurred in the course of proceedings before this Court. [DE 135]. Rather, consistent with Rule 11(c)(4),[2] the Court directed that Defendants recover only "reasonable attorney's fees and costs incurred as a *direct result* of Plaintiffs' Rule 11 violations (i.e., as a *direct result of the damages, malicious prosecution and conspiracy claims*)" [DE 135] (emphasis added). The Court referred to me the question of the amount of attorneys' fees and any costs Plaintiff should pay to the Arnstein Defendants. [DE 140].

## II. Analysis

*2 The starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate, resulting in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Plaintiffs do not challenge the hourly rates sought by Defendants, and I find those rates reasonable.

The parties do dispute the number of hours counsel for the Arnstein Defendants say they expended due to the sanctioned conduct. As noted, Judge Moore held that the Arnstein Defendants may recover only those fees that were the "direct result" of Plaintiffs' Rule 11 violations. In other words, the award must be limited to fees and costs that are *caused* by the sanctioned conduct; any work by the Arnstein Defendants' counsel that would have occurred regardless of the sanctioned behavior is not recoverable. *Peer v. Lewis*, No. 06-60146-CIV, 2013 WL 1345477, * 6 (S.D. Fla. April 3, 2013) (collecting cases).

The Arnstein Defendants ask to recover attorneys' fees they incurred in several broad categories:

     a. performing a factual analysis of the complaint ($11,395.80),

     b. undertaking "necessary" litigation activities[3] ($7,997.90),

     c. litigating their motion for Rule 11 sanctions ($22,920.70), d. researching the issues of conspiracy, malicious prosecution and abuse of process in connection with SVJDA's claims ($2,422.90).

     e. doing legal research on the issue of damages ($1,952.00), and

     f. briefing the issue of damages in the motion to dismiss ($3,680.00).

[DE 136-1, ¶ 27].

Plaintiffs concede that the Arnstein Defendants are entitled to recover the last two categories of fees claimed, that is, attorneys' fees for (1) legal research on the issue of damages, and (2) briefing the issue of damages in the motion to dismiss; that is, they acknowledge that these attorneys' fees are a direct result of the sanctioned conduct. [DE 138, p. 7]. This undisputed amount totals **$5,632.00.**

Plaintiffs dispute the Arnstein Defendants' remaining claims for fees. Unfortunately, the Arnstein Defendants do not identify the specific billing entries they rely upon to calculate the amounts of claimed fees. Likewise, Plaintiffs do not engage in an hour-by-hour analysis of Defendants' billing records. Rather, Plaintiffs broadly argue that certain categories of fees sought were not incurred as a direct result of sanctioned conduct and, thus, are not recoverable. [DE 138, pp. 4-7]. I address each disputed category below, in the order they are listed above.

### A. Fees for factual analysis and other "necessary" litigation activities

Plaintiffs object to an award of all the fees the Arnstein Defendants incurred for performing a factual analysis of the Complaint and other "necessary" litigation activities, arguing that these fees did not directly result from the sanctioned damages claim. [DE 138, pp. 5-6]. The Arnstein Defendants do not identify specific billing entries for time spent analyzing the damages claim in the Complaint. Rather, they contend they should recover for all the time their lawyers spent on factual analysis of the Complaint because this effort was "a direct consequence of the frivolous allegations that the Plaintiffs were damaged, which was an essential element of each claim." [DE 136-1, ¶ 13].

*3 The Court, however, has expressly rejected the Arnstein Defendants' argument that all of their fees were a direct result from the sanctioned conduct. [DE 135]. At most, the Arnstein Defendants would be entitled to recover only those fees incurred performing a factual analysis of the Complaint's damages claim. The Court ordered the Arnstein Defendants to

industries and fields of technology who own or are interested in U.S. i...

See More Briefs

**Trial Court Documents**

**Webster v. Martin Memorial Medical Center, Inc.**

2009 WL 3735318
Louise WEBSTER and Alexander Webster, her husband, Plaintiffs, v. MARTIN MEMORIAL MEDICAL CENTER, INC., a Florida Corporation, Defendant.
Florida Circuit Court
July 15, 2009

...Defendant, MARTIN MEMORIAL MEDICAL CENTER, INC., (hereinafter 'MARTIN MEMORIAL') filed its Motion For Attorneys' Fees and Costs and Plaintiffs Responded to Defendant's Motion For Attorneys' Fees and Co...

**Cardinal Commercial Development, LLC v. Pan American West, Ltd.**

2010 WL 11250187
CARDINAL COMMERCIAL DEVELOPMENT, LLC, a Florida limited liability company, Plaintiff, v. PAN AMERICAN WEST, LTD., a Florida limited partnership, et al., Defendants.
Florida Circuit Court
July 28, 2010

...1. This CAUSE having come before the Court upon Defendants' Amended Motion for Attorneys' Fees and Costs, and the Court having considered same, having heard argument of counsel and being otherwise duly...

**Lang v. Florida Power Corp.**

2012 WL 5885204
James LANG, individually, Plaintiff, v. FLORIDA POWER CORPORATION. a Florida corporation, Defendant.
Florida Circuit Court
Oct. 17, 2012

...Section: 08 THIS MATTER is before the Court upon Defendant's Motion for Attorneys' Fees Under Florida Whistleblower Act and Memorandum of Law; Defendant's Motion for Attorneys' Fees Pursuant to its Off...

See More Trial Court Documents

submit a fee application setting forth the fees incurred as a direct result of the frivolous damages claim. [DE 135]. Rather than do this, the Arnstein Defendants chose to re-argue the position that they are entitled to recover the entire fees incurred for the factual analysis of the Complaint.

Moreover, they chose not to provide, as an alternative, the amount of fees incurred only in connection with the factual analysis of the damages claim. The Court cannot discern from the voluminous billing records the time properly attributable to the factual analysis of the damages claim, nor is it the Court's responsibility to do so. On this record, I recommend the Court not award the amount sought for factual investigation of the claims asserted in the Complaint.

For the same reason, the fees for "necessary" litigation activities are not recoverable. The Arnstein Defendants have not shown that these activities were caused by the sanctioned conduct. Rather the tasks for which they claim fees (for example, participation in a Rule 16 conference) must take place in every lawsuit; they were not the direct result of the damage allegations or the claims by SVJDA. To the extent the Arnstein Defendants ask to recover these fees on the theory that they would not have had to engage in litigation but for the frivolous damages claim, as noted above, the Court has rejected this argument. Because the Arnstein Defendants would have incurred the fees for the "necessary" litigation activities regardless of the sanctioned conduct, I recommend that the Court not award this category of fees.

### B. Fees incurred in litigating the motion for Rule 11 sanctions

The Arnstein Defendants ask to recover $22,920.70 in fees that arose in bringing their Rule 11 motion. [DE 136-1, ¶ 22]. Rule 11(c)(2) provides that "the court *may* award to the prevailing party the reasonable expenses, including attorneys' fees, incurred for the motion." F.R.C.P. 11(c)(2) (emphasis added). Here, after granting the Arnstein Defendants' motion only as to Plaintiffs' damages claims and SVJDA's malicious prosecution and civil conspiracy claim, the Court ordered that "[a]ll other arguments raised as Rule 11(b)(2) and Rule 11(b)(3) Motions are DENIED." [DE 116, p. 12]. The Court then explicitly limited the Arnstein Defendants' recovery to fees and costs that directly resulted from the sanctioned conduct. [DE 135]. Because the Court did not authorize the award of the attorneys' fees and costs incurred in bringing the Rule 11 motion, I recommend the Court not award these fees.[4]

As far as costs, the only cost the Arnstein Defendants ask to recover is the cost of the transcript of the Rule 11 hearing. [DE 136-1, ¶ 24]. Because I find that the Court did not authorize the award of fees and costs associated with bringing the Rule 11 motion, I recommend that they not recover the cost of this transcript.[5]

### C. Fees incurred in defending against SVJDA's malicious prosecution and civil conspiracy claim

*4 As noted above, the Court imposed sanctions on all Plaintiffs for their frivolous claim of damages, and separately imposed sanctions on SVJDA for bringing a malicious prosecution and civil conspiracy claim. [DE 116, pp. 11-2]. The Arnstein Defendants ask to recover $2,422.90 from SVJDA for fees incurred researching the issues of conspiracy, and SVJDA's standing to sue for malicious prosecution and abuse of process. [DE 136-1, ¶ 28]. Plaintiffs concede the Arnstein Defendants' entitlement to some fees incurred as direct result of SVJDA's claims, but dispute the amount sought, particularly those devoted to research of an abuse of process claim, noting the Court found that SVJDA did not bring such a claim. [DE 138, p. 7].

Plaintiffs are correct that any fees the Arnstein Defendants incurred researching abuse of process could not be as a direct result of SVJDA's claims. Plaintiffs suggest a that a reduction of the $2,422.90 claimed by one third would reflect the Arnstein Defendants entitlement to recover fees for researching two, not three, issues. [*Id.*]. I agree with Plaintiffs that this claim should be reduced to account for the fact that any research regarding abuse of process could not have been a undertaken as direct result of SVJDA's claims, but a one third reduction seems too high. The focus of the Arnstein Defendants' defense against SVJDA was their argument that the malicious prosecution claim was meritless.[6] [DE 58, p. 7]. Common sense dictates that more than two thirds of defense counsel's time would have been spent researching this pivotal issue.[7] I recommend that the amount awarded to Defendants as a sanction for SVJDA's frivolous claims be reduced to $2,000.00.

### D. Apportionment of the award

The Court sanctioned all Plaintiffs *and their counsel* for the damages claims; and sanctioned Plaintiff SVJDA *and its counsel* for the malicious prosecution and civil

conspiracy claims. [DE 135]. The Court then ordered that "*Plaintiffs* shall pay to Defendants, jointly and severally, any reasonable attorney's fees and costs incurred as a direct result of Plaintiffs' Rule 11 violations (i.e., as a direct result of the damages, malicious prosecution, and civil conspiracy claims)." [*Id.*] (emphasis added). I am uncertain whether the Court intended Plaintiffs alone to pay the sanctions award, or intended that Plaintiff and their counsel be jointly and severally liable for that amount.

### III. Recommendations

Based on the foregoing, I RESPECTFULLY RECOMMEND that:

The Arnstein Defendants be awarded $5,632.00, as a sanction for Plaintiffs' damages claims, and $2,000.00 as a sanction for SVJDA's claims. I defer to Judge Moore how liability for payment of these amounts should be apportioned between Plaintiffs and their counsel.

### IV. Objections

The parties may file written objections to this report and recommendation with the Honorable K. Michael Moore **no later than March 24, 2016.** Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida, on the 11th day of March, 2016.

### All Citations

Slip Copy, 2016 WL 8674508

---

### Footnotes

| | |
|---|---|
| 1 | Other Defendants, Michael Diaz and Diaz Reus & Targ, LLP, also filed a motion for Rule 11 sanctions [DE 61], which Judge Moore granted in part [DE 116]. Those Defendants have, however, reached a settlement with Plaintiffs of their claim. Accordingly, only the Arnstein Defendants' claim to recover some of their attorneys' fees and costs is before me now. |
| 2 | That Rule provides that a party sanctioned under Rule 11 may be ordered to make "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." F. R. Civ. P. 11(c)(4). |
| 3 | Defendants describe these activities as including "preparing for and participating in the Rule 16 conference, negotiating a scheduling order, seeking a stay of discovery pending a ruling on the motion to dismiss, conferring and corresponding with Arnstein and its insurer, reviewing and responding to Orders of the Court, and corresponding and conferring with counsel for the Plaintiff and for the co-Defendants." [DE 136-1, ¶ 14]. |
| 4 | Even if the Court had authorized the recovery of the attorneys' fees and costs incurred in bringing the Rule 11 motion, the Arnstein Defendants would not be entitled to recover all of the fees devoted to that motion, as they only partially prevailed on their motion for sanctions. |
| 5 | If the Arnstein Defendants were otherwise entitled to recover this cost, the request would nonetheless fail, as the Arnstein Defendants do not explain why they ordered a copy of this transcript and they do not provide a copy of the invoice. |
| 6 | The Court noted that the civil conspiracy claim was dependent on the viability of the malicious prosecution claim. |
| 7 | Once again, the Arnstein Defendants did not identify specific time entries they rely upon to calculate the fees incurred to defend against SVJDA's claims, making it impossible for the Court to review those entries in an effort to more accurately reduce the hours that may be compensated. |

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

sdf

