

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14-23388-CIV-MOORE/MCALILEY

ORLANDO ESTRADA,

                Plaintiff,

v.

FTS USA, LLC,

                Defendant.

_____/

**FTS USA, LLC'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 11 AND FLORIDA STATUTE
§ 57.105 AND INCORPORATED MEMORANDUM OF LAW**

Defendant, FTS USA, LLC ("FTS" or "Defendant"), pursuant to Rule 11 of the Federal

Rules of Civil Procedure and Florida Statute § 57.105, hereby moves for entry of sanctions,

including an award of attorneys' fees, against: (1) Plaintiff Orlando Estrada ("Plaintiff" or

"Estrada"); (2) his counsel J.H. Zidell, K. David Kelly and Rivkah Jaff ("Counsel"); and (3) and

the law firm J.H. Zidell, P.A. because the claims asserted in Plaintiff's Complaint [D.E. # 1],

Statement of Claim [D.E. #8] and Updated Statement of Claim [D.E.#22] are not warranted by

existing law and/or for asserting and maintaining claims that are not supp _ d by the material

facts or the application of then-existing law.

## I.   **FACTUAL HISTORY**

     1.    Plaintiff alleges that he worked for FTS from October 10, 2012 through March

24, 2014. See Complaint ("Compl."), ¶ 8.

     2.    Plaintiff further asserts that he worked "an average of 55 hours a week for

Defendant and was paid an average of $10.00 per hour but was never paid the extra half time rate

for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act." Id.

¶ 13.

3.    Plaintiff has brought a one (1) count Complaint against FTS seeking overtime wages from FTS and alleging a violation of the Fair Labor Standards Act ("FLSA").

4.    Plaintiff's Statement of Claim and Updated Statement of Claim each make various assertions that he worked overtime hours for which he was not compensated. See D.E. #8 and 22. Specifically, in the Statements of Claim, Plaintiff claims that he worked 15 hours of overtime per week for 75 weeks and that he was due $5 in half time compensation per hour. Id.

5.    FTS has detailed time keeping policies which Plaintiff was aware of and acknowledged during his orientation at FTS.

    a.    Specifically, on October 22, 2012, Estrada executed a Payroll Explanation and Compliance form, which explained that Technicians that work in the field, like Estrada, would be paid based on his production for that week (of course, he would always be paid at least minimum wage for the hours he worked or overtime minimum wage if he worked in excess of 40 hours per week). See Exhibit A.

    b.    He further agreed to the assigned rates for each job and agreed that those rates would determine his effective-hourly-rate ("EHR"). Estrada also agreed and understood FTS' policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. See Id.

    c.    Furthermore, since Estrada worked in the field, he understood that he was required to keep daily detailed time records to document and track time worked, which would include tracking his hours from the time he arrived at work site until completion of the final job of the day, including travel time to and from jobs

<div align="center">2</div>

throughout the day, the time he took his lunch break, etc. Finally, Estrada understood and agreed that he was required to list all work hours on his timesheet and that under or over-reporting his work hours was, and is, a serious violation of company policy. See Id.

d. Furthermore, Estrada also signed a Paycheck Verification Procedure form in which he further agreed to promptly report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Exhibit B.

6. Estrada's pay history demonstrates that these procedures ensured that he received accurate pay and overtime pay. While Estrada claims that he worked 15 hours of overtime each week, that assertion is contradicted by Estrada's pay history. Rather, he worked, on average, 7.3 hours per week of overtime. Further, Estrada, during his deposition, readily acknowledged that his signature appeared on many of the time sheets. See Composite Exhibit C.

7. Furthermore, as documented by his Earning Statements, Estrada was appropriately paid for any such overtime. Estrada, during his deposition also admitted that the time sheets produced by FTS, many of which were signed by Estrada, matched the Earning Statements[1]. See Composite Exhibit D.

a. Estrada's claim that he did not receive any overtime is completely inaccurate. Estrada regularly worked overtime hours and he was appropriately compensated for such time. Specifically, his Earning Statements establish that he was properly paid overtime for the pay periods ending: (1) November 3, 2012; (2) November 17, 2012; (3) December 1, 2012; (4) December 15, 2012; (5) December 29, 2012;

---

[1] Plaintiff received his FTS pay via direct deposit. Plaintiff has no records and provided no testimony contradicting the amounts that he was paid, both for regular wages and overtime wages, as set forth in the earning statements.

3

(6) January 12, 2013; (7) January 26, 2013; (8) February 9, 2013; (9) February 23, 2013; (10) March 9, 2013; (11) March 23, 2013; (12) April 6, 2013; (13) April 20, 2013; (14) May 4, 2013; (15) May 18, 2013; (16) June 1, 2013; (17) June 15, 2013; (18) June 29, 2013; (19) July 13, 2013; (20) July 27, 2013; (21) August 10, 2013; (22) August 24, 2013; (23) September 7, 2013; (24) September 21, 2013; (25) October 5, 2013; (26) October 19, 2013; (27) November 2, 2013; (28) November 16, 2013; (29) November 30, 2013; (30) December 14, 2013; (31) January 11, 2014; (32) January 25, 2014; (33) February 8, 2014; (34) February 22, 2014; (35) March 8, 2014; and (36) March 22, 2014.  Indeed, Estrada received in excess of $10,000 in overtime pay during this time period.

  b. To the extent Plaintiff seeks time and a half as a method of compensation for alleged overtime, as asserted in his Complaint, that would be an improper method of calculation.  Because Estrada was compensated utilizing a "piece rate" payment method, pursuant to 29 CFR § 778.111, he was and is only entitled to overtime compensation at a .5 rate multiplied by his regular rate for the week.

8.    While Plaintiff may not have understood that he was receiving overtime compensation for the overtime hours he worked, the records demonstrate that he worked overtime, documented that overtime to FTS and was properly compensated for that overtime. Accordingly, Plaintiff and Plaintiff's counsel continued assertion of claims that Plaintiff did not receive overtime pay in this matter violates Rule 11 and Fla. Stat. s. 57.105.

4

## II.   MEMORANDUM OF LAW

### A.   Standard for Imposition of Sanctions.

Pursuant to Federal Rule of Civil Procedure 11(b), "By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Similarly, Florida Statute § 57.105(1) provides that:

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:  (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.

Here, as described more fully below, upon receipt of the documents provided by FTS that thoroughly document that Plaintiff recorded overtime hours on his time sheets and was repeatedly paid overtime throughout his employment at FTS, in addition to the same testimony from FTS' corporate representative deposition on June 20, 2016, and at the conclusion of

ACTIVE 41515836v2

Plaintiff's deposition on July 29, 2016, Plaintiff and his Counsel would have known that the overtime claims set forth in Plaintiff's Complaint and his two Statement of Claims are not warranted by existing law and/or are without evidentiary support and/or that he is asserting and maintaining claims that are not supported by the application of then-existing law. Accordingly, it is clear that these overtime claims are being maintained for improper purposes in direct violation of Federal Rule of Civil Procedure 11(b)(1).

Pursuant to Federal Rule of Civil Procedure 11(c)(1): "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

Similarly, Florida Statute § 57.105 provides a 21 day "safe-harbor" provision to permit the party to withdraw the frivolous claim upon notice. Accordingly, on August 3, 2016, counsel for Plaintiff was served with a copy of this Motion (in draft form) and letter indicating the factual and legal basis for the instant Motion. A copy of the forgoing letter is attached hereto as Exhibit E. As such, Counsel for Plaintiff has been advised of the specific conduct violating Federal Rule of Civil Procedure 11(b) and Florida Statute § 57.105. However, Plaintiff and his Counsel have since failed to withdraw the Complaint or any of the overtime claims set forth therein. Accordingly, the Court should impose sanctions upon Plaintiff and his Counsel, along with their law firm, and, pursuant to Federal Rule of Civil Procedure 11(c)(4) and Florida Statute § 57.105. Those sanctions should include an order directing payment to FTS for "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

ACTIVE 41515836v2

**B.    Plaintiff's FLSA Overtime Claims Are Not Warranted by Existing Fact or Law.**

In his Complaint, Plaintiff asserts a single claim against FTS for failure to pay overtime. To state a valid claim for under the FLSA, an employee bears the burden of proving by a preponderance of the evidence that there exists and employer-employee relationship, there was engagement in the activities within the coverage of the FLSA; the employee worked over 40 hours within a workweek without overtime compensation; and a definite amount of compensation is due.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).  An employee has the burden for proving that he performed work for which his was not properly compensated.  Id. at 687.

The FLSA does not require that an employee be compensated solely on an hourly rate; an employee may also be compensated on a "piece-rate, salary, commission, or other basis," provided that "the overtime compensation due to [the] employee[ ] must be computed on the basis of the hourly rate derived therefrom." 29 C.F.R. § 778.109.

The "regular rate" is the basis for any overtime computation.  The regular hourly rate is determined by dividing an employee's total remuneration in a given workweek by the total number of hours worked that week.  Id.  Stated differently, the overtime premium is simply one-half the "regular rate."  See id.  Multiplying this overtime premium by the number of overtime hours worked yields the overtime compensation due.  See id.

Here the evidence is overwhelming that Plaintiff regularly received overtime compensation utilizing this method.  Plaintiff's time sheets reflect that he worked overtime and his Earning Statements reflect that he was paid overtime for those hours.  Accordingly, Plaintiff and Plaintiff's counsel continued effort to prosecute a claim that Plaintiff received no overtime is

ACTIVE 41515836v2

sanctionable.  Plaintiff and his counsel continue to claim that he was "never paid the extra half time rate" is clearly and demonstrably false.

While Plaintiff may not comprehend how he was paid, that does not mean he did not actually receive overtime utilizing an hourly rate derived from his production[2].  While Plaintiff, and his counsel, may now have shifted their theory to claim that Plaintiff had to understand how his pay was calculated that is not the law.  Instead, the law only provides that the plaintiff be properly paid not that he had an understanding or even agreed to the payment method.  See Powell v. Carey International, Inc., 514 F. Supp. 2d 1302, 1312 (S.D. Fla. 2007).  While Plaintiff may not have understood how he was paid, he agreed to the payment method and he was properly paid pursuant to that payment method.  See Exhibits A[3], B, C and D.  Plaintiff has no records and has provided no testimony to contradict the evidence set forth in FTS' Earning Statements[4].  Plaintiff acknowledged that he received his wages via direct deposit but has no recollection or records as to the amounts received.

### III.    CONCLUSION

Plaintiff and his Counsel are well aware that the overtime claims set forth in the Complaint are not warranted by existing law and/or they are well aware that they are asserting and maintaining claims that are not supported by the material facts or the application of then-

---

[2] Plaintiff readily understood that he was paid by job and by weekly production based on the number of different jobs he completed in a work week.

[3] There is no FLSA authority for Plaintiff's counsel's newest theory that because Plaintiff spoke Spanish all policies had to be provided in Spanish.

[4] The Earning Statements provide the Production Rate which is then utilized to calculate the EHR which is then used to calculate payment for hours worked up to 40 and then also utilized to calculated the overtime payment for any hours worked over 40 hours.  FTS has explained to Plaintiff's counsel and the math has been demonstrated multiple times that Plaintiff received the extra half time rate.  The math was demonstrated to Plaintiff's counsel both at FTS' corporate representative's deposition and again at Plaintiff's deposition.

ACTIVE 41515836v2

existing law.  Therefore it is clear that they continue to maintain this action for improper

purposes in direct violation of Federal Rule of Civil Procedure 11(b)(1) and Florida Statute §

57.105.  Accordingly, the Court should enter sanctions against:  (1) Plaintiff Orlando Estrada; (2)

his counsel J.H. Zidell and K. David Kelly and Rivkah Jaff; and (3) and the law firm J.H. Zidell,

P.A. because the claims asserted in Plaintiff's Complaint, Statement of Claim and Updated

Statement of Claim are not warranted by existing law and/or for asserting and maintaining claims

that are not supported by the material facts or the application of then-existing law.

FOX ROTHSCHILD, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone:  (561) 835-9600
Facsimile:  (561) 835-9602

By: s/  Dori K. Stibolt
Dori K. Stibolt
Florida Bar No. 183611
dstibolt@foxrothschild.com

Counsel for Defendant FTS USA, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of September, 2016, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified on the attached Service List

in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronic Notices of Electronic Filing.

/s/  Dori K. Stibolt
Dori K. Stibolt

9

## SERVICE LIST

*United States District Court*
*Southern District of Florida*
Case No. 1:14-cv-2338-KMM

| | |
|---|---|
| J.H. Zidell, P.A.<br>300 71st Street, # 605<br>Miami Beach, FL 33141<br>K. David Kelly<br>David.kelly38@rocketmail.com<br>Rivkah Fay Jaff<br>Rivkah.jaff@gmail.com<br>Jamie H. Zidell<br>zabogado@aol.com<br>Stephen M. Fox, Jr., Esq<br>Stephen.fox.esq@gmail.com<br>Telephone: (305) 865-6766<br>Facsimile: (305) 865-7176<br><br>*Attorneys for Plaintiff* | FOX ROTHSCHILD LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Dori K. Stibolt<br>dstibolt@foxrothschild.com<br>Susanne M. Calabrese<br>scalabrese@foxrothschild.com<br>Telephone: 561-835-9600<br>Facsimile: 561-835-9602<br><br>*Attorneys for Defendant FTS USA, LLC* |

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 9:13-cv-80279-KAM

BARBARA HINES-ROSS

      Plaintiff,

v.

WELLS FARGO BANK, N.A.,

      Defendant.

_____/

### WELLS FARGO BANK, N.A.'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND FLORIDA STATUTE § 57.105 AND INCORPORATED MEMORANDUM OF LAW

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), pursuant to Rule 11 of the Federal Rules of Civil Procedure and Florida Statute § 57.105, hereby moves for entry of sanctions, including an award of attorneys' fees, against: (1) Plaintiff Barbara Hines-Ross ("Plaintiff"); (2) her counsel Cathleen Scott and Lindsey Wagner ("Counsel"); and (3) and the law firm Cathleen Scott & Associates, P.A. because the claims asserted in Plaintiff's Complaint [D.E. # 1] are not warranted by existing law and/or for asserting and maintaining claims that are not supported by the material facts or the application of then-existing law.

## I.    FACTUAL HISTORY

1.    Plaintiff alleges that her father, John Hudson Austin, maintained certain bank accounts at Wells Fargo during his life time.  <u>See</u> Complaint ("Compl."), ¶ 4.

2.    Plaintiff further asserts that she was the only pay on death ("POD") beneficiary designation on Mr. Austin's accounts at Wells Fargo.  <u>Id.</u>

3.      Plaintiff claims that during Mr. Austin's life, Wanda E. Smith, a former Wells Fargo employee, improperly obtained money from Mr. Austin's accounts.  Id. ¶¶ 14-17.  The alleged theft by Ms. Smith is purported to have taken place between February 13, 2008 and February 25, 2011.  Id. ¶ 17.

4.      Mr. Austin died in June 2011, after the alleged theft from his accounts.  Id. ¶ 28.

5.      Plaintiff has brought a one (1) count Complaint against Wells Fargo seeking damages for civil theft based on the alleged theft by Ms. Smith from Mr. Austin's accounts. Plaintiff did not name Ms. Smith as a Defendant in this action.

## II.      MEMORANDUM OF LAW

### A.      Standard for Imposition of Sanctions.

Pursuant to Federal Rule of Civil Procedure 11(b), "By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Similarly, Florida Statute § 57.105(1) provides that:

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts

ACTIVE 22063488v2

by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:  (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.

Here, as described more fully below, upon receipt of Wells Fargo's draft Motion for Sanctions, Plaintiff and her Counsel would have known that the claims set forth in Plaintiff's Complaint are not warranted by existing law and/or are without evidentiary support and/or that she is asserting and maintaining claims that are not supported by the application of then-existing law.  Accordingly, it is clear that this action, as evidenced by Plaintiff's Complaint, is being maintained for improper purposes in direct violation of Federal Rule of Civil Procedure 11(b)(1).

Pursuant to Federal Rule of Civil Procedure 11(c)(1):  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

Similarly, Florida Statute § 57.105 provides a 21 day "safe-harbor" provision to permit the party to withdraw the frivolous claim upon notice.  Accordingly, on August 12, 2013, counsel for Plaintiff was served with a copy of this Motion and letter indicating the factual and legal basis for the instant Motion. A copy of the forgoing letter is attached hereto as Exhibit A. As such, Counsel for Plaintiff has been advised of the specific conduct violating Federal Rule of Civil Procedure 11(b) and Florida Statute § 57.105.  However, Plaintiff and her Counsel have since failed to withdraw the Complaint.  Accordingly, the Court should impose sanctions upon Plaintiff and her Counsel, along with their law firm, and, pursuant to Federal Rule of Civil

3

Procedure 11(c)(4) and Florida Statute § 57.105. Those sanctions should include an order directing payment to Wells Fargo for "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

**B.    Plaintiff's Claim for Civil Theft Is Not Warranted by Existing Law.**

   1.    *A Mere Expectancy Cannot Form the Basis of a Valid Civil Theft Claim.*

In her Complaint, Plaintiff asserts a single claim against Wells Fargo seeking damages for civil theft. See Compl. Specifically, Plaintiff asserts that Wells Fargo is liable to Plaintiff for the purported theft of monies from her father's POD accounts during his life.

To state a valid claim for civil theft, Plaintiff must allege an injury resulting from Wells Fargo's violation of the criminal theft statute. United Technologies Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009). Additionally, Plaintiff must establish that Wells Fargo: (1) knowingly (2) obtained or used, or endeavored to obtain or use, Plaintiff's property with (3) felonious intent (4) either temporarily or permanently to (a) deprive Plaintiff of her right to or a benefit from the property or (b) appropriate the property to Wells Fargo's own use or to the use of any person not entitled to the property. FLA. STAT. §§ 772.11 and 812.014.

Furthermore, and critical to this action, under Florida law, a plaintiff in an action for civil theft must establish possession or an immediate right to possession of the property at the time of the civil theft. Seropian v. Wachovia Bank, N.A., 2010 WL 2949658 at * 3 (S.D. Fla., July 26, 2010).

Here, Plaintiff's potential inheritance from Mr. Austin was nothing more than an expectancy. A mere expectancy cannot form the basis for a claim for civil theft since there is no right of immediate possession. See Balcor Property Management v. Ahronovitz, 634 So. 2d 277, 280 (Fla. 4th DCA 1994). Rather, Plaintiff alleges that she was a POD beneficiary and entitled

4

to certain monies only upon Mr. Austin's death. As such, she cannot be considered an owner of the monies in Mr. Austin's POD accounts, pursuant to the civil theft statute, since Mr. Austin had the power to change the beneficiary designation at any time without the consent of Plaintiff. Moreover, Mr. Austin could and did utilize the monies held in these accounts on a regular basis. As such, there was no fixed amount over which Plaintiff could claim a present ownership interest during Mr. Austin's life. Accordingly, Plaintiff's sole claim for civil theft is not warranted by existing law and is not supported by the application of existing law to the material facts. As such, it is subject to sanctions.

      2.    *Wells Fargo Had No Obligation to Maintain Specific Monies for Mr. Austin.*

Furthermore, Florida courts have long held that when money is the subject of claims for civil theft, there must be an obligation to keep intact or deliver that specific money in question, so that the money can be identified. <u>Gasparini v. Pordomingo</u>, 972 So. 2d 1053, 1056 (Fla. 3rd DCA 2008). Moreover, it is well established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis for a civil theft claim. <u>Id.</u> at 1055. Here, Plaintiff has attempted to allege a claim for civil theft regarding her father's money on deposit with Wells Fargo. Plaintiff has made no allegation, nor can she, that Wells Fargo was under any requirement to maintain specific, identifiable money for Mr. Austin. As such, for this additional reason, Plaintiff cannot possibly prevail on her civil theft claim as a matter of law and sanctions should be awarded.

5

## III.   CONCLUSION

Plaintiff and her Counsel are well aware that the Complaint is not warranted by existing law and/or they are well aware that they are asserting and maintaining claims that are not supported by the material facts or the application of then-existing law.  Therefore it is clear that they continue to maintain this action for improper purposes in direct violation of Federal Rule of Civil Procedure 11(b)(1) and Florida Statute § 57.105.  Accordingly, the Court should enter sanctions against:  (1) Plaintiff Barbara Hines-Ross; (2) her counsel Cathleen Scott and Lindsey Wagner; and (3) and the law firm Cathleen Scott & Associates, P.A.

> FOX ROTHSCHILD, LLP
> 222 Lakeview Avenue, Suite 700
> West Palm Beach, FL 33401
> Telephone:  (561) 835-9600
> Facsimile:  (561) 835-9602
>
> By: /s/ Dori K. Stibolt
>     David A. Greene
>     Florida Bar No. 87629
>     dgreene@foxrothschild.com
>     Dori K. Stibolt
>     Florida Bar No. 183611
>     dstibolt@foxrothschild.com
>
> *Attorneys for Defendant Wells Fargo Bank, N.A.*

6

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2013, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified on the attached Service List

in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

<div align="right">

By:  */s/ Dori K. Stibolt*
Dori K. Stibolt

</div>

7

## SERVICE LIST

*United States District Court*
*Southern District of Florida*

CASE NO:  9:13-80279-KAM

Cathleen Scott & Associates, P.A.
CScott@floridalaborlawyer.com
Lindsey Wagner
LWagner@csapalaw.com
250 South Central Blvd., Suite 104-A
Jupiter, FL 33458
561 653-0008
561 653-0020 fax

*Attorneys for Plaintiff, Barbara Hines-Ross*

David A. Greene
dgreene@foxrothschild.com
Dori K. Stibolt
dstibolt@foxrothschild.com
FOX ROTHSCHILD LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
561 835-9600
561 835-9602 fax

*Attorneys for Defendant Wells Fargo*
*Bank, N.A.*

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  13-60457-CIV-SCOLA

PAUL SCOBIE,

     Plaintiff,

v.

LAUREN TAYLOR,

     Defendant.

_____/

### LAUREN TAYLOR'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND FLORIDA STATUTE § 57.105 AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and Florida Statute § 57.105, Defendant Lauren Taylor ("Taylor") hereby moves for entry of sanctions, including an award of attorneys' fees, against:  (1) Plaintiff Paul Scobie ("Plaintiff") and (2) his counsel Brian McGuire, Brian S. Feldman, and John Sheldon and the law firm Foreman Friedman, PA, Scobie's counsel ("Counsel"), because the claims asserted in Plaintiff's Complaint are not warranted by existing law and/or the factual contentions asserted therein are without evidentiary support and will not have evidentiary support after a reasonable opportunity for further investigation or discovery and/or for asserting and maintaining claims that are not supported by the material facts or the application of then-existing law.

### I.     PROCEDURAL AND FACTUAL HISTORY

1.     Taylor, at one time, worked for Star Creations, Inc. ("Star Creations"). See Compl. ¶ 7.

2.     Although Star Creations is not a party to this litigation, Plaintiff makes certain

allegations regarding the timing of Taylor's resignation from Star Creations and her employment at New View Gifts & Accessories, Ltd. ("New View"). See Compl. ¶¶ 7-9.

3. Taylor did not have an employment agreement with Star Creations that somehow restricted her employment after she left Star Creations. There was no "non-compete" agreement between Star Creations and Taylor, nor was there a "non-solicitation" agreement between Star Creations and Taylor. Nor is Star Creations or Plaintiff attempting to assert that Taylor was not permitted to seek alternative employment with Star Creations' competitors.

4. Rather, Plaintiff claims Taylor defamed him stating, to unknown third parties, that Plaintiff was "actively seeking to terminate his . . . employment relationship with Star Creations" and similarly told unknown third parties that Plaintiff "was actively interviewing with one of Star Creations biggest competitors." See Compl. ¶ 11.

5. Additionally, Plaintiff claims that Taylor, at some point, defamed him by sending a text message[1] which allegedly stated the following "I learned paul & laura r interviewing @Sutton in FL"). See Compl. ¶ 16.

6. There is no legal authority for Plaintiff's claims that these off handed remarks, even if they could be attributed to Taylor, rise to the level of defamation.

7. Rather, it is clear that Plaintiff brought this completely frivolous and unfounded defamation action against Taylor in an effort to harass her for his own purposes or on behalf of his employer (Taylor's former employer).

---

[1] Taylor denies sending the purported text message attached as an Exhibit to the Complaint and such messages can be easily created in a process called "spoofing."

2

ACTIVE 20441060v3

## II.    MEMORANDUM OF LAW

### A.    Standard for Imposition of Sanctions.

Pursuant to Federal Rule of Civil Procedure 11(b), "By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a no frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Similarly, Florida Statute § 57.105(1) provides that:

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.

Here, as described more fully below, upon receipt of Taylor's Motion to Dismiss [D.E. # 6], Plaintiff and his Counsel would have known that the defamation claims set forth in Plaintiff's Complaint are not warranted by existing law and/or are without evidentiary support and/or that he is asserting and maintaining claims that are not supported by the material facts or the

3

application of then-existing law. Accordingly, it is clear that this action, as evidenced by Plaintiff's Complaint, is being maintained for improper purposes, including to needlessly harass Taylor in direct violation of Federal Rule of Civil Procedure 11(b)(1).

Pursuant to Federal Rule of Civil Procedure 11(c)(1): "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

Similarly, Florida Statute § 57.105 provides a 21 day "safe-harbor" provision to permit the party to withdraw the frivolous claim upon notice. Accordingly, on May 13, 2013, counsel for Plaintiff was served with a letter indicating the factual and legal basis for the instant Motion, a copy of which is attached hereto as Exhibit A (without exhibits), along with a copy of this Motion. As such, counsel for Plaintiff has been advised of the specific conduct violating Federal Rule of Civil Procedure 11(b) and Florida Statute § 57.105. However, Plaintiff and his Counsel have failed to withdraw the Complaint in this action. Accordingly, the Court should impose sanctions upon Plaintiff and his Counsel and, pursuant to Federal Rule of Civil Procedure 11(c)(4) and Florida Statute § 57.105, those sanctions should include an order directing payment to Taylor of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

**B.** **Plaintiff's Defamation/Slander Complaint Fails to State a Cause of Action.**

In order to state a claim for defamation under Florida law; Plaintiff must allege and establish: (1) publication; (2) falsity; (3) that the actor acted with negligence concerning a private person; (4) actual damages; and (5) the statement must be defamatory. See <u>Warner v.</u>

4

Schmidt, 2011 WL 2784492 (M.D. Fla. 2011). Moreover, malice is an essential element of the tort. Barry College v. Hull, 353 So. 2d 575, 578 (Fla. 3d DCA 1977).

### 1.   Plaintiff Fails to State a Cause of Action for Slander/Libel Per Quod.

Here, Plaintiff has failed to assert a valid claim for defamation *per quod* and indeed he admits same in his response to the Motion to Dismiss. Plaintiff conceded, as he must, that he has suffered no actual damages and further provided no averments to support the demand for more than $100,000.00 in damages asserted in his Complaint. Rather, Plaintiff's counsel has readily admitted that Plaintiff remains employed by Star Creations and has suffered no negative impact from the alleged "rumors" he complains of in this action. Accordingly, any claim for defamation/slander *per quod* set forth in the Complaint is clearly and absolutely unfounded and therefore subject to sanctions. See Response, D.E. #10, p. 3.

### 2.   Plaintiff Fails to State a Cause of Action for Slander/Libel Per Se.

Second, and more importantly, the alleged statements made by Taylor are simply not defamatory. In order for a statement to be considered defamatory under Florida law, the words or implication must "charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." Seropian v. Forman, 652 So. 2d 490, 495 (Fla. 4th DCA 1995), citing Adams v. News Journal Corp., 84 So. 2d 549 (Fla. 1955). In this matter, Plaintiff states that Taylor was spreading "rumors" about whether or not he was seeking an alternative employment arrangement. See Compl. ¶ 13. Such alleged rumors do not rise to the level of subjecting Plaintiff to hatred, distrust, ridicule, contempt or disgrace. It is not sufficient for Plaintiff to make a conclusory allegation that Taylor's statements resulted in injury to Plaintiff's business or profession without averring any facts to support this contention.

5

Rather, while Plaintiff claims Taylor's alleged statements were "designed to cause Plaintiff to lose his job," Plaintiff did not lose his job and he has failed to assert one fact that establishes any actual damage to his reputation resulting from Taylor's alleged statements. Warner, 2011 WL 2784492 at *2 (Plaintiff's complaint dismissed due to fact that plaintiff failed to assert any facts establishing his claim of damages).

Particular phrases and words may be considered defamatory *per se* if, when considered alone and without innuendo, the publication imputes conduct, characteristics and conditions incompatible with the proper exercise of a lawful business. Barry College, 353 So. 2d at 578. When written words are actionable *per se*, their libelous and injurious character is a matter of common knowledge. Id. Accordingly, when determining whether a published statement constitutes libel *per se*, a fact finder may only consider the "four corners" of the publication. Id. Additionally, the language of the document should not be interpreted in the extreme, but should be construed as the "common mind" would naturally understand it. McCormick v. Miami Herald Publ'g Co., 139 So. 2d 197, 200 (Fla. 2nd 1962).

The alleged publication here is quite similar to the facts of Barry College because they both involve a publication which is innocuous at best. Id. In Barry College, the College announced that plaintiff Hull had resigned from his position when he had, in fact, not resigned. Id. at 576. However, since the publication contained no disparaging remarks which in any way reflected on the plaintiff's character or reputation, such a publication regarding Hull's employment status with the college was not libel *per se* despite the fact that it was false and imputed a characteristic or condition that was incompatible with his profession. Id. at 579 (Hubbart, concurring).

Here, Plaintiff alleges that Taylor orally stated that Plaintiff was interviewing for new employment. See Compl. ¶ 13. Further, Plaintiff alleges that Taylor also sent a text message stating the following: "I learned paul and laura r interviewing @Sutton[2] in FL." See Compl. ¶ 16. Neither alleged communication includes any disparaging remarks and as such, pursuant to the Barry College case, do not rise to the level of defamation *per se*. Plaintiff has offered no alternative legal authority for Plaintiff's conclusion that "rumors" regarding one's employment status rises to the level of defamation *per se* because no such authority exists.

Furthermore, despite the fact that Plaintiff claims this the alleged defamation in this matter is defamation *per se*, he also asks this Court to go well beyond the "four corners" of the publications and "infer" that Taylor's "objective was to injure Plaintiff's professional reputation and hold him out as disloyal to his current employer." See Response p. 4. Pursuant to Barry College, Plaintiff's request is improper as the Court may not look beyond the four corners of the publication to determine whether or not there is defamation *per se*. Id. at 578. As such, Plaintiff's claim for defamation/slander *per se* also fails as a matter of law and therefore Plaintiff's Complaint should be subject to sanctions.

## III.   CONCLUSION

Plaintiff and his Counsel are well aware that the Complaint in this action is not warranted by existing law and/or the factual contentions asserted in the Complaint are without evidentiary support and will not have evidentiary support after a reasonable opportunity for further investigation or discovery and/or they are well aware that they are asserting and maintaining claims that are not supported by the material facts or the application of then-existing law.

---

[2]  Plaintiff explains in his Complaint that "Sutton" is not a competitor of his current employer and instead asks the Court to assume that Plaintiff's alleged text message meant "Stratton." See Compl. ¶ 16.

7

ACTIVE 20441060v3

Therefore it is clear that they continue to maintain the Complaint in this action for improper purposes, including to harass Taylor, in direct violation of Federal Rule of Civil Procedure 11(b)(1) and Florida Statute § 57.105.  Accordingly, the Court should enter sanctions against: (1) Plaintiff Paul Scobie and (2) his Counsel Brian McGuire, Brian S. Feldman, and John Sheldon and the law firm Foreman Friedman, PA

> FOX ROTHSCHILD LLP
> 222 Lakeview Avenue, Suite 700
> West Palm Beach, FL 33401
> (561) 804-4417
> (561) 835-9602 (facsimile)
>
> By: /s/ Dori K. Stibolt
>     Dori K. Stibolt
>     Florida Bar No. 183611
>     dstibolt@foxrothschild.com
>
> *Counsel for Defendant Lauren Taylor*

8

ACTIVE 20441060v3

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Dori K. Stibolt*
Dori K. Stibolt

9

## SERVICE LIST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  13-60457-CIV-SCOLA

FOREMAN FRIEDMAN, PA
2 South Biscayne Blvd.
Suite 2300
Miami, FL 33131
Brian McGuire
bmcguire@fflegal.com
Telephone: 305-358-6555
Facsimile: 305-374-9077

FOREMAN FRIEDMAN, PA
500 Skokie Blvd.
Suite 325
Northbrook Foreman Friedman, PA, IL 60062
Brian S. Feldman
bfeldman@fflegal.com
*Admitted Pro Hac Vice*

FOREMAN FRIEDMAN, PA
500 Skokie Blvd.
Suite 325
Northbrook, IL 60062
John Sheldon
jsheldon@fflegal.com
*Admitted Pro Hac Vice*

***Attorneys for Plaintiff Paul Scobie***

FOX ROTHSCHILD LLP
222 Lakeview Avenue
Suite 700
West Palm Beach, FL  33401
Dori K. Stibolt
dstibolt@foxrothschild.com
Telephone:  (561) 835-9600
Facsimile:  (561) 835-9602

***Attorneys for Defendant Lauren Taylor***

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 9:10-cv-80397-KAM

NICOLE C. SEROPIAN, individually, and
as parent and natural guardian for
KATHERINE ELIZABETH SEROPIAN, a
minor and SARAH LUCINE SEROPIAN,
a minor,

     Plaintiffs,

v.

WACHOVIA BANK, N.A.,

     Defendant.

_____/

**DEFENDANT WACHOVIA BANK, N.A.'S MOTION FOR SANCTIONS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND FLORIDA STATUTE § 57.105
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and Florida Statute § 57.105,

Wachovia hereby moves for entry of sanctions, including an award of attorneys' fees, against:

(1) Plaintiffs Nicole C. Seropian, individually, and Nicole C. Seropian, as parent and natural

guardian of Katherine Elizabeth Seropian, a minor, and Sarah Lucine Seropian, a minor; (2) their

counsel Diran V. Seropian; and (3) and the law firm Steinger, Iscoe & Greene, P.A. because the

claims asserted in the Verified Third Amended Complaint ("Complaint") are not warranted by

existing law and/or the factual contentions asserted therein are without evidentiary support and

will not have evidentiary support after a reasonable opportunity for further investigation or

discovery and/or for asserting and maintaining claims that are not supported by the material facts

or the application of then-existing law.

## I.     PROCEDURAL BACKGROUND

1.      Plaintiff's original Complaint asserted claims for civil theft (Count I), conversion (Count II), breach of fiduciary duty (Count III) and negligence (Count IV).

2.      Wachovia filed its Motion to Dismiss on April 9, 2010, seeking dismissal of all of Plaintiffs' claims asserted in this matter.  This Court, on July 26, 2010, granted Wachovia's Motion to Dismiss and dismissed all of Plaintiffs' claims and provided leave to amend.  See D.E. #33.

3.      Accordingly, on August 18, 2010, Plaintiffs filed a Verified Amended Complaint. See D.E. #35.  Plaintiffs' Complaint asserted two new claims against Wachovia:  Count I – Breach of Third-Party Beneficiary Contract and Count II – Tortious Interference with Expectation of Inheritance.

4.      Wachovia filed its Motion to Dismiss directed to Plaintiffs' Amended Complaint. See D.E. #39.

5.      In response to Wachovia's Motion to Dismiss, on September 10, 2010, Plaintiffs filed their Verified Second Amended Complaint asserting the same claims set forth in their Amended Complaint:  Count I – Breach of Third-Party Beneficiary Contract and Count II – Tortious Interference with Expectation of Inheritance.

6.      On September 28, 2010, Wachovia filed its Motion to Dismiss directed to Plaintiff's Verified Second Amended Complaint.  See D.E. #48.

7.      Thereafter, Plaintiffs sought leave to amend their Complaint, for a fourth time, to include a claim for attorneys fees pursuant to Florida Statute § 709.08.  Accordingly, Plaintiffs' filed a Verified Third Amended Complaint [D.E. #70] which asserted the same two causes of

2

action asserted in their Verified Second Amended Complaint.. Wachovia has not yet filed a Motion to Dismiss directed to Plaintiffs' Third Amended Complaint, but expects to do so shortly.

## II.    FACTUAL BACKGROUND

8.     In this action, Plaintiffs argue that they are beneficiaries of a third-party contract, namely pay-on-death ("POD") time deposits or certificate(s) of deposit previously owned by their grandmother and great-grandmother, Ms. Betty Hester Bleyer, at Wachovia. See Compl. ¶ 7.

9.     Furthermore, Plaintiffs also claim that Wachovia interfered with their expectation of inheritance in that Plaintiffs allege that but for the improper "re-titling, conversion, improper liquidation" of the time deposits owned by Ms. Bleyer they would have passed to Plaintiffs at Ms. Bleyer's death. See Compl. ¶¶ 8, 9.

10.     Plaintiffs, in their Complaint, allege that Ms. Bleyer's daughter, Ms. Joan Caruso, was the actor that undertook the changes to the POD time deposits at issue in this matter pursuant to the use of one or more written Power(s) of Attorney.. See Compl. ¶¶ 10, 12.

11.     Plaintiffs attach, as exhibits to their Complaint, the two Durable Power of Attorney ("DPOA") documents executed by Ms. Bleyer, and witnessed and notarized as well, which provided Ms. Caruso with the power to:  "make deposits to and *withdrawals* from all checking, savings, money market, *deposit certificates* or other cash accounts and all brokerage accounts in any financial institution or brokerage firm;" "generally to transact any business for me of any kind whatsoever." See June 10, 2004 DPOA, attached as Exhibit A and November 28, 2008 DPOA, attached as Exhibit B (emphasis supplied).

12.     Furthermore, the November 28, 2008 DPOA specifically provides that "[m]y attorney-in-fact shall specifically have the *power and authority to change, delete, or add*

3

*beneficiaries or payable-on-death beneficiaries* to any and all of my checking accounts, money market accounts, *certificates of deposit/time deposits*, which are held by *Wachovia*, SunTrust, or Bank of America.  <u>See</u> Exhibit B (emphasis supplied).

13.     Additionally, Wachovia also, during discovery, produced a letter dated December 2, 2008, executed by Ms. Bleyer and directing Wachovia to change the beneficiary designation on several POD time deposits to her attorney-in-fact Joan Caruso.

14.     Based on the 2008 DPOA and the December 2, 2008 letter, executed by Ms. Bleyer, Wachovia began processing the requested changes in beneficiary designations pursuant to the directions provided by Ms. Caruso as Ms. Bleyer's attorney-in-fact..  However, Wachovia requested that Ms. Caruso provide a notarized form of the December 2, 2008 letter from Ms. Bleyer detailing the requested changes in beneficiary designations.  Instead of providing the requested notarized letter to change the beneficiary designations, Ms. Caruso, in her authorized position as attorney-in-fact, elected to withdrawal all sums from the time deposits at issue in this matter.

15.     The December 5, 2008 withdrawals from Ms. Bleyer's accounts resulted in the issuance of Wachovia check number 1600544323 made payable to Betty Hester Bleyer in the amount of $322,105.23.  <u>See</u> Dec, 5, 2008 check, attached as Exhibit C.

### III.     <u>MEMORANDUM OF LAW</u>

A.     <u>Standard for Imposition of Sanctions</u>

Pursuant to Federal Rule of Civil Procedure 11(b), "By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

4

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Similarly, Florida Statute § 57.105(1) provides that :

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.

Here, as described more fully below, upon receipt of Wachovia's production documents, in October 2010, including the two DPOA(s) and the December 2, 2010 letter, Plaintiffs and their counsel would have known that each of the claims raised in their Complaint are not warranted by existing law and/or are without evidentiary support and/or that they are asserting and maintaining claims that are not supported by the material facts or the application of then-existing law. Furthermore, as Plaintiffs and their counsel are now well aware of the true factual circumstances and the applicable law herein, it is clear that the Complaint is being maintained for improper purposes, including to needlessly increase the cost of litigation and harass Wachovia in direct violation of Federal Rule of Civil Procedure 11(b)(1).

Pursuant to Federal Rule of Civil Procedure 11(c)(1): "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may

5

WPI 363213v2

impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

Similarly, Florida Statute § 57.105 provides a 21 day "safe-harbor" provision to permit the party to withdraw the frivolous claim upon notice. Accordingly, on January 13, 2011, counsel for Plaintiffs was served with a letter indicating the factual and legal basis for the instant Motion, a copy of which is attached hereto as Exhibit D (without exhibits), along with a copy of the instant Motion. As such, counsel for Plaintiffs has been advised of the specific conduct violating Federal Rule of Civil Procedure 11(b) and Florida Statute § 57.105. However, Plaintiffs and their counsel have failed to withdraw their Complaint. Accordingly, the Court should impose sanctions upon the Plaintiffs and their counsel. Pursuant to Federal Rule of Civil Procedure 11(c)(4) and Florida Statute § 57.105, those sanctions should include an order directing payment to Wachovia of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

**B.**    **Breach of Third Party Beneficiary Claim**

Plaintiffs allege that Wachovia had some duty to them as POD beneficiaries of Ms. Bleyer's Wachovia time deposits. See Compl. ¶ 30. However, such claim ignores the fact that Plaintiffs had no right to sums on deposit during the lifetime of the account owner (Ms. Bleyer). See FLA. STAT. § 655.82(2). Accordingly, Ms. Bleyer always maintained the right to withdraw sums from the time deposits, to transfer sums from the time deposits to other accounts, to change the beneficiaries on the time deposits or to close the time deposits all together. Id.

The DPOA(s) and other documents produced by Wachovia demonstrate that Ms. Caruso, in accordance with the November 2008 DPOA, had full authority to "withdraw" monies from

WPI 363213v2

Ms. Bleyer's time deposit accounts at Wachovia and further had full authority to specifically

"change, delete, or add beneficiaries or *payable-on-death beneficiaries* to any and all . . .

checking accounts, money market accounts, certificates of deposit/time deposits, which [were]

held at *Wachovia* SunTrust, or Bank of America." See Exhibit B (emphasis supplied).

In Beane v. SunTrust Banks, Inc., -- So. 2d. --, 2010 WL 4483472 (Fla. 4th DCA 2010),

the Court held that a bank could not be held liable for honoring a withdrawal by an account

owner's attorney-in-fact. In the Beane matter, similar to the facts in this matter, the account

owner, Lillian Wilde, had executed a durable power of attorney naming her niece, Deborah

Lorenzo, as her attorney-in-fact. Id. at *1. The durable power of attorney executed in Beane

provided that Ms. Lorenzo could act "for me in my name, place and stead and in any way which

I myself could do if I were personally present with respect to the following matters . . . . 4. To

demand, sue for, collect, recover and receive all goods, claims, debts, monies, interest and

demands whatsoever now due, or that may hereafter be due, or belonging to me . . . ." Id. The

day after the durable power of attorney was executed, Ms. Lorenzo utilizing the power of

attorney, transferred $150,000.00 from Ms. Wilde's Totten[1] trust account at SunTrust bank,

which had as its beneficiary Frances Wallin, to another account in the name of Orson Lorenzo.

Id. Thereafter, Ms. Wilde's personal representative brought suit claiming that Ms. Lorenzo did

not have the power to withdraw monies from the Totten trust because the durable power of

attorney did not expressly authorize the withdrawal as required by Florida Statute § 709.08. Id.

---

[1] Placing a bank account in the name of one individual "in trust for" another individual creates a tentative or Totten trust. Such a trust is tentative because partial revocation occurs every time there is a withdrawal, and the trust is revocable during the lifetime of the depositor/settlor. See In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904).

WPI 363213v2

The <u>Beane</u> Court found that the durable power of attorney provided Ms. Lorenzo with the authority to act for Ms. Wilde "in any way which [she] could do if [she] were personally present." <u>Beane</u>, 2010 WL 4483472 at *2. And further the Court found that because a Totten trust depositor can change the beneficiary without constraint, withdrawing money from the Totten trust does not, as a matter of law, change the disposition effective at the principal's death but merely changes the amounts within the Totten trust. <u>Id.</u> Accordingly, the Court ruled that SunTrust had properly acted in reliance on the durable power of attorney and so was not liable and must be held harmless. <u>Id.</u>; <u>see also</u> FLA. STAT. § 709.08(4)(g) ("A person who acts in good faith upon any representation, direction, decision, or act of the attorney in fact is not liable to the principal or the principal's estate, beneficiaries, or joint owners for those acts.")

Similarly, here, as this Court previously ruled, Ms. Bleyer retained the right to liquidate, withdraw monies, transfer monies, change beneficiaries, etc. on her Wachovia time deposit accounts. Furthermore, Ms. Bleyer specifically authorized her attorney-in-fact, her daughter Ms. Caruso, with the power to liquidate, withdraw monies, transfer monies and specifically empowered Ms. Caruso, as her attorney-in-fact, to change the POD beneficiaries on the time deposits at issue. Accordingly, pursuant to <u>Beane</u>[2] and Florida's Durable Power of Attorney statute, FLA. STAT. § 709.08, Plaintiffs' claims asserted in Count I are not warranted by existing law and/or are without evidentiary support.

### C.   <u>Tortious Interference With Expectation of Inheritance Claim</u>

Plaintiffs also claim that Wachovia, by "re-titling, liquidation, transfer and closure" of the time deposits owned by Ms. Bleyer "in reliance on representations of Joan Caruso "but not

---

[2] Because, the <u>Beane</u> opinion is quite recent, counsel for Wachovia alerted Plaintiffs' counsel to same on December 9, 2010 during a telephone conference. Further, counsel for Wachovia, via e-mail, forwarded counsel for Plaintiffs the cite to <u>Beane</u> that same day. <u>See</u> Dec. 9, 2010 e-mail, attached as Exhibit E.

8

based on instructions or authorization from the account owner" Ms. Bleyer interfered with Plaintiffs' expected inheritance. See Compl. ¶ 44. However, as explained above, Ms. Bleyer (and as Plaintiffs admit in their Complaint) retained the right to alter the time deposits such that her intention to benefit the Plaintiffs was only a "probability." See Compl. ¶ 42. As this Court found earlier, "beneficiaries in an account having a pay-on-death designation have no right to sums on deposit during the lifetime of any party." See D.E. #33, p. 9.

Furthermore, now that Plaintiffs and Plaintiffs' counsel are in possession of the two DPOA(S) executed by Ms. Bleyer in favor of her daughter Ms. Caruso, and indeed are relying on same, in addition to a letter from Ms. Bleyer documenting her directions and instructions regarding the re-titling of the time deposits at issue, Plaintiffs have no evidentiary support for this claim. Ms. Bleyer authorized Ms. Caruso, as her attorney-in-fact, to change the POD beneficiaries on these time deposits and therefore specifically authorized Ms. Caruso to change her "testamentary" directions on the time deposits at issue. Wachovia, properly and in reliance on the executed and notarized DPOA(s) and other documents cannot, pursuant to Beane be held liable in this matter. Based on the foregoing, Plaintiffs' Count II lacks any evidentiary support and is not warranted by existing law.

## IV.    CONCLUSION

Plaintiffs and their counsel are now well aware that this matter is not warranted by existing law and/or the factual contentions asserted in their Verified Third Amended Complaint are without evidentiary support and will not have evidentiary support after a reasonable opportunity for further investigation or discovery and/or they are well aware that they are asserting and maintaining claims that are not supported by the material facts or the application of then-existing law. Therefore it is clear that they continue to maintain the Verified Third

9

Amended Complaint in this action for improper purposes, including, to needlessly increase the cost of litigation, and to harass Wachovia, in direct violation of Federal Rule of Civil Procedure 11(b)(1) and Florida Statute § 57.105. Accordingly, the Court should enter sanctions against: (1) Plaintiffs Nicole C. Seropian, individually, and Nicole C. Seropian, as parent and natural guardian of Katherine Elizabeth Seropian, a minor, and Sarah Lucine Seropian, a minor; (2) their counsel Diran V. Seropian; and (3) and the law firm Steinger, Iscoe & Greene, P.A.

Dated: February 10, 2011,

<div style="margin-left:3em;">

Fox Rothschild, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By: /s/Dori K. Stibolt
    Amy S. Rubin
    Florida Bar No. 476048
    arubin@foxrothschild.com
    Dori K. Stibolt
    Florida Bar No. 183611
    dstibolt@foxrothschild.com

*Attorneys for Defendant Wachovia Bank, N.A.*

</div>

10

## SERVICE LIST

*Nicole Seropian, et. al. v. Wachovia Bank, N.A.*
United States District Court, Southern District of Florida
CASE NO. 9:10-cv-80397-KAM

### *Electronically by CM/ECF System*

Amy S. Rubin
arubin@foxrothschild.com
Dori K. Stibolt
dstibolt@foxrothschild.com
FOX ROTHSCHILD, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, Florida 33401
Telephone:    (561) 835-9600
Facsimile:    (561) 835-9602

*Attorneys for Defendant Wachovia Bank, N.A.*

Diran V. Seropian
DSeropian@injurylawyers.com
STEINGER, ISCOE & GREENE, PA
1645 Palm Beach Lakes Blvd, 9th Floor
West Palm Beach, FL 33401
Telephone:    (561) 932-1925
Facsimile:    (561) 296-5949

*Attorney for Plaintiff Seropians*

12