

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:14-cv-23388-KMM

ORLANDO ESTRADA and all others
similarly situated under 29 U.S.C. 216(b),

        Plaintiffs,

v.

FTS USA, LLC,

        Defendant.

_____/

## DEFENDANT FTS USA, LLC'S RESPONSE TO
## PLAINTIFF'S STATEMENT OF CLAIM [D.E. # 22]

Defendant, FTS USA, LLC ("FTS" or "Defendant"), by and through its undersigned counsel, and pursuant to this Court's Amended Paperless Order of Court Practice in Fair labor Standards Act Cases [D.E. # 21], hereby responds to Plaintiff's Updated Statement of Claim [D.E. # 22] as follows:

Defendant denies that Plaintiff Orlando Estrada ("Estrada") began his employment with FTS on October 10, 2012. Rather, Estrada's date of hire was October 22, 2012. Defendant admits that Estrada's employment with FTS ended on March 24, 2014.

Defendant otherwise disputes Estrada's statement of claim. During his orientation, on October 22, 2012, Estrada executed a Payroll Explanation and Compliance form, which explained that Technicians that work in the field, like Estrada, would be paid based on his production for that week (of course, he would always be paid at least minimum wage for the hours he worked or overtime minimum wage if he worked in excess of 40 hours per week). He further agreed to the assigned rates for each job and agreed that those rates would determine his effective-hourly-rate ("EHR"). Estrada also agreed and understood FTS' policy that he was

1

Case 1:14-cv-23388-KMM   Document 23   Entered on FLSD Docket 01/05/2016   Page 2 of 5

required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. Furthermore, since Estrada worked in the field, he understood that he was required to keep daily detailed time records to document and track time worked, which would include tracking his hours from the time he arrived at work site until completion of the final job of the day, including travel time to and from jobs throughout the day, the time he took his lunch break, etc. Finally, Estrada understood and agreed that he was required to list **all** work hours on his timesheet and that under or over-reporting his work hours was, and is, a serious violation of company policy.

Furthermore, Estrada also signed a Paycheck Verification Procedure form in which he further agreed to promptly report any errors or inaccuracies in his pay and the procedures and timing for doing so.

Estrada's pay history demonstrates that these procedures ensured that he received accurate pay and overtime pay. While Estrada claims that he worked 15 hours of overtime each week, that assertion is contradicted by Estrada's pay history. Rather, he worked, on average, 7.3 hours per week of overtime. Furthermore, as documented by his Earning Statements, Estrada was appropriately paid for any such overtime.

Estrada's claim that he did not receive overtime is completely inaccurate. Estrada regularly worked overtime hours and he was appropriately compensated for such time. Specifically, his Earning Statements establish that he was properly paid overtime for the pay periods ending: (1) November 3, 2012; (2) November 17, 2012; (3) December 1, 2012; (4) December 15, 2012; (5) December 29, 2012; (6) January 12, 2013; (7) January 26, 2013; (8) February 9, 2013; (9) February 23, 2013; (10) March 9, 2013; (11) March 23, 2013; (12) April 6, 2013; (13) April 20, 2013; (14) May 4, 2013; (15) May 18, 2013; (16) June 1, 2013; (17) June 15, 2013; (18) June 29, 2013; (19) July 13, 2013; (20) July 27, 2013; (21) August 10, 2013; (22)

2

August 24, 2013; (23) September 7, 2013; (24) September 21, 2013; (25) October 5, 2013; (26) October 19, 2013; (27) November 2, 2013; (28) November 16, 2013; (29) November 30, 2013; (30) December 14, 2013; (31) January 11, 2014; (32) January 25, 2014; (33) February 8, 2014; (34) February 22, 2014; (35) March 8, 2014; and (36) March 22, 2014. Indeed, Estrada received in excess of $10,000 in overtime pay during this time period.

To the extent Plaintiff seeks time and a half as a method of compensation for alleged overtime, as sserted in his Complaint, that would be an improper method of calculation. Because Estrada was compensated utilizing a "piece rate" payment method, pursuant to 29 CFR § 778.111, he was and is only entitled to overtime compensation at a .5[1] rate multiplied by his regular rate for the week.

In summary, Plaintiff's FLSA claim fails to state a cause of action. FTS has specific time recording, verification and error reporting policies and procedures. Estrada received and understood those policies and procedures. Estrada, who worked in the field, was responsible for keeping track of his time and verifying that his weekly time records were accurate. Estrada's pay history documents overtime hours worked for which he was properly paid pursuant to 29 CFR § 778.111.

<div style="margin-left: 40%">

Fox Rothschild, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By: /s/ Dori K. Stibolt
    Dori K. Stibolt
    Florida Bar No. 183611
    dstibolt@foxrothschild.com
    Susanne M. Calabrese

</div>

---

[1] Plaintiff's Updated Statement of Claim appears to concede this point despite the allegations set forth in his Complaint.

ACTIVE 27833976v2

Florida Bar No. 89512
scalabrese@foxrothschild.com

*Attorneys for Defendants FTS USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2016, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

Pursuant to this Court's Order of December 1, 2015 [D.E. # 21], documents in support of

this Response were also served via Email.

By: */s/ Dori K. Stibolt*
Dori K. Stibolt

**SERVICE LIST**

*United States District Court*
*Southern District of Florida*
Case No. 1:14-cv-2338-KMM

| | |
|---|---|
| J.H. Zidell, P.A.<br>300 71st Street, #605<br>Miami Beach, FL 33141<br>K. David Kelly<br>david.kelly38@rocketmail.com<br>Rivkah Fay Jaff<br>Rivkah.jaff@gmail.com<br>Jamie H. Zidell<br>zabogado@aol.com<br>Telephone:  305-865-6766<br>Facsimile:  305-865-7176<br><br>*Attorneys for Plaintiff* | FOX ROTHSCHILD LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Dori K. Stibolt<br>dstibolt@foxrothschild.com<br>Susanne M. Calabrese<br>scalabrese@foxrothschild.com<br>Telephone:  561-835-9600<br>Facsimile:  561-835-9602<br><br>*Attorneys for Defendant FTS USA, LLC* |

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 14-CV-21886-COOKE/TORRES

IGNACIO SANCHEZ,

     Plaintiff,

vs.

FTS USA, LLC,

     Defendant.

_____/

## DEFENDANT FTS USA, LLC'S  RESPONSE TO PLAINTIFF'S STATEMENT OF CLAIM

Defendants, FTS USA, LLC ("FTS" or "Defendant"), by and through its undersigned

counsel, and pursuant to this Court's Order of June 30, 2013 [D.E. # 8], hereby responds to

Plaintiff's Statement of Claim as follows:

Defendant admits that Sanchez began his employment with FTS in January 2013.

Defendant further admits that Sanchez's employment with FTS ended in February 2014.

Defendant otherwise disputes Sanchez's statement of claim for the following reasons.

During his orientation, on January 14, 2013, Sanchez executed a Payroll Explanation and

Compliance form which explained that Technicians that work in the field, like Sanchez, would

be paid based on his production for that week (of course, he would always be paid at least

minimum wage for the hours he worked or overtime minimum wage if he worked in excess of 40

hours per week).  He further agreed to the assigned rates for each job and agreed that those rates

would determine his effective-hourly-rate ("EHR").  Sanchez also agreed and understood FTS'

policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour

work day.  Furthermore, since Sanchez worked in the field, he understood that he was required to

<div align="center">1</div>

ACTIVE 26443412v1

keep daily detailed time records to document and track time worked, which would include tracking his hours from the time he arrived at work site until completion of the final job of the day, including travel time to and from jobs throughout the day, the time he took his lunch break, etc. Finally, Sanchez understood and agreed that he was required to list **all** work hours on his timesheet and that under or over reporting his work hours was, and is, a serious violation of company policy.

Furthermore, Sanchez also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so.

Sanchez's weekly time sheets, which he verified were accurate and complete, demonstrate that these procedures ensured that he received accurate pay and overtime pay. While Sanchez claims that he worked "approximately 25 overtime hours a week" that is contradicted by Sanchez's self-verified and executed time sheets. Rather, he worked, on average, 10 hours per week of overtime. Furthermore, as documented both by his time sheets and his Earning Statements, Sanchez recorded and documented overtime work and he was appropriately paid for such time.

Sanchez's claim that he did not receive overtime is completely inaccurate. Sanchez regularly worked overtime hours and he was appropriately compensated for such time. Specifically, his Earning Statements establish that he was properly paid overtime for the pay periods ending: (1) February 9, 2013; (2) February 23, 2013; (3) March 9, 2013; (4) March 23, 2013; (5) April 6, 2013; (6) April 20, 2013; (7) May 4, 2013; (8) May 18, 2013; (9) June 1, 2013; (10) June 15, 2013; (11) June 29, 2013; (12) July 13, 2013; (13) July 27, 2013; (14) August 10, 2013; (15) August 24, 2013; (16) September 7, 2013; (17) September 21, 2013; (18) October 5,

2

2013; (19) October 19, 2013; (20) November 2, 2013; (21) November 16, 2013; (22) November 30, 2013; (23) December 14, 2013; (24) December 28, 2013; (25) January 11, 2014; and (26) January 25, 2014. Indeed, Sanchez received in excess of $10,974 in overtime pay during this time period.

Finally, Sanchez's Statement of Claim also utilizes an improper method of calculation. Because Sanchez was compensated utilizing a "piece rate" payment method, pursuant to 29 CFR § 778.111, he was and is only entitled to overtime compensation at a .5 rate multiplied by his regular rate for the week.

In summary, Plaintiff's FLSA claim fails to state a cause of action. FTS has specific time recording, verification and error reporting policies and procedures. Sanchez received and understood those policies and procedures. Sanchez, who worked in the field, was responsible for keeping track of his time and, indeed, executed and verified that his weekly time sheets were accurate. Sanchez's self-verified time sheets, document overtime hours worked in 46 weeks for which he was properly paid pursuant to 29 CFR § 778.111.

FOX ROTHSCHILD, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By: /s/ Dori K. Stibolt
   Dori K. Stibolt
   Florida Bar No. 183611
   dstibolt@foxrothschild.com

*Attorneys for Defendants FTS USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/  Dori K. Stibolt*
      Dori K. Stibolt

## SERVICE LIST

*United States District Court*
*Southern District of Florida*

CASE NO:  14-CV-21886-MGC

| | |
|---|---|
| Fairlaw Firm<br>9130 S. Dadeland Blvd.<br>Suite 1500<br>Miami, FL 33156<br>Brian H. Pollock<br>brian@fairlawattorney.com<br>Telephone:  305-230-4884<br>Facsimile:  305-230-4844<br><br>*Attorneys for Plaintiffs* | FOX ROTHSCHILD LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Dori K. Stibolt<br>dstibolt@foxrothschild.com<br>Telephone:  561-835-9600<br>Facsimile:  561-835-9602<br><br>*Attorneys for Defendant FTS USA, LLC* |

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:13-cv-23071-MGC

YOSVANY UTRA,

     Plaintiff,

v.

FTS USA, LLC and
UNITEK USA, LLC,

     Defendants.

_____/

## DEFENDANT FTS USA, LLC'S AND UNITEK USA, LLC'S
## RESPONSE TO PLAINTIFF'S STATEMENT OF CLAIM

Defendants, FTS USA, LLC ("FTS"), and Unitek USA, LLC ("Unitek", collectively

"Defendants"), by and through its undersigned counsel, and pursuant to this Court's Order of

September 9, 2013 [D.E. # 12], hereby responds to Plaintiff's Statement of Claim as follows:

1.    Plaintiff Yosvany Utra

Utra's Complaint fails to state a cause of action for overtime as set forth in Defendants'

Motion to Dismiss. See D.E. # 19. Specifically, Utra's Complaint fails to set forth a *prima facie*

claim for a Fair Labor Standard Act ("FLSA") violation since the Complaint lacks any details or

information regarding the amount and extent of his work in order to demonstrate that he was

inadequately compensated. Rance v. Rocksolid Granit USA, Inc., 292 Fed. App'x. 1, 2008 WL

2751291 (11th Cir., July 16, 2008); see also St. Croix v. Genetech, Inc., 2012 WL 2376668

(M.D. Fla., June 22, 2012)(FLSA Complaint failed to state a cause of action for overtime

because plaintiff failed to provide dates or date ranges during which she worked overtime.)

Regarding Utra's statement of claim, Defendants admit that Utra began his employment

with FTS in October 2012. Defendants otherwise dispute Utra's statement of claim for the

1

ACTIVE 23035915v1

following reasons. During his orientation, Utra executed a Payroll Explanation and Compliance form which explained that Technicians that work in the field, like Utra, would be paid based on his production for that week (of course, he would always be paid at least minimum wage for the hours he worked or overtime minimum wage if he worked in excess of 40 hours per week). See Payroll Explanation and Compliance Form, attached as Exhibit A. He further agreed to the assigned rates for each job and agreed that those rates would determine his effective-hourly-rate ("EHR"). Id., ¶ 4. Utra also agreed and understood FTS' policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. Id., ¶ 6. Furthermore, since Utra worked in the field, he understood that he was required to keep daily detailed time records to document and track time worked, which would include tracking his hours from the time he arrived at work site until completion of the final job of the day, including travel time to and from jobs throughout the day, the time he took his lunch break, etc. Id., ¶ 7. Finally, Utra understood and agreed that he was required to list all work hours on his timesheet and that under or over reporting his work hours was, and is, a serious violation of company policy. See Exhibit A, ¶ 10.

Furthermore, Utra also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Paycheck Verification Procedure, attached as Exhibit B.

Utra's weekly time sheets, which he verified were accurate and complete, demonstrate that these procedures ensured that he received accurate pay and overtime pay. While Utra claims that "Defendant always deducted sixty (60) minutes for lunch", Utra's weekly time sheets instead show that Utra took, on average, thirty (30) minutes for lunch as required. See Weekly Time Sheets, attached as Exhibit C. Additionally, Utra's claim that he worked in "excess of

2

seventy (70) hours per week" is again contradicted by Utra's self-verified and executed time sheets. Id.

Utra's claim that he did not receive overtime is completely inaccurate and fabricated. To the extent Utra worked overtime, he was compensated for such time. Specifically, his Earning Statements establish that he was properly paid overtime. Utra received overtime pay for the pay periods ending: (1) October 20, 2012; (2) November 3, 2012; (3) November 17, 2012; (4) December 1, 2012; (5) December 15, 2012; (6) January 12, 2013; (7) January 26, 2013; (8) February 9, 2013; (9) March 9, 2013; (10) March 23, 2013; (11) April 6, 2013; (12) April 20, 2013; (13) May 4, 2013; (14) May 18, 2013; (15) June 1, 2013; (16) June 29, 2013; (17) July 13, 2013; and (18) August 10, 2013. Utra received in excess of $3,14.005 in overtime pay during this time period. See Earning Statements, attached as Exhibit D.

2.     Mariano Rodriguez:

Rodriguez's Complaint fails to state a cause of action for overtime as set forth in Defendants' Motion to Dismiss. See D.E. # 19.

Regarding Rodriguez's statement of claim, Defendants deny that Rodriguez began his employment with FTS in November 2012. However, Defendants admit that Rodriguez's employment with FTS ended in June 2013. Defendants otherwise dispute Rodriguez's statement of claim for the following reasons. Rodriguez was hired as a Field Supervisor, an exempt position at FTS, and therefore he was not entitled to overtime pay. Rodriguez was paid in excess of $455 salary per week, in fact he was paid $850 salary per week. See Earning Statements, attached as Exhibit E. As a Field Supervisor, Rodriguez's primary duty was that of management of the Miami, Florida location. Rodriguez's duties as a Field Supervisor included hiring and firing of Technicians, the supervision and discipline of up to fifteen (15) Technicians (and well

3

ACTIVE 23035915v1

in excess of two (2)), responding to customer complaints, and tracking expenses, etc. See FTS Field Supervisor Job Description, attached as Exhibit F.

During his orientation, Rodriguez executed a Payroll Explanation and Compliance form which set forth payroll procedures. See Payroll Explanation and Compliance Form, attached as Exhibit G. Rodriguez also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Paycheck Verification Procedure, attached as Exhibit H.

3.     Mauro Diaz:

Diaz's Complaint fails to state a cause of action for overtime as set forth in Defendants' Motion to Dismiss. See D.E. # 19.

In response to Diaz's statement of claim, Defendants admit that Diaz began his employment with FTS in October 2012. Defendants further admit that Diaz's employment with FTS ended in May 2013. Defendants otherwise dispute Diaz's statement of claim for the following reasons. As part of his orientation, Diaz executed a Payroll Explanation and Compliance form which explained that Technicians that work in the field, like Diaz, would be paid based on his production for that week. See Payroll Explanation and Compliance Form, attached as Exhibit I. He further agreed to the assigned rates for each job and agreed that those rates would determine his EHR. Id., ¶ 4. Diaz also agreed and understood FTS' policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. Id., ¶ 6. Moreover, since Diaz worked in the field he understood that he was required to keep detailed time records on a daily basis. Specifically, Diaz understood that he was required to track his time which would include his hours from the time he arrived at a work site until completion of the final job of the day, including travel time to and from jobs throughout the day,

the time he took his lunch break, etc. Id., ¶ 7. Finally, Diaz also understood and agreed that he was required to list **all** work hours on his timesheet and that under or over reporting his work hours was a serious violation of company policy. See Exhibit I, ¶ 10.

Diaz also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Paycheck Verification Procedure, attached as Exhibit J.

Diaz's weekly time sheets, which he verified were accurate and complete, demonstrate these procedures ensured that he received correct pay and overtime pay. Although Diaz claims that "Defendant always deducted sixty (60) minutes for lunch", Diaz's weekly time sheets instead show that during most weeks Diaz took, on average, thirty (30) minutes for lunch as required. See Weekly Time Sheets, attached as Exhibit K. Furthermore, for the weeks in which Diaz did not take a lunch break, a violation of company policy (i.e. the weeks of October 21, 2012 [FTS/UTRA 100], November 4, 2012 [FTS/UTRA 102], November 18, 2012 [FTS/UTRA 104] and December 23, 2012 [FTS/UTRA 109]) there were no deductions from his pay for lunch. Id. Additionally, Diaz's claim that he worked in "excess of seventy (70) hours per week" is again contradicted by Diaz's verified and signed time sheets. See Exhibit K.

Diaz's assertion that he did not receive overtime is completely inaccurate and flatly contradicted by his Earning Statements. To the extent Diaz worked overtime, he was compensated for such time. Specifically, his Earning Statements establish that he was properly paid overtime. Diaz received overtime pay for the pay periods ending: (1) October 20, 2012; (2) November 3, 2012; (3) November 17, 2012; (4) December 1, 2012; (5) December 15, 2012; (6) December 29, 2012; (7) January 12, 2013; (8) January 26, 2013; and (9) February 9, 2013. Diaz

ACTIVE 23035915v1

Case 1:13-cv-23071-MGC   Document 20   Entered on FLSD Docket 10/31/2013   Page 6 of 7

received in excess of $3,444.00 in overtime pay during this time period. See Earning Statements, attached as Exhibit L.

Thereafter, in February of 2013, Diaz was promoted to Field Supervisor, an exempt position, and therefore was no longer eligible for overtime pay. Upon his promotion, Diaz was paid in excess of $455 salary per week, in fact, he was paid an $800 salary per week. See Earning Statements, i.e. FTS/UTRA 127. As a Field Supervisor, Diaz's primary duty was that of management of the Miami, Florida location. Rodriguez's duties as a Field Supervisor included hiring and firing of technicians, the supervision and discipline of up to 15 technicians, responding to customer complaints, and tracking expenses, etc. See Exhibit F.

Plaintiffs, and their counsel, have brought these claims in bad faith and, therefore, this Court should award Defendants attorneys' fees and costs in this matter. Defendants reserve the right to include additional defenses and documents in support of those defenses as this matter moves forward.

> FOX ROTHSCHILD, LLP
> 222 Lakeview Avenue, Suite 700
> West Palm Beach, FL 33401
> Telephone: (561) 835-9600
> Facsimile: (561) 835-9602
>
> By: /s/ Dori K. Stibolt
>     Dori K. Stibolt
>     Florida Bar No. 183611
>     dstibolt@foxrothschild.com
>
> *Attorneys for Defendants FTS USA, LLC and Unitek USA, LLC*

ACTIVE 23035915v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Dori K. Stibolt*
Dori K. Stibolt

## SERVICE LIST

*United States District Court*
*Southern District of Florida*

CASE NO: 9:13- cv-23071-MGC

| | |
|---|---|
| JAFFE GLENN LAW GROUP, P.A.<br>12000 Biscayne Blvd., Suite 305<br>Miami, FL 33181<br>Andrew I. Glenn<br>aglenn@jaffeglenn.com<br>Jodi J. Jaffe<br>jjaffe@jaffeglenn.com<br>Telephone: 305-726-0060<br>Facsimile: 305-726-0046<br><br>*Attorneys for Plaintiff* | FOX ROTHSCHILD LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Dori K. Stibolt<br>dstibolt@foxrothschild.com<br>Telephone: 561-835-9600<br>Facsimile: 561-835-9602<br><br>*Attorneys for Defendants FTS USA, LLC*<br>*and Unitek USA, LLC* |

7