UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 14-23388-CIV-MOORE/MCALILEY

ORLANDO ESTRADA,

  Plaintiff,

v.

FTS USA, LLC.

  Defendant.
  _____/

## REPORT AND RECOMMENDATION REGARDING SANCTIONS

Some time ago Defendant, who prevailed in this action, asked the Court to sanction Plaintiff and his counsel under Federal Rule of Civil Procedure 11. I recommended to presiding District Court Judge K. Michael Moore, that the Court sanction Plaintiff's counsel, Jamie H. Zidell, and his law firm J.H. Zidell, P.A., under Rule 11, for their filing of an objectively frivolous Complaint. [DE 78]. Judge Moore adopted that recommendation. [DE 85]. Because the parties had not yet addressed, and the Court had not yet considered, what sanctions might be appropriate, Judge Moore ordered the parties to brief that issue [*Id.*], and they did. [DE 86, 92]. The matter is before me once again, to recommend appropriate sanctions. [DE 91].

I have thoroughly reviewed the record, the parties' memoranda and the applicable law. For reasons I explain, it is especially difficult in this case to devise a sanction that the Court, with any confidence, believes will deter Plaintiff's counsel from repetition of the sanctioned conduct. In the end, I recommend that the Court order Mr. Zidell and his

1

law firm to pay Defendant $60,000 which represents attorneys' fees Defendant reasonably incurred in defending the frivolous Complaint.

## I. Background

The parties hotly contested whether the Court should sanction Plaintiff or his counsel. The Report and Recommendation ("R&R") I issued on January 23, 2018, explored that question in detail. [DE 78]; *Estrada v. FTS,* No. 14-23388-CIV-MOORE/MCALILEY, 2018 WL 1836007 (S.D. Fla. Jan 23, 2018). The Court resolved that debate and although Plaintiff's counsel continues to argue that their conduct was not improper, that question is closed. The Court here presumes familiarity with the R&R, and the Order that adopted it. I do, however, briefly recap Plaintiff's counsel's improper conduct, along with key events in this lawsuit that underlie my assessment of appropriate sanctions.

On September 15, 2014, Plaintiff's counsel filed a Complaint charging Defendant, Plaintiff's former employer, had not paid any overtime wages to which Plaintiff was entitled under the Fair Labor Standards Act ("FLSA"). Specifically, the Complaint stated that Defendant "*never* paid the extra half time rate for *any* hours worked over 40 hours in a week as required by the" FLSA. [DE 1, p. 3, ¶ 13] (emphasis added). This was quickly shown to be false. Specifically, on October 28, 2014, less than six weeks after Plaintiff filed suit, Defendant provided Plaintiff's counsel with Plaintiff's weekly Time Sheets and his Earnings Statements, which documented Plaintiff's having worked a weekly average of 7.3 hours of overtime, and Defendant's having properly paid Plaintiff those overtime wages. [DE 12; DE 74, p. 5].

Just a few weeks later, on November 19, 2014, the Court stayed this action upon receipt of Defendant's Suggestion of Bankruptcy. [DE 15, 17]. This lawsuit did not move forward again until a year later, on December 1, 2015, when the Court lifted the stay. [DE 20]. After an unsuccessful settlement conference, the Court issued a Scheduling Order in March of 2016 [DE 37], pursuant to which the parties engaged in limited discovery, in June and July 2016. [*See* DE 86, pp. 3-4]. They did not issue written discovery, but they took one another's depositions. [*Id.*]. In particular, Defendant deposed Plaintiff on July 28, 2016. At his deposition Plaintiff verified his signature on his Time Sheets and confirmed that he received the overtime wages documented in his Earnings Statements. [*See id.* at p. 10].

A few days after Plaintiff's deposition, on August 3, 2016, Defendant served on Plaintiff a draft motion for sanctions under Rule 11, [DE 52-5], in compliance with the Rule's 21-day safe harbor provision. Fed. R. Civ. P. 11(c)(2). In the midst of that safe harbor period, on August 26, 2016, Defendant filed what turned out to be a successful Motion for Summary Judgment. [DE 48, 49]. Once the safe harbor period expired without Plaintiff having withdrawn or corrected the Complaint, Defendant filed its Motion for Sanctions with the Court. [DE 52]. Not long after, the Court entered summary judgment in favor of Defendant, which Plaintiff appealed. [DE 59, 60]. The Court stayed the Motion for Sanctions pending appeal. [DE 62]. When the Court of Appeals affirmed the judgment for Defendant, Defendant filed its Renewed Motion for Sanctions [DE 68, 70].

As noted, the Court granted that Motion. [DE 78, 85]. In a nutshell, the Court found that (1) Plaintiff's allegation that he was "never" paid any overtime wages for "any hours worked over 40" was objectively frivolous, (2) that Mr. Zidell and his firm did not make a reasonable pre-suit inquiry into the factual basis for that claim, and had they done so, they would have learned that this claim was frivolous, and (3) that Mr. Zidell and his firm (not the Plaintiff) should be sanctioned for their failure to meet their obligations under Rule 11. [*Id.*].

## II. The Court's broad discretion

Rule 11 vests the Court with broad discretion to determine appropriate sanctions. *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987). Courts may impose monetary and nonmonetary sanctions; this may include "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* The Eleventh Circuit has noted that "the sanctions most commonly imposed are costs and attorneys' fees." *Donaldson, Id.*

The Advisory Committee Note to the Rule states that the Court "has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted." Advisory Committee Notes to Rule 11, 1983 Amendment. The Advisory Committee identified these factors courts might consider:

- whether the conduct was willful or negligent;
- whether it infected the entire pleading, or only one particular count or defense;

- whether the person has engaged in similar conduct in other litigation;
- whether it was intended to injure;
- what effect it had on the litigation process in time or expense;
- whether the responsible person is trained in the law;
- what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;
- what amount is needed to deter similar activity by other litigants.

Advisory Committee Notes to Rule 11, 1993 Amendment.

## III.   Analysis

Defendant argues that the Court should order Plaintiff's counsel to compensate Defendant for all attorneys' fees it incurred in defending this action. [DE 86, pp. 7, 11]. Defendant notes that the Rule expressly authorizes, as a sanction, payment to Defendant of attorney's fees that "directly result[] from the violation." Fed. R. Civ. P. 11(c)(4). Defendant argues, not unreasonably, that all of its fees were a direct result of Plaintiff's objectively frivolous one-count Complaint [*see* DE 86, pp 5-7], and I address this further below.

But first, I turn to the arguments Plaintiff's counsel make urging that Defendant's proposed sanction is excessive, and that this Court should impose no sanction at all.

### A. The scope of the sanctioned conduct

Plaintiff's counsel start by claiming that the sanctioned conduct is "very narrow" as it "only concern[s] one of the allegations in the Complaint (i.e. the allegation that Plaintiff was **never** paid overtime, as opposed to the allegation that Plaintiff was not being paid overtime correctly)." [DE 92, p. 3, *see also* p. 6] (emphasis in original). This falsely characterizes the Complaint. The three-page Complaint makes but one claim, in

paragraph 13: that Defendant "never paid the extra half time rate for any hours worked over 40." [DE 1, p. 3, ¶ 13]. It does *not* include an alternative claim that Defendant paid some, but not all, overtime wages.[1] It is troubling, particularly at this stage in these sanction proceedings, that Plaintiff's counsel misrepresent their Complaint.

## B. The timing of Defendant's Motion for Sanctions

Plaintiff's counsel also argues the Court should not sanction them because Defendant unjustly filed its Motion for Sanctions too late in the lawsuit. Specifically, Plaintiff's counsel writes:

> Defendant served its Rule 11 Motion initially on September 2, 2016. [DE 52] – almost two years after this case was initially filed in 2014 and after Defendant's bankruptcy concluded. At said time, the deadline to amend pleadings as set forth in the Court's Scheduling Order [DE 37] had well passed (6/12/16). It appears that Defendant did so strategically and transparently, and waited until after the Plaintiff's deposition, and also after the discovery deadline passed on 8/8/16, and in addition Defendant violated the pretrial motion deadline by filing the motion for sanctions beyond same.

[DE 92, p. 2; *see also* DE 92 pp. 6-7 (repeating argument)]. There are a number of problems with this reasoning. To begin, the reference to a two-year period ignores the fact that the Court stayed the lawsuit for one of those years. The criticism that Defendant filed the Motion after the deadline for amending pleadings recycles an argument Plaintiff made before (i.e., that by the time Defendant filed its Motion for Sanctions Plaintiff could

---

[1] The remainder of the Complaint has boilerplate allegations, with the sole exception of paragraph 8, which states: "Plaintiff worked for Defendant as a cable box technician from on or about October 10, 2012 through on or about March 24, 2014."

not remedy his error because he could no longer amend his Complaint), that the Court squarely rejected.[2]

Further, Plaintiff's counsel's supposition that Defendant "strategically and transparently" waited to file its Motion for Sanctions until after Plaintiff's deposition and the conclusion of the discovery period implies, but does not expressly state, that Defendant improperly waited to file the motion until a time when Plaintiff was unable to correct its false Complaint. The implication is that Defendant engaged in some kind of gamesmanship that militates against the imposition of sanctions. Again, Plaintiff's counsel are off the mark. Defendant explained the timing of the filing of its Motion for Sanctions: it wanted to question Plaintiff at his deposition to learn whether Plaintiff had any other support for his claim that he never was paid any overtime wages, which he did not. [DE 86, p. 9-10]. Promptly after this deposition, Defendant gave notice of its intended Rule 11 motion. On this record, Defendant's approach was cautious and reasonable. Motions for sanctions under Rule 11 level serious claims, and too often they are filed before there is a clear record to support the motion. The timing of Defendant's filing of the Motion was not improper.

Lastly, Plaintiff's counsel's criticism that the Motion for Sanctions was somehow improper because Defendant filed it after the pretrial motion deadline is also inapposite.[3]

---

[2] After I issued the R&R, Plaintiff filed a Motion for Reconsideration, in which he made this argument. [DE 79]. I denied that Motion and noted that Federal Rule of Civil Procedure 15(a)(2) allows for liberal amendment of pleadings, something Plaintiff never asked of the Court. [DE 80, p. 3, n. 4]. Plaintiff's counsel again made this argument in their objections to the R&R, which the Court again rejected. [DE 85, p. 2-3]. Plaintiff's counsel's unfortunate practice of repeating arguments that the Court has already resolved is a drain on the Court's resources and it unnecessarily prolongs these proceedings.

The time for Plaintiff's counsel to object to the timeliness of the Motion was when Defendant filed the Motion, not now. They did not do so. [*See* DE 56].

Plaintiff relies on *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010), as authority for this Court finding Defendant's motion untimely. [DE 92, p. 7]. There, the Court held that the trial court should have denied as untimely an otherwise meritorious Rule 11 motion for sanctions, which was directed at the complaint in that case. The *Peer* Court relied upon this comment in the Advisory Committee Notes to the 1993 Amendment to Rule 11: "[o]rdinarily the motion should be served promptly after the inappropriate paper is filed." *Id.* at 1313. Importantly, the Court of Appeals in *Peer* did not find that the moving party should have filed its Rule 11 motion promptly after Plaintiff filed the complaint. Rather, it concluded that it was not until six months later that the moving party "had all the pertinent information" that supported the sanctions motion, and it was *then* that the moving party should have filed the motion. *Id.*[4]

Plaintiff's counsel's series of arguments critiquing the timing of Defendant's Motion implies that if Defendant had only filed its Motion earlier, then Plaintiff's counsel would have known to file an amended complaint and could have avoided sanctions. Put differently, Plaintiff's counsel suggest that Defendant unfairly prejudiced them by not

---

[3] Defendant filed the Motion for Sanctions on September 2, 2016 [DE 52], seven days after the deadline for filing pretrial motions. [DE 37]. As noted, Defendant served a draft of that Motion on Plaintiff's counsel weeks earlier.

[4] Notably, the Eleventh Circuit has upheld the filing of a Rule 11 sanctions motion at the very end of litigation, where the movant acted "promptly upon discovering a basis for doing so" and where it was apparent that the sanctioned party was not prejudiced by the timing of that motion. *Baker v. Alderman*, 158 F.3d 516, 522-23 (11th Cir. 1998).

filing the Motion for Sanctions earlier and that for this reason, the Court should not order them to pay Defendant's attorneys' fees.

In truth, Plaintiff's counsel were free to amend the Complaint as "a matter of course" until 21 days after Defendant answered, which did not happen until April 28, 2016, a year and a half after they filed the Complaint. [DE 42]. *See* Fed. R. Civ. P. 15(a)(1)(B).[5] And, importantly, six weeks after they filed the Complaint Plaintiff's counsel had the documents to prove that the sole theory of their overtime wage claim (that Defendant paid no overtime wages) was false. Plaintiff's counsel could have easily corrected the false statement in the Compliant, by amendment, or otherwise.

Plaintiff's counsel's critique of the timing of Defendant's motion improperly attempts to shift to Defendant a responsibility that squarely belonged to Plaintiff's counsel.

Plaintiff's counsel also makes this argument:

> [E]ven if the Complaint was amended to change the phrasing from "never" to, for example, "some but not all" or that Plaintiff was paid "improperly" (notwithstanding Plaintiff's position regarding the piece rate), such would have had no impact on the amount of legal work defense Counsel had to perform – Defendant has never demonstrated otherwise. Since Defendant has not and cannot show any noticeable increase in fees (because Plaintiff did not amend the Complaint), any fees awarded should be significantly reduced (although it is rather appropriate to award none at all.)

[DE 92, pp. 3-4](footnote omitted). In other words, had Plaintiff's counsel amended the complaint to comport with Rule 11, Defendant would have defended that lawsuit and

---

[5] As already noted, Plaintiff could have sought leave to amend thereafter.

been responsible for (at least some of) the fees it incurred here. Thus, the reasoning goes, Plaintiff's counsel's improper complaint did not really harm Defendant.

The problem with this is, first, Plaintiff did not amend the Complaint or otherwise retract its false claim. Plaintiff's counsel did assert an alternative theory of overtime liability late in the lawsuit,[6] which it could have pled at the outset. This does not excuse Plaintiff's counsel's failure to make a reasonable pre-suit inquiry. If the Court were to adopt Plaintiff's counsel's reasoning, it would gut the certification requirement of Rule 11(b), and give a green light to the careless filing of pleadings. Essentially, it would free lawyers and parties of their obligations under the Rule, if they could show that they could have done better.

Plaintiff's counsel's argument also overlooks the fact that their failure to withdraw their false claim left Defendant no choice but to defend against it, and the Court to adjudicate it; a waste of Defendant's and the Court's resources.[7]

---

[6] Plaintiff's response to Defendant's summary judgment motion contended Defendant's time records were incomplete and did not account for some of the overtime hours Plaintiff worked, and that Defendant paid Plaintiff some, but not all, overtime wages. [DE 53]. Although his July 28, 2016, deposition testimony was inconsistent on this point, Plaintiff made this claim at that time too. [DE 54-2].Weeks later, *after* Defendant had filed its Motion for Sanctions and Motion for Summary Judgment, Plaintiff signed an affidavit that claimed, in essence, that Defendant did not pay all overtimes wages due Plaintiff. [DE 54-3].

[7] When the Court evaluated summary judgment, it plainly believed that Plaintiff had not abandoned his claim that Defendant never paid him any overtime. [*See* DE 59, at pp. 3, 4, 5]. The Court addressed that claim, along with the alternative argument expressed in the summary judgment response that Defendant underpaid overtime wages due Plaintiff. [*Id.*].

## C. "Lesson learned" and "already punished"

Mr. Zidell and his law firm make another series of arguments why the Court should not order them to pay monetary sanctions: first, they have already learned their lesson, and second, the R&R and the Order adopting it amount to a reprimand, also Plaintiff's counsel were not compensated for their work, and this is punishment enough.

As for the first argument, Mr. Zidell wrote:

the lesson is learned as to the manner of pleading expected by this Court, concerning claims such as Plaintiff's. . . in light of the Court's ruling in the case at bar, the undersigned Firm has changed its protocol with respect to the drafting of complaints, and it [sic] making a concerted effort to ensure that the "never" language is not used at the beginning of the case (unless such allegation appears to be the only alternative to accurately allege the claim.)

[DE 92, p. 4]. It appears that Mr. Zidell has learned nothing.

The Court's Order did not, in any measure, hold that a Plaintiff who brings an FLSA action may not allege that s/he was never paid overtime or minimum wages. Rather, the Court enforced counsel's obligation to "make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit [and it found that] [a]bsent [certain] extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client. . . ." [DE 78, quoting *Worldwide Primates Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996)] (footnote omitted). Specifically, Plaintiff's counsel's singular reliance on what their client evidently told them[8] was not a reasonable inquiry.

---

[8] The only information Plaintiff's counsel gave the Court about the basis for their claim, was their client's statement to them. [*See* DE 78, p. 10, citing DE 73, p. 12].

In their memorandum, Plaintiff's counsel did not acknowledge that a reasonable pre-suit inquiry requires investigation beyond the uncorroborated word of their client, nor have they identified any procedures the Law Firm has instituted to ensure that it does this in the future. The Court noted that Plaintiff's counsel easily could have asked Defendant for a copy of Plaintiff's wage and time records before they filed suit, as this would have been a reasonable inquiry into the merits of their client's claim. [DE 78, p. 8-9; DE 85]. By their silence, it appears that Plaintiff's counsel have no intention of instituting such a practice. Mr. Zidell's one "lesson learned" -- a ban on the word "never" -- does not address the problem.

Next, Mr. Zidell wrote that "the significant uncompensated legal work that had to be performed on this issue has acted as a deterrent." [DE 92, p. 9]. He added that the "R&R and Order have already admonished and reprimanded the undersigned" thus, eliminating the need for any other sanction. [*Id.*; *see also* at 8, 10, 11].

In fact, multiple judges on this Court have repeatedly sanctioned Plaintiff's counsel for similar misconduct. In those cases Plaintiff's counsel were "reprimanded," and presumably they were not compensated. This did not deter the misconduct here.

## D. This Court has sanctioned Plaintiff's counsel multiple times

Most recently, Judge Scola ordered Mr. Zidell, and his client, to pay "the entire amount of reasonable attorney's fees and costs incurred by Defendants since the inception of the [FLSA action]." *Silva v. Pro Transport, Inc.*, Case No. 15-23028-Civ-

Scola, 2017 WL 2189620, at *2 (S.D. Fla. May 18, 2017).[9] The Court entered this order as a sanction under Rule 11 "for misrepresentations to the Court and failure to conduct even a *de minimus* [*sic*] inquiry into the facts or law informing this case." *Id.*[10] In that Order, the Court noted, with obvious frustration, that "Zidell continues, inexplicably, to miss the point of the sanctions proceedings." *Id.* Notably, the Report and Recommendation of Judge Otazo-Reyes, in which she found that Mr. Zidell should be sanctioned under Rule 11 for failing to make an adequate pre-suit investigation, was issued on August 29, 2016, *before* Defendant filed its Motion for Sanctions in this case. *Silva*, Case No. 15-23028-Civ-Scola, DE 61 (Aug. 29, 2016).

Earlier, in 2006, in another FLSA action, Judge Martinez ordered Mr. Zidell to pay the defendant $7,937.03 for attorneys' fees, as a sanction under 28 U.S.C. § 1927, because he "acted recklessly by preparing false [interrogatory] responses" for approximately 20 of his clients. *Medina v. 3C Construction Corp.,* Case No. 02-23090-Civ-Martinez/Torres, 2006 WL 8434953, at *3 (S.D. Fla. Oct. 27, 2006), *Report and Recommendation adopted,* Case No. 02-23090, 2007 WL 9706352 (S.D. Fla. May 18, 2007).

---

[9] That amount is $51,201.77. *Id.* at *4.

[10] The Court also relied upon its inherent authority and 28 U.S.C. § 1927, as authority for these sanctions. *Id.* In an earlier Order that also addressed these sanctions, the Court was clear that Mr. Zidell "completely ignores the requirements of Rule 11 to conduct a reasonable inquiry of facts and law before filing a pleading. . . . *[R]elying on a client's representations does not obviate the requirement that an attorney conduct basic legal and factual inquiry. . . ." Silva v. Pro Transport, Inc.*, Case No. 15-23028-Civ-Scola, DE 65, at p. 2 (S.D. Fla. Sept. 30, 2016) (emphasis added).

13

In 2012, again, well before Plaintiff's counsel filed this case, Judge Donald Graham sanctioned Mr. Zidell under 28 U.S.C. § 1927, with an order that he pay $8,340 in defense legal fees. *Rodriguez, et al. v. Marble Care Int'l., Inc.,* 863 F. Supp. 2d 1168, 1171 (S.D. Fla. 2012). The Court found that Mr. Zidell failed to conduct an adequate pre-suit inquiry before he filed that FLSA lawsuit. The Court found that Plaintiffs

> filed their claim anyway, sought to take irrelevant discovery in order to impose financial pressure on Defendants and persisted in prosecuting the claim even though they never had the necessary evidence to establish FLSA jurisdiction and ignored unrebutted evidence demonstrating that [Defendant] was not subject to the FLSA claim.

*Id.* at 1182.

Later, Judge Bloom dismissed, as a sanction, an FLSA action Plaintiff's counsel filed. *Aguilar v. United Floor Crew, Inc.,* Case No. 14-civ-61605, 2015 WL 2415421 at * 13 (S.D. Fla. May 21, 2015).[11] She did so because the plaintiff there repeatedly and willfully misidentified himself to the Court. Although the Court dismissed the lawsuit because of the plaintiff's misconduct, it plainly was troubled by Plaintiff's counsel's behavior:

> Curiously, [Plaintiff's] counsel neglected to ask Plaintiff for a current, valid form of identification when faced with the expired Florida I.D. . . . This was after it was revealed that his client had used a false identity and forged documentation both for employment purposes *and* to support this litigation. Nor did counsel conduct any inquiry on their own. Taking merely Plaintiff's word, counsel notified Defendants and the Court in late December, 2014, that Plaintiff's real and full name was 'Manuel Antonio Aguilar,' and proceeded with the case as if it were.

---

[11] There, the Court relied on Rule 41(b), as authority to dismiss a lawsuit where "the plaintiff fails to prosecute or comply with these rules." *Id.* at *7; *see* Fed. R. Civ. P. 41(b).

*Id.* at *9. The Court further observed:

> It also bears noting that counsel for Plaintiff are no strangers to discovery sanctions and Rule 41(b) dismissal. This is not the first time Plaintiff's counsel unsuccessfully defended their actions and their clients' from such meritorious accusations. Or even the second. In *Rodriguez v. Marble Care Int'l. Inc.,* 863 F. Supp. 2d 1168 (S.D. Fla. 2012), the same lawyers who appear for Plaintiff here were sanctioned for failing to engage in proper pre- and post-suit investigation, resulting in the filing and maintenance of a frivolous FLSA case. In *Gonzalez v. Bus. Representation Int'l. Inc.,* 248 F.R.D. 644 (S.D. Fla. 2008), the plaintiff – represented by the same attorneys who appear for Plaintiff here – engaged in obstruction of and denied access to discoverable evidence, resulting in dismissal without prejudice pursuant to Rule 41(b).

*Id.* at *12.

Most recently, Judge Goodman sanctioned J.H. Zidell, P.A., and one of its attorneys (not Mr. Zidell), under Rule 11 for their continued reliance on an incorrect legal theory and their failure to rescind incorrect exhibits they had submitted in support of their summary judgment motion. *Collar v. Abalux, Inc., et al.,* Case No. 16-20872-CIV-LENARD/GOODMAN, 2018 WL 3328682, at *22 (S.D. Fla. Jul. 5, 2018). Judge Goodman found that Plaintiff's counsel there should pay the attorneys' fees the defendants incurred after the sanctioned conduct, although the Court has not yet decided the amount of those fees. *Id.* at *23. [12]

## E. What will deter Plaintiff's counsel?

This is a troubling record of repeated misconduct by Mr. Zidell and his law firm. [13] The Court has no reason to believe they have "learned their lesson" and it has little hope

---

[12] That Order directed the defendants to provide the Court with documentation of those fees. *Id.*

[13] In their memorandum, Plaintiff's counsel treat these prior sanctions orders as irrelevant to this matter, because "[n]one of [them] involved a particularized Rule 11 finding limited to a specific

15

that this Court's earlier order, that found Plaintiff's counsel violated Rule 11 in this case, standing alone, will lead them to conduct reasonable pre-suit investigations in the future. Other judges have sanctioned Plaintiff's counsel for their failure to do exactly this, and yet, here we are again. Although I recommend that the Court order Plaintiff's counsel to pay Defendant's reasonable attorneys' fees, it seems naïve to expect that this alone will have the deterrent effect that is the goal of Rule 11 sanctions.

It is difficult to devise a sanction, short of possibly some form of injunctive relief,[14] which the Court might reasonably expect would "deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). It appears that the multiple court orders directing Mr. Zidell and his firm to pay defense counsel fees may be a cost of their doing business, which is outweighed by the economic rewards of careless complaints.

Available records show that the Zidell law firm has filed 1,905 lawsuits with this Court, almost all on behalf of plaintiffs bringing FLSA claims. The Firm, and other attorneys who represent FLSA plaintiffs, benefit enormously from the widespread practice of the judges on this Court of referring FLSA cases to an early settlement

---

and single allegation in the Complaint." [DE 92, p. 11]. It is worrisome that Plaintiff's counsel does not understand that judges on this Court have sanctioned them for exactly the same conduct: failing to make an adequate pre-suit inquiry and for otherwise not devoting sufficient attention to the veracity of information they have provided opposing counsel and the court. This history is highly relevant given the Advisory Committee's guidance that courts consider whether the sanctioned party had "engaged in similar conduct in other litigation," when determining appropriate sanctions. Advisory Committee Notes to Rule 11, 1993 Amendment.

[14] This might include a pre-suit filing requirement in future lawsuits. Alternatively, the Court might refer Plaintiff's counsel to the Court's Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance.

conference before a Magistrate Judge.[15] The parties settle many of these lawsuits at this early stage with payment to the plaintiff, along with attorneys' fees to plaintiffs' counsel. This happens, in significant measure, because the FLSA's prevailing plaintiff attorneys' fee provision[16] creates a powerful economic incentive for defendants to settle these claims. It appears to this Court that, as a business practice, plaintiffs' counsel perceive little incentive to devote much effort to drafting these complaints, as even the most bare-bones complaints stand a good chance of leading to an early settlement for the plaintiff, and an award of attorneys' fees for plaintiff's counsel. This context may explain why prior sanctions orders have not "deterr[ed] repetition of the conduct." Fed. R. Civ. P. 11(c)(4).

With these misgivings that any amount of a monetary sanction will provide "effective deterrence"[17] I recommend that, at a minimum, the Court order Plaintiff's counsel to pay Defendant an amount that represents the attorneys' fees Defendant reasonably incurred in defending this action.

---

[15] Typically, those settlement conferences occur often before the defendant has filed an answer, and certainly before the discovery process. This practice is an exception to the standard practice of this Court requiring civil litigants to engage in mediation with a private mediator, at their own expense, typically near the close of the discovery process. *See* S.D.Fla. L.R. 16.2(d)(1).

[16] Title 29 U.S.C. §216(b).

[17] Fed. R. Civ. P. 11(c)(4).

## IV. Reasonable attorneys' fees

### A. The record

In the memorandum Defendant filed, addressing appropriate sanctions, it asked that Plaintiffs' counsel compensate it for $123,715.00 in attorneys' fees it incurred defending this lawsuit before this Court and the Court of Appeals. [DE 86, pp. 7, 11].[18] Defendant did not file any billing records with that memorandum to support that number.

In response, Plaintiff correctly noted that this Court has no authority under Rule 11 to order Plaintiff's counsel to pay fees incurred before the Court of Appeals. [DE 92, p. 4-5]; *see Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 406-09 (1990). Plaintiff also noted that Defendant included in its Motion for Sanctions and Renewed Motion for Sanctions, an alternative argument to its claim that Plaintiff should be sanctioned under Rule 11: that this Court should sanction Plaintiff under Florida Statute § 57.105. The Court found earlier that this argument was plainly without merit, as this Court is solely operating here under federal question jurisdiction. [DE 78, p. 3]. The Court agrees with Plaintiff that it would be unjust for Defendant to recover any attorneys' fees it incurred making this argument.[19]

---

[18] Although Rule 11 authorizes an award of attorneys' fees "and other expenses," only fees are at issue here, as the Court earlier awarded Defendant, pursuant to Rule 54 (d), Fed. R. Civ. P., $3,028.50 for its costs. [DE 77, 84].

[19] It is disappointing that Defendant's counsel would be so careless themselves in making an argument for sanctions that plainly had no foundation. The same is true for their uninformed contention that this Court should award Defendant the attorneys' fees it incurred before the Court of Appeals. The Court takes this into consideration in its substantial reduction of Defendant's claimed fees.

I ordered Defendant to file its billing records but to "exclude any fees Defendant incurred in connection with Plaintiff's appeal" and to "clearly identify on its billing records those attorneys' fees Defendant incurred arguing in its Motion for Sanctions [DE 52] Renewed Motion for Sanctions [DE 70], and in any reply memorandum or elsewhere, that this Court should sanction Plaintiff pursuant to Florida Statute §57.105." [DE 93].

Defendant filed those billing records, and as directed, it excluded fees it incurred in defense of Plaintiff's appeal. [DE 94]. It did not, however, identify the time it devoted to making (and defending) its argument for sanctions under Florida Statute §57.105. Instead, it identified (by highlighting) all fees that it states are "related to" its Motion for Sanctions and Renewed Motion for Sanctions. [*Id.* at p. 1].[20] From my review of those billing records, it appears that the highlighted entries encompass all fees Defendant incurred related to litigation over its sanction motion, which totals approximately $38,000. Thus, that $38,000 of claimed attorneys' fees includes both attorneys' fees incurred making Defendant's successful argument for sanctions under Rule 11 *and* its meritless argument for sanctions under Florida Statute §57.105. [21]

Defendant did not total the fees documented in its billing entries.[22] I have done so, several times, and believe that, in addition to the $38,000 of fees referenced above,

---

[20] The Renewed Motion for Sanctions is a refiling of the original Motion for Sanctions that includes a brief introductory update. [*Compare* DE 52 and DE 70].

[21] When a court imposes payment of reasonable attorneys' fees as a monetary sanction under Rule 11, the Court may include in its calculation fees reasonably incurred in litigating sanctions. *Mike Ousley Productions, Inc. v. WJBF-TV, et al.,* 952 F.2d 380, 383-84 (11th Cir. 1992).

[22] Defendant should have filed billing records with subtotals and a grand total, rather than leaving this task for the Court.

Defendant claims an additional approximate \$53,000 in fees. Thus, the total fees are about \$91,000.

Plaintiff's counsel filed two documents in response to Defendant's billing records. First, a "Notice" in which it asks the Court to reduce any fee award by the full amount of fees Defendant devoted to preparing its sanctions motions, which Plaintiff's counsel also calculates to be about \$38,000. [DE 95]. Second, Plaintiff's counsel filed a memorandum that critiques defense counsel's hourly rates, billed time, and the quality and originality of defense counsel's legal work, and also, once again, improperly restates arguments they already made why this Court should not impose monetary sanctions. [DE 96].

I have thoroughly considered this record, and make the following findings and recommendation.

## B. Amount of attorneys' fees

Rule 11 authorizes this Court to impose on Plaintiff's counsel "part or all of the reasonable attorneys' fees . . . directly resulting from the violation." F.R.Civ.P. 11(c)(4). The violation here was the one-count, single-theory Complaint and all legal fees Defendant incurred in this lawsuit (with the exception of the exclusion already noted) resulted from that Complaint.[23]

---

[23] There is considerable precedent for shifting to plaintiff's counsel defense attorneys' fees incurred from the outset of a lawsuit, when the complaint violated Rule 11. *See e.g., Cook-Benjamin v. MHM Correctional Services, Inc.,* 571 Fed. App'x 944 (11th Cir. 2014); *Silva, supra,* 2017 WL 2189620; *Palacio v. Empire Academy, Inc.,* Case No. 15-21163-Civ-Scola/Otazo-Reyes, 2016 WL 10568066 (S.D. Fla. Dec. 13, 2016), *Report and Recommendation adopted,* 2017 WL 5308334 (S.D. Fla. Mar. 13, 2017).

Courts typically employ the lodestar method to determine a reasonable attorneys' fee. This entails multiplication of the reasonable number of hours expended on the litigation by the reasonable hourly rate. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Id.* Courts will not award fees for excessive, redundant or unnecessary work, and they look for fee records that demonstrate good "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Norman*, 836 F.2d at 1301.

The court is itself an expert and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment, as to the reasonableness of the fee request. *Norman*, 836 F.2d at 1303. In the end, a court's "computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

For a number of reasons, it is difficult to arrive at a precise amount here that represents "the *reasonable* attorney's fees . . . directly resulting from the violation." Fed. R. Civ. P. 11(c)(4) (emphasis added). Regarding the hours billed, defense counsel used block-billing, and many of their billing entries have vague language, which makes it difficult to evaluate whether the time devoted to tasks was reasonable, or perhaps excessive or redundant. One billing record, an invoice dated June 14, 2016, is incomplete.

[DE 94-1, at p. 41]. Further, some entries appear to be for clerical tasks that the Court should not compensate at an attorney or paralegal rate.

As for the hourly billing rates, they varied over time. The paralegal hourly rates range from $185 to $215, which this Court considers unacceptably high. The associate hourly rates range from $320 to $375, and the partner rates range from $395 to $455. The Court recognizes that there are attorneys in this community who charge comparable hourly rates in defending FLSA actions. In this Court's estimation, however, Defendant's counsel's meritless arguments to recover fees under Florida Statute §57.105, and for appellate attorneys' fees, indicate their work should be compensated at lower hourly rates.

Although any attorney fee award should exclude fees incurred making those meritless arguments, the Court cannot to do this with mathematical certainty since the billing records do not track that time. I have re-reviewed the Renewed Motion for Sanctions and note that well less than a third of the motion addresses this argument. The argument, however, is almost entirely redundant of Defendant's Rule 11 argument, as the Florida Statute is essentially a restatement of Rule 11. Thus, it would not appear that it took much additional work, or legal fees, to include that argument in the Motion.[24]

On this record, it would be a misguided use of judicial resources to engage in a line-by-line analysis of defense counsel's billing records. Trial courts may account for needed reductions of claimed attorneys' fees by making an across-the-board reduction.

---

[24] Defendant's claim to recover appellate fees is a brief statement that accounts for little attorney time. [DE 86, at p. 6-7].

*See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994); *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). This approach is particularly appropriate here, where the purpose of an attorney fee award is to deter counsel from future Rule 11 violations; it is *not* to accurately and fully compensate Defendant for its legal fees.

In the context of this highly discretionary decision, I recommend that the Court order Plaintiff's counsel to pay Defendant $60,000 as partial compensation of Defendant's claimed attorneys' fees. This represents an approximate one-third reduction of the $91,000 in fees Defendant claims. This reduction reasonably accounts for the deficiencies in defense counsel's billing records and legal work, and eliminates any compensation for their meritless arguments.[25]

## V. Recommendation

I respectfully recommend that the Court, pursuant to its authority under Rule 11(c)(1), order Jamie H. Zidell and the J.H. Zidell, P.A., to pay Defendant $60,000, as a sanction for Plaintiff's counsel's violation of Rule 11(b).

## VI. Objections

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable K. Michael Moore, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of

---

[25] I note that the Court, in fashioning a monetary award under Rule 11, must consider Plaintiff's counsel's ability to pay. *Baker*, 158 F.3d at 528; *Bullard v. Downs*, 161 Fed. App'x 886, 887 (11th Cir. 2006). In their multiple filings on the subject of sanctions, Plaintiff's counsel have never suggested they are unable to pay the fees Defendant has claimed.

23

objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in chambers at Miami, Florida this 20th day of July, 2018.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

*Copies to:*     The Honorable K. Michael Moore
                 Counsel of record